1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-11711-scc

4    Adv. Case No. 19-01300-scc

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    THE D&M CAPITAL GROUP, LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   THE D&M CAPITAL GROUP, LLC,

13              Plaintiff,

14          v.

15   ESSEX GLOBAL TRADING, LLC et al.,

16              Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1          United States Bankruptcy Court

2          One Bowling Green

3          New York, NY   10004

4

5          August 13, 2019

6          11:17 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  SHEA

1    HEARING re 19-11711-scc Status Conference

2

3    HEARING re 19-01300-scc Status Conference

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    TROUTMAN SANDERS LLP

4         Proposed Counsel to the Debtor

5         875 Third Avenue

6         New York, NY 10022

7

8    BY:  ALISSA K. PICCIONE

9         BRETT GOODMAN

10        AURORA CASSIRER

11

12   MEDINA LAW FIRM

13        Attorneys for Moty Spector, Individually

14        The Chrysler Building

15        405 Lexington Avenue, 7th Floor

16        New York, NY 10174

17

18   BY:  ERIC S. MEDINA

19

20   UNITED STATES DEPARTMENT OF JUSTICE

21        Attorneys for the U.S. Trustee

22        33 Whitehall Street, 21st Floor

23        New York, NY 10014

24

25   BY:  RICHARD C. MORRISSEY

1    SAM P. ISRAEL P.C.

2         Attorneys for Essex Global Trading LLC

3         180 Maiden Lane, 6th Floor

4         New York, NY 10038

5

6    BY:  SAM O. ISRAEL

7

8    PLATZER, SWERGOLD, LEVINE, GOLDBERG KATZ & JASLOW, LLP

9         Attorneys for Ultimate Jewelry Designs LLC and Shang

10        Hai Pearls & Gems Inc., Locally Known as Ultimate

11        Diamond

12        475 Park Avenue South, 18th Floor

13        New York, NY 10016

14

15   BY:  ANDREW S. MULLER

16

17   ALSO PRESENT TELEPHONICALLY:

18

19   PAUL FERDINANDS

20   SARAH PRIMROSE

21

22

23

24

25

```
1                    P R O C E E D I N G S
2            THE COURT:  Okay.  Have a seat.  All right.  So,
3   good morning.
4            MS. CASSIRER:  Good morning, Your Honor.
5            MR. GOODMAN:  Good morning, Your Honor.
6            THE COURT:  Well, we're kind of hitting the reset
7   button in this case.  Yes?
8            MR. GOODMAN:  A little bit, yes.
9            THE COURT:  Little bit?  Okay.  Talk to me.
10           MR. GOODMAN:  Your Honor, for the record, Brett
11  Goodman, Troutman Sanders, proposed counsel to the Debtor
12           Aurora Cassirer, Troutman Sanders
13           MR. ISRAEL:  Sam Israel, Essex Global Trading
14           MR. PAUL:  Alecks Paul debtors
15           MR. GOODMAN:  Brett Goodman, Troutman Sanders,
16  proposed counsel to Debtor and Debtor in Possession.  Here
17  with me are my colleagues, Aurora Cassirer and Allisa
18  Piccione.
19           THE COURT:  Hello.
20           MS. PICCIONE:  Good morning, Your Honor.
21           MS. CASSIRER:  Good morning, Your Honor.
22           MR. GOODMAN:  I'll also note for the record, Your
23  Honor, that the Debtor's sole member and manager, Mr. Moty
24  Spector is in the courtroom -- oh, just stepped out of the
25  courtroom.
```

1          THE COURT:  Okay.  All right.

2          MR. GOODMAN:  But he's here today.

3          THE COURT:  Okay.

4          MR. GOODMAN:  Your Honor, if I may, I can proceed

5     on it.

6          THE COURT:  Please.

7          MR. GOODMAN:  There's a status conference --

8          THE COURT:  Yes.

9          MR. GOODMAN:  -- in both the main case and the

10    adversary.

11         THE COURT:  And the adversary.  Right.

12         MR. GOODMAN:  I'm happy to start with the main

13    case.

14         THE COURT:  Sure.

15         MR. GOODMAN:  And my colleague and partner will

16    handle the adversary.

17         THE COURT:  Sure.  And we do have on the phone

18    folks appearing on behalf of Radwan Diamond & Jewellery

19    Trading.  So, go ahead.

20         MR. GOODMAN:  Thank you, Your Honor.  Again, Brett

21    Goodman, Troutman Sanders, proposed counsel for the Debtor,

22    the D&M Capital Group.  We've been proposed counsel since we

23    substituted for prior counsel on July 10th of 2019.

24         If it's okay, Your Honor, I'd like to step back a

25    little, as I know the only hearing thus far before the Court

1    was on an expedited basis in connection with a motion for a

2    temporary restraining order.

3              THE COURT:  Which was denied.

4              MR. GOODMAN:  In part.

5              THE COURT:  In part.

6              MR. GOODMAN:  And Your Honor did not get the

7    benefit of a traditional first-day hearing in this case.

8    So, if I could go backwards before we get to where we are

9    today.

10              By way of background, Your Honor, the Debtor is in

11   the business of buying and selling high-end diamonds and

12   other precious stones and finished jewelry throughout the

13   world.

14              The Debtor's business involves essentially three

15   aspects.  The first is the purchase of diamonds, loose

16   stones and jewelry, either directly or with the

17   participation with other third-party participants or

18   investors.  The second is the receipt of those similar

19   diamonds, loose stones and jewelry on consignment from

20   wholesalers for sale to third parties.  And the third

21   component of the business would be the consignment of memo

22   goods to other dealers in the trade.

23              The Debtor has been operating, and successfully, I

24   might add, since 2006.  However, in the months preceding the

25   Chapter 11 filing, the Debtor entered into four consignment

1  transactions with Essex Global Trading LLC, another dealer,

2  for a total of six pieces with an aggregate memo value of

3  over $17 million.  Some of this may be familiar to you from

4  the TRO hearing.

5       But in connection with that last transaction of

6  the four, Essex, we believe, fraudulently induced the Debtor

7  to invoice a sale for $7.5 million, failed to remit payment

8  on account of that invoice, and then converted all of the

9  goods in its possession, all six pieces, rendering the

10 Debtor insolvent in order to "protect itself" against an

11 alleged unsecured loan debt that the Debtor disputes.

12      As a result of Essex's conduct, the Debtor filed

13 its Chapter 11 case on May 28th, 2019, and thereafter the

14 following month, commenced the related adversary proceeding

15 against Essex, it's principal, Alecks Paul and others, that

16 my partner, Aurora Cassirer, will update the Court on in

17 connection with that status conference.

18      Your Honor, since the filing, the Debtor has

19 secured all of the inventory in its possession as of the

20 petition date and has taken additional goods on memo.  The

21 Debtor's premises are secured by a standard double-door

22 entry with a mantrap.  The Debtor's safe --

23      THE COURT:  With a...?

24      MR. GOODMAN:  With a mantrap.

25      MR. GOODMAN:  So, the double-door entry is

1    essentially -- if you've ever been in the diamond district,

2    you buzz into one door.

3              THE COURT:  Yes.

4              MR. GOODMAN:  That door -- the second door will

5    not open until the door behind you closes, and that's called

6    a mantrap.

7              THE COURT:  Presumably, it works for women as

8    well.

9              MR. GOODMAN:  Presumably, it works for women as

10   well.

11             MS. CASSIRER:  I can vouch for that, Your Honor.

12   It does.

13             THE COURT:  Unfortunate terminology.

14             MR. GOODMAN:  Unfortunate --

15             THE COURT:  It's just a secure double-door

16   situation.

17             MR. GOODMAN:  Double-door lock.  But as it's used

18   in the trade, that's what it's called.  The Debtor's safe is

19   armed with an active alarm system from DGA Security, and

20   also includes a double combination lock.  And since the

21   filing, the Debtor has also maintained all of its insurance

22   on its inventory since the filing under a Lloyd's of London

23   policy.

24             With respect to the Debtor's inventory, the Debtor

25   is holding in its vaults, goods with a cost value of

1  approximately one $1.4 million, of which approximately

2  $950,000 of those goods the Debtor owns outright.  The

3  Debtor is also holding an approximately $4 million -- just

4  under $4 million of memo goods that it received on August

5  12th in three separate consignment transactions.

6          In addition, the Debtor has an interest in goods

7  with approximately $24 million in total memo value out on

8  consignment to third parties.  And of that amount,

9  approximately $5,530,000 of memo value is on consignment

10  with Essex.

11          The Debtor, as I mentioned, also invoiced the sale

12  of two pieces to Essex with a total memo value of

13  approximately $11.5 million that Essex took possession of

14  and has not paid for or returned.

15          As a result of the filing and the time of the year

16  in this industry, the Debtor had conducted relatively no

17  business in the months of June and July, which is reflected

18  on the monthly operating reports -- and I'm happy to say the

19  Debtor is current -- but has begun to take additional goods

20  on consignment and intends to pick up its business moving

21  forward.  As I noted yesterday, in fact the Debtor received

22  goods worth approximately $4 million in total memo value on

23  consignment.

24          However, given the lack of revenue petition date,

25  Mr. Spector has been funding this case directly through a

1   series of capital contributions for the Debtor.  And we

2   understand he intends to continue to do so until there is

3   adequate revenue and cash in the business.  Your Honor may

4   have also noted that the Debtor's original DIP financing

5   motion was withdrawn without prejudice to a future loan in

6   favor of an equity contribution, which the estate believes

7   demonstrates Mr. Spector's commitment to the Chapter 11

8   process.

9          That said, Your Honor, these capital contributions

10  are not unlimited.  And it's therefore critical that the

11  estate move this case forward expeditiously.  We believe

12  that there is a path forward to a successful Chapter 11 exit

13  through either a plan or a structured dismissal that can be

14  achieved through a combination of the return of goods or

15  proceeds in Essex's possession; the return, monetization or

16  settlement of inventory out on memo with other third parties

17  and participants in those goods; and the continuation of the

18  Debtor's trading business.

19         Your Honor, the estate is confident that save the

20  dispute with Essex, it will be able to resolve or satisfy

21  each of the creditors' claims, including the claims in

22  interest of its participants in various forms.  And although

23  the Debtor has been busy preparing its amended complaint and

24  handling administrative matters, the Debtor and its counsel

25  have already had initial discussions and meetings with the

1    largest undisputed unsecured creditor in this case and each

2    of its participants in the Essex stones.

3              With that, Your Honor, I'm happy to answer any

4    questions that you may have with respect to the main case.

5    A 341 meeting was conducted last Friday and completed with

6    the U.S. Trustee.  As I indicated, monthly operating reports

7    her current.  The next one is due this week and will be

8    filed.  We have a draft of that today.

9              THE COURT:  Okay.  All right, you've hit all the

10   important points.  Mr. Morrissey, do you have anything that

11   you'd like to say about the status of the case generally?

12             MR. MORRISSEY:  Your Honor, for the record,

13   Richard Morrissey, for the U.S. Trustee.  No, I really have

14   nothing to add.  There was some interest, Your Honor, in a

15   Creditors' Committee, but not sufficient interest for us to

16   actually form one.  But the door is still open if someone

17   wants to solicit.  Thank you.

18             THE COURT:  All right.  So, perhaps we should turn

19   to the adversary.

20             MR. GOODMAN:  Yes.  Absolutely, Your Honor.  We

21   believe that to be critical to the overall case as well, and

22   I'll hand it off to my partner, Aurora Cassirer.

23             THE COURT:  Go ahead.  Thank you.

24             MS. CASSIRER:  Thank you, Your Honor.

25             THE COURT:  Good morning.

1          MS. CASSIRER:  My name is Aurora Cassirer.  I'm a

2    partner in the firm Troutman Sanders.  My partner, Brett has

3    touched on the highlights of why we brought the adversary

4    proceeding and what we hope to accomplish with it.  I'll

5    talk in a little more detail on it.

6          As Brett said, between February 28 and May 21,

7    during the 90-day period preceding the filing, the Debtor

8    consigned over $17 million worth of goods to Essex Global

9    through four separate transactions, the last of which

10   culminated in a fraudulently induced invoice of the $7.5

11   million.

12          I'll cut to the chase.  Despite demand for the

13   goods, as per the terms of the consignment agreement, so the

14   memos, and I'll read you from them.  They actually are

15   contained in Page 12 of our complaint.  And despite a demand

16   for the proceeds of this alleged sale, we've got nothing.

17   So, Essex  essentially holds the bulk of the Debtor's

18   assets.

19          Each of the goods at issue was covered by a

20   consignment memo evidencing the transfer and provided that

21   the goods remain with the Debtor and must be returned on

22   demand.  The memos also prohibit -- and that's, again, on

23   Page 12 -- each of the memos to the consignments to Essex

24   are described on Pages 12-16 of the amended complaint, and

25   are annexed as Exhibits T, U, V and X.

1          The memos prohibit Essex from disposing of the

2    precious stones unless the Debtor agrees to the disposition.

3    So far, dead silence from Essex.  No response at all to our

4    various demands to them for an accounting, for return of the

5    goods.  The first demand post-bankruptcy was made on May

6    29th, the day after the filing.  The second demand -- and

7    there may have been others in between -- was made by us on

8    August 12th.  Again, no response.

9          THE COURT:  Can I ask you to stop?  I just -- if

10   you could send us a hard copy of the amended complaint, that

11   would be helpful.  I'm just going back to --

12         MS. CASSIRER:  Happy to do that, Your Honor.

13         THE COURT:  Thank you.  I'm just going back to the

14   order that we entered on the request for a TRO.  And at that

15   time, based on the representation of counsel to Essex, there

16   were two stones that remained in -- it was represented and

17   informed the basis of the TRO order that there were two

18   stones that remained in Essex's possession.  Just trying to

19   track that.

20         So, that's the JP-0105, which has a value of $1.38

21   million, and the JE-0104.  Those are both on the Memo Number

22   5251.  Right?

23         MS. CASSIRER:  Yes.

24         THE COURT:  Right?  Now the other ones, it was

25   represented are no longer in Essex's possession.

1          MS. CASSIRER:  Well, it was unclear, but you are

2     essentially correct.  It was represented that they were no

3     longer in their possession, that they may be in transit.  We

4     don't know anything, Your Honor, because there's been a

5     refusal to account for the stones.

6          Now, there is absolutely no basis for this grab,

7     or I would call it basically stolen goods, by Essex.

8     Essentially, what happened here is that Essex claims at an

9     unrelated transaction that the Debtor owes it something in

10    the neighborhood of $6.5 million.  The Debtor disputes that

11    debt.

12         The $6.5 million arises out of a number of

13    predatory lending agreements that go back to 2012, in which

14    Essex lent money to the Debtor at two percent interest a

15    month.  Over the course of seven years, the Debtor paid

16    Essex  close to or in the neighborhood of $10 million in

17    interest.

18         And then in May of 2019, Essex basically told the

19    Debtor -- took these memo goods, he refused to return them,

20    then said that he had a buyer for $7.5 million worth of

21    goods.  Turned out to be false, admittedly false, because it

22    confessed that to D&M's administrator.  And essentially took

23    the goods, didn't pay money, and failed to account for

24    anything in those memos.

25         It rendered us insolvent.  I mean, the adversary

1   proceeding was brought in an effort to deal with the

2   situation, get an accounting, get goods back.  As we say in

3   our complaint, Mr. Paul, the principal of Essex, has a

4   criminal background, having been incarcerated for six years

5   for securities fraud.

6           MR. ISRAEL:  Your Honor, I have an objection to

7   what's being said right now.  This is the relevant material.

8   It's obviously intended to prejudice the Court.

9           THE COURT:  Okay.

10          MR. ISRAEL:  It was appended to their papers.

11          THE COURT:  All right.  I --

12          MS. CASSIRER:  Your Honor, he also has --

13          THE COURT:  I'll hear from you in a minute, Mr.

14  Israel --

15          MR. ISRAEL:  Sorry, Your Honor?

16          THE COURT:  I'll hear from you in a minute.

17          MR. ISRAEL:  Okay.

18          THE COURT:  Okay?  Thank you.

19          MS. CASSIRER:  He also has --

20          THE COURT:  So, let's --

21          MS. CASSIRER:  We don't know where the goods are.

22          THE COURT:  Okay.

23          MS. CASSIRER:  They could be -- I mean --

24          THE COURT:  I hear what you're saying.  What's the

25  path forward that you intend to take now that you have the

1    amended complaint --

2           MS. CASSIRER:  Okay.

3           THE COURT:  -- on file?

4           MS. CASSIRER:  We have --

5           THE COURT:  There was a motion to dismiss.  That's

6    been superseded by your new complaint.

7           MS. CASSIRER:  Correct, Your Honor.  What we would

8    like Your Honor, is to get expedited discovery.  We have

9    discovery ready to go today --

10          THE COURT:  Okay.

11          MS. CASSIRER:  -- both documentary discovery and

12   the depositions of Mr. Paul and his son.  And we'd like to

13   basically get all the documents returnable to us within

14   seven days.  Sorry, Essex 30-B6 as well.  So, it's Essex and

15   its principals and the son.

16          So, seven days return.  They should have all these

17   documents handy.  I'm not asking for all the documents going

18   back to 2012 for now.  We just want -- for the time being,

19   we need to gather these assets back into the Debtor's

20   estate.  Seven days return on the documents, how they've

21   been safeguarded, things like that.  They could be in Russia

22   by now.  I don't know.

23          And we would like the depositions taken or

24   completed on August 27th, 28th.

25          THE COURT:  Have you served this discovery?

1                MS. CASSIRER:  Serving it today.

2                THE COURT:  Serving it today?  I can't -- I mean,

3       without hearing from the Defendant, I can't say okay --

4                MS. CASSIRER:  Well, that's our path --

5                THE COURT:  -- to what you're saying.

6                MS. CASSIRER:  -- forward, Your Honor.

7                THE COURT:  Okay.

8                MS. CASSIRER:  That's our plan.  We've been in

9       touch with the attorneys for the nominal Defendant's.

10      They're basically -- they know what they're doing.  I

11      believe they support us.  We're hoping that with this

12      discovery, this will lead to basically a settlement, or a

13      plan, or a structured dismissal at one point.  But we really

14      need to move on this quickly.

15               THE COURT:  Okay.  All right.  Let me hear from

16      Mr. Israel.

17               MS. CASSIRER:  Thank you, Your Honor.

18               THE COURT:  Thank you.

19               MR. ISRAEL:  Thank you, Your Honor.  Sam Israel,

20      for Essex Global Trading, LLC.

21               There's a bunch of things that were just said that

22      are wrong.  The thing I was objecting about was they

23      appended to their papers -- they being the Plaintiff --

24               THE COURT:  Mm hmm.

25               MR. ISRAEL:  -- Debtor -- appended to their papers

1    certain scurrilous data which has nothing to do with this

2    case, which is obviously just intended to prejudice your

3    view of my client.

4         Putting that aside, there are answers to each of

5    these questions that are being raised about these gems --

6    where they are, who has them, and why they have them -- and

7    we can respond to that.  But this is in the motion for

8    summary judgment that we filed that brought us here

9    originally here today.  And in response to our motion to

10   dismiss, as you know, they filed -- you just said, in fact,

11   that they filed an amended complaint.

12        The amended complaint doesn't cure the problem.

13   They acknowledge in the amended complaint, they still don't

14   own these gems.  So, the issue about necessary party and

15   standing are extant.  So, what we're going to do --

16        THE COURT:  I'm sorry, they still don't own --

17        MR. ISRAEL:  Own the gems.  The gems they're suing

18   over --

19        THE COURT:  Yes.

20        MR. ISRAEL:  I said they -- the Plaintiff/Debtor

21   still does not own the gems that are being sued over.  He

22   has a participation, or the company has a participation

23   along with other parties.  For them to sue my client, what

24   they would have to do is they would have to join together

25   and bring the lawsuit together.  Otherwise, they're lacking

1    a necessary party to bring suit.

2              THE COURT:  Well, have you seen the participation

3    agreement?

4              MR. ISRAEL:  No.  What I've seen is the

5    participation motion that they filed, where they say in

6    their motion --

7              THE COURT:  I'm sorry.  What's a participation

8    motion?

9              MR. ISRAEL:  Oh, I thought you might have recalled

10   this from last time.  The Debtor filed a motion asking the

11   Court to acknowledge participation interests in each of

12   these gems.

13             THE COURT:  It's a whole new day.  I'm not --

14             MR. ISRAEL:  I understand that, but --

15             THE COURT:  Hold on.  Let me -- I want to try to

16   get on the same page.  All of that's withdrawn.  It's

17   ancient history, right?  So, now my question is, if what

18   you're saying is that the Plaintiff cannot proceed because

19   it doesn't have standing, or whatever you believe it needs

20   to proceed --

21             MR. ISRAEL:  Right.

22             THE COURT:  -- I'd like to try to get an answer to

23   that question.  I'm very meat and potatoes, okay?  I don't

24   want to waste a lot of time.  Okay?  I want to find out what

25   really happened.  Okay?  So, there were gems.  They say they

1    were improperly taken, disposed of by your client.  I want

2    to find out what happened.

3            So, the first thing you say is they're not

4    entitled to bring that.  So, let me ask what the facts are.

5            MR. ISRAEL:  Can I just explain why I'm saying

6    what I'm saying?

7            THE COURT:  Yeah.  Because you want to file a

8    motion to dismiss.

9            MR. ISRAEL:  But can I explain what the basis for

10   it would be?

11           THE COURT:  Sure.

12           MR. ISRAEL:  Even though this motion was withdrawn

13   and that we have a brand-new day --

14           THE COURT:  Right.

15           MR. ISRAEL:  -- what we don't have our new facts.

16   We don't have new facts.

17           THE COURT:  Well, I don't know what the facts are

18   at all.  I only -- so, if you would, please --

19           MR. ISRAEL:  Yes.

20           THE COURT:  -- I can see you would like me not to

21   talk, but I'm going to keep talking.  Okay.  I would like to

22   ask counsel for the Debtor/Plaintiff what their version of

23   the facts are.  So, let me hear that, all right?

24           MR. ISRAEL:  Okay, sure.

25           THE COURT:  So, just --

1          MR. ISRAEL:  All right.

2          THE COURT:  We'll go -- we're going to keep at

3     this.  So, the allegation has been made, essentially, that

4     the Plaintiff, the Debtor, doesn't have the right to bring

5     this action.  Could you respond to that?

6          MR. GOODMAN:  Yes, Your Honor.  I can respond in a

7     little bit of detail or a lot of detail, and I'll try to cut

8     to --

9          THE COURT:  Start with a little and let's --

10         MR. GOODMAN:  Try to cut --

11         THE COURT:  -- ramp up to a lot.  All right?

12         MR. GOODMAN:  -- cut to the chase here.  And I

13    recognize, Your Honor, that you don't have the benefit of

14    having reviewed the amended complaint.

15         THE COURT:  Correct.

16         MR. GOODMAN:  We took cues from the TRO hearing

17    and the record.  The complaint has been amended.  There are

18    additional allegations in the complaint and facts that

19    obviously were included.

20         From our standpoint, we believe we have absolute

21    standing, and that with the exception of the ruby ring,

22    ownership does lay with the D&M estate.  That interest is

23    either a 33 percent interest or a 50 percent interest in all

24    cases.  And there is documentary support with respect to

25    each of those stones of, one, the invoice and purchase by

1   our client and the ownership arrangement with the

2   participants; the consignment of the good back and forth,

3   with it ultimately landing with the estate; and then the

4   consignment by the estate to Essex.

5           So, based on that and all of the documents that

6   have been put in as exhibits to that support, we believe we

7   have absolute standing to pursue these claims for the return

8   of those goods on various counts, including fraudulent

9   conveyance, preferential transfers, an alleged security

10  interest.

11          There is no security agreement here.  There is no

12  security that was granted.  There is no perfection of that

13  interest.  And to the extent that it even happened, it

14  happened in the 90 days prior.  This is all property of the

15  estate, we believe, under 541.  And we have claims under

16  542.

17          I can get into specific detail on each of those --

18          THE COURT:  No, that's fine.  So, the bottom line,

19  in response to Mr. Israel's kind of headline point, is that

20  even if the Debtor only has a partial ownership, a less than

21  100 percent ownership of the stone, it doesn't matter.

22  You're entitled to bring the action.

23          MR. GOODMAN:  Right.  Because in either case, they

24  have an ownership interest, but they were also the consignor

25  to Essex or the consignee from one of their partners.

1                THE COURT:  Okay.  All right, thank you.  Okay.

2      Mr. Israel, back to you.

3                MR. ISRAEL:  I'll talk to it from here, if that's

4      okay.

5                THE COURT:  Yeah.

6                MR. ISRAEL:  Well, this is not what Rule 9 calls

7      for.  Rule 9 calls for dismissal if there's a failure to

8      name a necessary party to the action.  If you've got three

9      owners of a gem, and only one of them is suing and the other

10     two are out there who aren't plaintiffs, you don't have

11     necessary parties that you need to bring the action.  Not

12     only that --

13               THE COURT:  Okay.  Hold --

14               MR. GOODMAN:  Can I just --

15               THE COURT:  Hold --

16               MR. GOODMAN:  Can I just address that real

17     quickly?  Each of the partners has been named nominally as a

18     Defendant.

19               MR. ISRAEL:  Doesn't matter.

20               MR. GOODMAN:  They're all --

21               THE COURT:  Well, hold on.  Guys, we're not going

22     to do this.  Okay?  I haven't seen the amended complaint.

23     You want to bring a motion?  Bring a motion.  In the

24     meantime, they are entitled to discovery.  I'm not staying

25     discovery while you bring a motion.

1          MR. ISRAEL:  I understand that.  I understand

2    that.

3          THE COURT:  Okay.  All right.

4          MR. ISRAEL:  The only thing I have to say about

5    the discovery point is I heard talk about having it done in

6    a couple weeks.  That just --

7          THE COURT:  You misheard.  Ms. Cassirer said seven

8    days.

9          MR. ISRAEL:  Oh, it was seven days.  That's right.

10   My client's about to go away.  I have work commitments.

11   We're not going to be able to do seven-day turnaround on

12   discovery, and we shouldn't be required to.  I mean, this

13   has been going on for a while.

14         THE COURT:  You just made an argument -- you just

15   made an admission against interests.  This has been going on

16   for a while?

17         MR. ISRAEL:  Right.

18         THE COURT:  This should be a relatively small

19   universe of documents.  I understand that it's the end of

20   the summer.  But you should be prepared to produce the

21   documents pretty much immediately after Labor Day.  We're

22   not talking about a boatload of documents, right?

23         MR. ISRAEL:  After Labor Day would be fine.  We

24   should be able to do it by after Labor Day.  What I was

25   panicked about was when I heard the seven days, Your Honor.

1          THE COURT:  Well, you didn't hear me say --

2          MR. ISRAEL:  I understand.

3          THE COURT:  You didn't hear me say yes, right?

4          MR. ISRAEL:  I understand that.

5          THE COURT:  So, look, the fundamental is, I'm

6     guessing, you're worried about where is this stuff, right?

7     And that that's --

8          MS. CASSIRER:  That's the primary concern.

9     Absolutely.

10         THE COURT:  That's the primary concern.  I would

11    suggest --

12         MS. CASSIRER:  And we want it back.

13         THE COURT:  I understand.  I understand.  Mr.

14    Israel represented on the record of the prior hearing that

15    the stones are not in Essex's possession.  Okay?  I assume

16    that we're not being too cute by half and that they are in

17    Essex's principals' possession, right?

18         MR. GOODMAN:  The gems --

19         THE COURT:  Where are the stones?

20         MR. ISRAEL:  There's a different disposition of

21    different gems, and what I represented to you in court, Your

22    Honor, was what I just heard from my client in court in real

23    time while we were hear.

24         THE COURT:  Okay.  But it's been a while now.

25         MR. ISRAEL:  It has.

```
 1              THE COURT:  So, you should be in a position to
 2   answer where each of the gems is.
 3              MR. ISRAEL:  I personally don't have that
 4   information off the top of my --
 5              THE COURT:  Is your client here?
 6              MR. ISRAEL:  My client is here.
 7              MS. CASSIRER:  Right there, Your Honor.
 8              THE COURT:  All right.  You want to talk to him?
 9              MR. ISRAEL:  Okay.
10              THE COURT:  Do you want him to schedule?  I mean,
11   there is a schedule --
12              MR. ISRAEL:  No, I know --
13              THE COURT:  -- on the order.  I'd like to know
14   where the gems are.
15              MR. ISRAEL:  Okay, Your Honor.
16              THE COURT:  All right?  Just take a moment.
17              MR. ISRAEL:  Okay.  Thank you.  You know what?
18   I'm sorry, Your Honor.
19              THE COURT:  Yes.
20              MR. ISRAEL:  I don't have that schedule with me.
21   Could I borrow the schedule?  Would you mind if I approach?
22              THE COURT:  I would not mind at all.  I would be
23   happy to give it to you.
24              MR. ISRAEL:  Thank you, Your Honor.
25              MAN:  Thank you, Your Honor.
```

1          THE COURT:  Do you want to take a short break?

2          MR. ISRAEL:  It'd be a little easier if I could

3   take a few minutes to talk to the guy.

4          THE COURT:  I think it would.  Next time you might

5   talk to him before you come to court, but --

6          MR. ISRAEL:  Well, I didn't know that we were

7   going to be dealing with the issue of where each of the gems

8   are.

9          THE COURT:  Okay.

10         MR. ISRAEL:  I thought we were going to approach

11  the --

12         THE COURT:  Well, it is rather the central issue.

13  So, why don't we take a few-minute break.  If you'd like to

14  use my conference room back there, Mr. Israel --

15         MR. ISRAEL:  Okay.

16         THE COURT:  -- you can take your client in there.

17  All right?

18         MR. ISRAEL:  All right.

19         THE COURT:  And we'll come back in 10 minutes.

20         MR. ISRAEL:  Okay.

21         THE COURT:  Everyone can just remain in place.

22  Okay?

23         MR. ISRAEL:  Thank you, Your Honor.

24         THE COURT:  You see, Mr. Israel, it's that door

25  over there.

1          MR. ISRAEL:  Yeah.

2          THE COURT:  Okay?

3          MR. ISRAEL:  (indiscernible)

4          THE COURT:  Okay.  We'll come back in 10 minutes.

5          MR. ISRAEL:  Thank you, Your Honor.

6          CLERK:  All rise.

7     (Recess)

8          THE COURT:  Okay.  Mr. Israel, what did you find

9  out?

10          MR. ISRAEL:  I found out that the gems are with

11  someone named Anna (indiscernible), who is a jewelry dealer

12  in Moscow.

13          THE COURT:  And when did they arrive in Moscow?

14          MR. ISRAEL:  They were there before I was here the

15  last time.  They've always been there.  They're with a

16  reputable jewelry dealer in Moscow.

17          THE COURT:  Would that reputable jewelry dealer be

18  willing to send them back?

19          MR. ISRAEL:  I haven't spoken to the reputable

20  jewelry dealer.  And I would say that there are a whole

21  bunch of transactions here that are involved that you don't

22  know about, that haven't been presented to you, that affect

23  the disposition of the gems.  That it's not the way it was

24  presented to you just a moment ago --

25          THE COURT:  Mm hmm.

1      MR. ISRAEL:  -- this cut and dry claim that the

2  Plaintiff has.  There's more to it than that, which I think

3  we would get to with the --

4      THE COURT:  Okay.  Well, look, I don't know what I

5  don't know.  I gave you a copy of my schedule.

6      MR. ISRAEL:  And I wrote all over it,

7  unfortunately.

8      THE COURT:  You wrote all over it?

9      WOMAN:  (indiscernible)

10      THE COURT:  In here?

11      WOMAN:  Yes (indiscernible).

12      THE COURT:  Okay.  So, let's make -- let's have a

13  clear --

14      WOMAN:  (indiscernible)

15      THE COURT:  Let's have a clear record.  So, the

16  four stones that you're talking about are on this schedule.

17  They're the first three items, right?

18      MR. ISRAEL:  Actually, everything on the schedule

19  is with the same person in Moscow, Anna (indiscernible).

20      THE COURT:  You --

21      MR. ISRAEL:  But apparently --

22      THE COURT:  You --

23      MR. ISRAEL:  I understand what I said last time,

24  but apparently --

25      MR. GOODMAN:  There's a restraint.

1           THE COURT:  Hold --

2           MR. ISRAEL:  Well, they haven't been moved.  They

3   haven't moved --

4           MS. CASSIRER:  There's a bankruptcy stay.

5           THE COURT:  Well, hold on --

6           MR. ISRAEL:  They haven't --

7           THE COURT:  Hold on, hold on.  We were all here,

8   and you told me --

9           MR. ISRAEL:  I know.

10          THE COURT:  -- that you had the last two.

11          MR. ISRAEL:  But I --

12          THE COURT:  That your client had the last two.

13          MS. CASSIRER:  What I meant to -- what I said was

14   that my client wouldn't transfer them.  They wouldn't do

15   anything -- they would stay -- they were already in Moscow

16   at the time.

17          THE COURT:  That's not what you said, Mr. Israel.

18          MR. ISRAEL:  Your Honor, I'm just talking to my

19   client and I'm reporting to you what my client is telling me

20   in real time.  And the fact that --

21          THE COURT:  We had a TRO hearing.

22          MR. ISRAEL:  That's right.

23          THE COURT:  We had a TRO hearing and you were

24   under an obligation to have answered my questions

25   truthfully.  You --

1    MR. ISRAEL:  Your Honor, if you think that I

2   wasn't answering your questions truthfully, that's --

3    THE COURT:  You gave me the clear impression that

4   those last two stones were still in the possession and

5   control of your client.

6    MR. ISRAEL:  Your Honor, they are within my

7   client's control, Your Honor.  That's what I was trying to

8   say --

9    THE COURT:  Great.  Then let's get them back,

10  right?

11    MR. ISRAEL:  That's what I was trying --

12    MR. GOODMAN:  Your Honor, if I could just point

13  you to the transcript for that last hearing, Pages 17, Line

14  5-7, Mr. Israel said, "We have possession of those."

15    MR. ISRAEL:  Right.  And we do.  They're just in

16  Moscow.

17    THE COURT:  But wait.  Then if we do, and they're

18  just in Moscow, then we -- meaning you and your client --

19  will get them back right away.  Otherwise you made a false

20  representation to me.

21    MR. ISRAEL:  I did not make a false

22  representation, Your Honor.

23    THE COURT:  You said --

24    MR. ISRAEL:  I'm sorry.  I just did not make a

25  false representation.  I was here with my client.  I was

1  asking my client questions.  And I was reporting to you what

2  I was told --

3           THE COURT:  And you don't think that at that

4  moment, I would have wanted to hear the words, all of these

5  gems are in Moscow?

6           MR. ISRAEL:  And I didn't know that they were all

7  in Moscow --

8           THE COURT:  You represented to me that they are in

9  our possession.

10          MR. ISRAEL:  That's what --

11          THE COURT:  -- the "our" could not reasonably be

12  construed to include somebody in Moscow.

13          MR. ISRAEL:  They have an affiliate in Moscow,

14  which --

15          THE COURT:  Great.  So, if they have an affiliate

16  in Moscow, then I want them back.

17          MR. ISRAEL:  I understand, Your Honor.  I'm

18  hearing what you're saying.  So, I'm not -- I want to just

19  be clear on one thing, because you said that I may have

20  misrepresented.  I did not misrepresent anything.  I was

21  asking my client questions.  We have the gems where --

22          THE COURT:  Then your client misrepresented.

23  That's even better.

24          MR. ISRAEL:  No, there might have a breakdown in

25  the way we were communicating.  My understanding was that

1    they are within his control, and it's my understanding that

2    they still are within his control, the last two gems.  And

3    you are right.  There shouldn't be any problem bringing them

4    back into the country.  I don't see a problem with that,

5    from what --

6            THE COURT:  Right.  Give me a date certain when

7    they're going to come back.

8            MR. ISRAEL:  Well, my client is just about to take

9    off for a vacation that takes him through the end of the

10   month.  So, can we say September 7th?

11           MS. CASSIRER:  No, we can't say September 7th.

12   There's this great thing.  It's called email and telephone.

13   Okay?  It does not require a long time.  He needs to do what

14   is necessary right away to get those back.  Otherwise, the

15   representation that there in his possession and control,

16   which you just said --

17           MR. ISRAEL:  I did make -- yes.

18           THE COURT:  -- and you also used the word

19   affiliate, then that would turn out to be false.  And the

20   U.S. Trustee is sitting here, and the U.S. Trustee has its

21   own purview and its own view about how people conduct

22   themselves in connection with a bankruptcy proceeding.

23           MR. ISRAEL:  I totally hear everything you're

24   saying.

25           THE COURT:  are you hearing what I'm saying?

1        MR. ISRAEL:  I'm totally hearing what you're

2   saying.  And Your Honor, I would never say anything to

3   knowingly deceive the Court or --

4        THE COURT:  I have --

5        MR. ISRAEL:  -- and I don't think I was being

6   reckless either.  So, we'll make sure the gems are brought

7   back to the states.

8        THE COURT:  Excellent.

9        MS. CASSIRER:  Your Honor, I would like everything

10  back --

11       THE COURT:  Things are always a little wild in

12  Bankruptcy Court.

13       MS. CASSIRER:  Oh, this is beyond wild.  This

14  borders on criminal.  He had no right to dispose of these.

15  He had no right to ship or sell them to anyone under the

16  consignment agreement.

17       THE COURT:  Look, here's the thing, okay?  I'm

18  dealing with the facts on the ground.

19       MS. CASSIRER:  Right.

20       THE COURT:  Okay.  I don't know what the right

21  answer is on the history.  Mr. Israel as a version.  You

22  have a version.  Okay?  I know that you say you're right.

23  He says that he's right.  But we have these gems and we've

24  now ascertained that they are in Moscow --

25       MS. CASSIRER:  Perhaps.

1            THE COURT:  -- and -- well --

2            MS. CASSIRER:  We've already proved that --

3            THE COURT:  -- a representation has been made that

4   they're in Moscow with a "reputable jeweler", who is an

5   affiliate of the principal either of Essex, or a principal

6   of the asset.

7            MS. CASSIRER:  May we have --

8            THE COURT:  And I have directed that they be

9   returned.  And Mr. Israel has said, okay.  So, next we're

10  going to see what happens.  It doesn't require not taking

11  vacation.  I'm not a vacation spoiler.  But presumably,

12  there's a way to get them back from Moscow with all

13  deliberate speed, so --

14           MS. CASSIRER:  Your Honor --

15           THE COURT:  Go ahead.

16           MS. CASSIRER:  May I just clarify that that ruling

17  applies to all the gems on the schedule?

18           THE COURT:  It's not -- well, I characterize it as

19  a ruling.  It's a direction from the Court.

20           MR. ISRAEL:  But Your Honor, not --

21           MS. CASSIRER:  That it applies to all of these.

22           THE COURT:  All of them.

23           MR. ISRAEL:  Not all the gems.  The last two are

24  the ones that we said were available.  The ones on top we

25  said weren't available.  And the reason I said they weren't

1   available is because they went to pay down the loan that

2   they were secured by.  So, the gems were securing the loan.

3   The loan defaulted.  We have checks that show that instead

4   of continuing to repay the loan, my client was instructed to

5   keep the gems.

6           THE COURT:  Well, now you're into the merit --

7           MR. ISRAEL:  But --

8           THE COURT:  Now you're into the merits of the

9   action.

10          MR. ISRAEL:  I understand that.  But I'm only

11  pointing out why it is that only some of the gems -- I

12  represented last time that some of the gems could be frozen.

13  And I'm standing by that today and saying the frozen gems

14  could be brought back to the States.  The other ones that my

15  client no longer owns, I never said he could transfer them.

16  I said the opposite.  And today, to say that my client

17  should return all of them would exceed the parameters of

18  what we are talking about.  Do you know what I'm saying?

19          THE COURT:  I understand what you're saying.  But

20  every time you tell me something, the ground is shifting.

21  Everything is shifting.  I find it very bizarre.

22          MR. ISRAEL:  How has it shifted from what I just

23  said?  I mean, the last time I was here I said that they

24  were available and could be frozen, the bottom two.  I'm

25  saying today that they were frozen and that they could be

1    returned.  I said the top ones, he doesn't have anymore.

2    And I'm not saying anything inconsistent today, am I?

3              MS. CASSIRER:  Your Honor, what he said in that

4    hearing, he didn't really know, but it was represented to

5    him that they were in transit.  This was after the

6    bankruptcy.  We asked for those consigned goods back on May

7    29th, the day after the filing.  The consignment agreement

8    says you can't sell those goods, you can't use them in any

9    way.

10             THE COURT:  When did the gems go to Moscow?

11             MR. ISRAEL:  I have to ask my client.

12             MS. CASSIRER:  Yeah, we need shipping information,

13   Your Honor.

14             MR. ISRAEL:  June 3rd.

15             THE COURT:  All six of them?

16             MS. CASSIRER:  When was it?

17             MR. ISRAEL:  All of them, June 3rd.

18             MR. GOODMAN:  Your Honor, the case was filed May

19   28th.  The demand was made originally May 29th.

20             MR. ISRAEL:  Your Honor, that may be the case, but

21   that's when --

22             MR. GOODMAN:  There was an automatic stay.

23             MR. ISRAEL:  That may be the case, when the case

24   was filed.  I don't think I was working on it then.  And I

25   think that the only thing that involved me in this issue was

1    --

2              THE COURT:  This is not about you.  This is --

3              MR. ISRAEL:  No, I know it's not.

4              THE COURT:  Okay.

5              MR. ISRAEL:  But the only thing that I represented

6    took place at our hearing, and had to do with --

7              THE COURT:  I'm going to move away from that.

8              MR. ISRAEL:  Okay.

9              THE COURT:  There was property of the Debtor that

10   was sent out of the country.

11             MR. ISRAEL:  It's not property of the Debtor that

12   first (indiscernible).  So, one of the gems, they concede

13   that they don't own at all.  So, it's not property of the

14   Debtor.  It's --

15             MS. CASSIRER:  Your Honor, it is property of the

16   Debtor.  Both parties have consignment and a financial

17   interest of D&M.  And even in the ruby, we had a proper

18   participation.  There's a (indiscernible) history.

19             MR. ISRAEL:  No, it's not.

20             MS. CASSIRER:  They engaged in a violation of the

21   bankruptcy stay.

22             MR. ISRAEL:  It's not the case --

23             THE COURT:  Mr. Israel, I want those gems back.  I

24   want them back in the United States.

25             MR. ISRAEL:  I understand.

1              THE COURT:  Okay.  So, while we're arguing about -

2    - with all of this, I want them back.  Because the next

3    thing that's going to happen is they're not going to be

4    there.  So, I want them back.  Do you understand, sir?  Do

5    you understand what I'm saying?

6              MR. PAUL:  Yeah, I understand.

7              THE COURT:  Do you understand that I am ordering

8    you to have those gems returned to the United States and to

9    be deposited --

10             MR. PAUL:  The problem, I have to pay people the

11   money to get them back.

12             MR. ISRAEL:  The top three that I was talking

13   about before that I said we don't own anymore, that's what

14   he's referring to.

15             MR. PAUL:  I have to pay --

16             THE COURT:  You sold them to those people?

17             MR. PAUL:  I bought those stones.  I bought the

18   stones from D&M Capital.  D&M Capital delivered it to me.

19   Thus, the stones, overcharged the --

20             THE COURT:  I don't want to hear about

21   overcharging.

22             MR. PAUL:  Okay.  Delivered me --

23             THE COURT:  You sent the stones to Moscow?

24             MR. PAUL:  Correct.

25             THE COURT:  Did you get money back?

1            MR. PAUL:  Sorry?

2            THE COURT:  Did you sell those to somebody?

3            MR. PAUL:  No, I owe people almost $17-18 million.

4            THE COURT:  You gave people those stones because

5     you owed them money?

6            MR. PAUL:  Because their money (indiscernible).

7            MS. CASSIRER:  Your Honor, the other date certain

8     --

9            MR. PAUL:  (indiscernible) people --

10           THE COURT:  Hold on.

11           MR. PAUL:  I borrowed almost $17-18 million from

12    people to give to D&M Capital and other peoples.  And this

13    was in my safe deposit always for 7-8 years.

14           THE COURT:  Okay.  We're into all kinds of stories

15    here.  Does it remain the case that the two stones that it

16    was represented were in -- that were not going to be

17    transferred, that were in his possession and control, can

18    those come back from Moscow?

19           MR. ISRAEL:  Yes.  That's what I was saying.

20           MR. PAUL:  There's a spreadsheet from D&M Capital

21    they made (indiscernible) first two payments, $300,000.

22           THE COURT:  Okay, please, please, please.

23           MR. PAUL:  I borrow --

24           MR. ISRAEL:  Stop, stop.  She doesn't want to hear

25    from you right now.

1            THE COURT:  Please, have a seat.

2            MR. ISRAEL:  Sit down.

3            THE COURT:  Thank you.  All right.  The two stones

4    --

5            MR. ISRAEL:  Yes.

6            THE COURT:  -- I want back.

7            MR. ISRAEL:  Okay.

8            THE COURT:  All right?  Do you understand?  I want

9    back.  I want them to be shipped back by the end of this

10   week.  Okay?

11           MR. ISRAEL:  Okay.

12           THE COURT:  They come to you.

13           MR. ISRAEL:  To me personally?

14           THE COURT:  Well --

15           MR. ISRAEL:  All right.

16           THE COURT:  I'm happy to have them come to them.

17   They can put them in their vault.

18           MR. ISRAEL:  I'll put them in a bank.  I'll put

19   them in a bank.

20           MS. CASSIRER:  Your Honor, I would prefer to have

21   them in our possession, rather than his.

22           MR. ISRAEL:  And I would prefer to have them in my

23   possession because they haven't won a judgment yet, and

24   they're not their gems yet.  And I'll put them in a box.

25   And obviously, nothing's going to happen to them.

1          THE COURT:  Well, how will they be insured?

2          MR. ISRAEL:  I'll get insurance for them.

3          MS. CASSIRER:  Your Honor, he wants -- how much

4   insurance does he have now?  I want to know.  Because we'll

5   go after his insurance if that happens.

6          THE COURT:  At this level, I want you to work this

7   out.  All right?  I have directed and it's been clarified

8   what stones can come back.  We have those two stones.

9          MS. CASSIRER:  I'm sorry.  One more question.

10          THE COURT:  Yes.

11          MS. CASSIRER:  Besides the other two stones, the

12   only representation that Mr. Paul basically "sold" those

13   other goods in exchange for this huge debt that he had to

14   Russians was as to the two capstones, not all four, as I

15   understand it.

16          THE COURT:  He's telling me --

17          MS. CASSIRER:  Just the ones that were supposedly

18   --

19          THE COURT:  I took the statements to mean all

20   four.

21          MS. CASSIRER:  Well, I -- could we have

22   clarification on that?

23          MR. ISRAEL:  And that's what we did the last time.

24   We had separated all four -- we separated the top four from

25   the bottom two, and what I'm saying is consistent with what

1    I said last time, that the bottom two are within in custody

2    and control and can be returned.

3              THE COURT:  Right.  So, not the top four?

4              MR. ISRAEL:  That's right.

5              MS. CASSIRER:  So, he used those to pay his own

6    debts?  Okay.  So, by the end of the week, Your Honor --

7              THE COURT:  By the end of the week --

8              MS. CASSIRER:  -- they have to be shipped here?

9              THE COURT:  -- they need to be in transit to the

10   United States.  And you need to get shipping tracking

11   information.

12             MS. CASSIRER:  For all of them?

13             THE COURT:  For the two that we're getting back.

14             MS. CASSIRER:  Then may I also have the

15   information as to where these goods are and how they were

16   shipped to begin with?

17             THE COURT:  Yes.

18             MS. CASSIRER:  Immediately?

19             THE COURT:  Yeah.

20             MS. CASSIRER:  Thank you, Your Honor.

21             THE COURT:  Okay.  Before we can sort out owes

22   what to whom, you know, the point of what we did at the TRO

23   hearing was I was accepting what you said, Mr. Israel, at

24   face value.  We'll leave for another day, accurate,

25   inaccurate.  I was certainly not under the impression that

1   we were talking about millions of dollars of gems being in

2   Moscow.  We're going to put that to one side.

3            We're going to get those two stones back.  You're

4   going to secure them in your vault, in your safe deposit

5   box.  They're going to be fully insured.  You're going to

6   provide transit information to counsel for the Debtor.

7   You're going to provide proof of insurance.  And then we're

8   going to move forward.

9            They're going to serve discovery requests on you.

10  You're going to comply with the discovery requests by the

11  end of the day on the Friday after Labor Day, which is

12  September 6th.

13           You're going to work out between both sides dates

14  for your clients to make themselves available for a

15  deposition.  All right?  Your client would like to talk to

16  you.

17           MR. ISRAEL:  What do I do?  Can I take a second to

18  talk?

19           THE COURT:  You can talk to him.  Yes.  Mm hmm.

20           MR. ISRAEL:  I'm sorry --

21           THE COURT:  No, we're good.  New facts?

22           MR. ISRAEL:  No new facts.  You gave us until the

23  end of the week to transfer the -- to have them in transit.

24  They will be in transit before the end of the week back to

25  the States.

1          THE COURT:  And will they -- and how will they be

2     insured while they're in transit?

3          MR. ISRAEL:  We'll arrange for insurance.  It's my

4     client's business.  I'm sure that my client knows how to

5     arrange for insurance for transferring --

6          THE COURT:  You know, I never assume anything,

7     though.  I just -- I want to be sure that they are insured

8     while they are in transit --

9          MR. ISRAEL:  We will --

10          THE COURT:  -- because things happen.

11          MR. ISRAEL:  We'll make sure that they are insured

12     while they're in transit, Your Honor.

13          THE COURT:  Okay.  I want to be very clear that

14     this is a serious situation.  I know that you have your

15     version of the facts, they have their version facts, but

16     this is a bankruptcy estate.  Eventually, we're going to

17     determine what the real facts are.

18          If it is determined that in fact those gems were

19     transferred after the case was filed, then that's a big

20     problem.

21          MR. ISRAEL:  They were not.  But I understand what

22     --

23          THE COURT:  You literally told me 10 minutes ago

24     that they were.

25          MR. ISRAEL:  Oh, I'm sorry.  I meant after the TRO

1    was entered.  That's what I was thinking.

2          MS. CASSIRER:  After the bankruptcy was filed.

3          MR. ISRAEL:  No, that's what --

4          THE COURT:  After the bankruptcy case was filed.

5          MR. ISRAEL:  That's what I'm saying.

6          THE COURT:  Which as you know --

7          MR. ISRAEL:  Okay.

8          THE COURT:  -- once a bankruptcy case is filed,

9    it's a violation of the automatic stay to transfer property

10   of the Debtor --

11         MR. ISRAEL:  It's property of the Debtor, yes.

12         THE COURT:  -- if it's property of the Debtor.

13   Absolutely.

14         MR. ISRAEL:  Right.

15         THE COURT:  I know it's your position that it

16   wasn't, but that all remains to be seen.  I think we ought

17   to assume that this should be on a -- consistent with the

18   Federal Rules of Civil Procedure.  This ought to be on a

19   fast track for disposition.  Okay?  It's a relatively narrow

20   universe of facts and we need to get it sorted out sooner

21   rather than later.  All right?

22         MR. ISRAEL:  Okay, Your Honor --

23         THE COURT:  Yeah.

24         MR. ISRAEL:  May I just say one other --

25         THE COURT:  Sure.

1          MR. ISRAEL:  If I gave you the impression that I

2    wasn't taking this very, very seriously, I apologize for

3    that because --

4          THE COURT:  You did.  But it also seems --

5          MR. ISRAEL:  Because --

6          THE COURT:  It also seems clear -- and I'm trying

7    to say this nicely -- that you had alarmingly few facts from

8    your client, which I think is unfortunate.  So, he's here

9    today.  I don't know what your communications are with him.

10   I'm not going to invade your attorney-client privilege.  But

11   I strongly suggest you do a very thorough debrief with him

12   so that you, as an officer of the court, are familiar with

13   what the facts are.  All right?

14         MR. ISRAEL:  I understand, Your Honor.

15         THE COURT:  Okay.  All right.  Yes, sir?

16         MR. MULLER:  My name is Andrew Muller.  I'm an

17   attorney at Platzer Swergold.  My clients are Ultimate

18   Jewelry Designs, LLC and Shanghai Pearls and Gems, Inc. --

19         THE COURT:  Okay.

20         MR. MULLER:  -- locally known as Ultimate Diamond.

21   We have a participation interest in the two stones that are

22   the topic of discussion here.  And so --

23         THE COURT:  The ones that are coming back?

24         MR. MULLER:  That's correct.

25         THE COURT:  Okay.

1           MR. MULLER:  And I want to confirm that Ultimate

2      Diamond will be named as an insured party on the policy

3      covering the stones while they're in transit, et cetera.

4           THE COURT:  Very good point.

5           MR. GOODMAN:  Your Honor, we have no objection.

6           THE COURT:  Okay.  So, what you should do is

7      communicate, get together, communicate.  I think the Debtor

8      should communicate to Mr. Israel who that universe should be

9      with respect to each of the two stones that are coming back

10     to the United States.

11          MR. MULLER:  Thank you.

12          THE COURT:  All right.  That's an excellent point.

13     Okay.  Sir?

14          MR. MEDINA:  Your Honor, may I be heard?

15          THE COURT:  Yeah.

16          MR. MEDINA:  Good morning, Your Honor.  Eric

17     Medina --

18          THE COURT:  Yeah.  Talk into a microphone.

19     Otherwise, we will be recording you.

20          MR. MEDINA:  Good morning, Your Honor.  Eric

21     Medina.  I'm here today on behalf of Mr. Spector

22     individually.

23          THE COURT:  Yeah.

24          MR. MEDINA:  I just ask that with respect to Your

25     Honor's order, if we could just have Mr. Israel's office

1    copy us on the correspondence with respect to when it's

2    going to be shipped and all that.

3                    THE COURT:  Absolutely.  Okay.

4                    MR. MEDINA:  Thank you.

5                    THE COURT:  All right.  I'm so ordering the record

6    today with respect to everything that we have discussed and

7    that I've directed.  You don't have to submit a further

8    order.

9                    MS. CASSIRER:  Thank you, Your Honor.

10                   THE COURT:  All right?

11                   MS. CASSIRER:  Your Honor, may we have another

12   conference with you scheduled so that we can --

13                   THE COURT:  Sure.

14                   MS. CASSIRER:  -- make sure that we know --

15                   THE COURT:  Yep.

16                   MS. CASSIRER:  -- everything is set?

17                   THE COURT:  Yep.  Let me get my calendar out.

18                   MR. FERDINANDS:  Your Honor, this is Paul

19   Ferdinands, with King & Spalding, representing Radwan

20   Diamond & Jewellery Trading.  Could I be heard, Your Honor?

21                   THE COURT:  Sure.

22                   MR. FERDINANDS:  First of all, I'd like to thank

23   the Court for letting me participate by phone.

24                   THE COURT:  Of course.

25                   MR. FERDINANDS:  Radwan is one of the parties that

1    has a participation interest in the diamonds or other

2    jewelry that were held by the Debtor.  This is obviously a

3    very disturbing situation.  There are several things that

4    appear to be undisputed, or at least not subject to a good

5    faith dispute.

6            First, Essex Global Trading, in the adversary

7    proceeding, has a principal, Alecks Paul, that is a

8    convicted felon.

9            THE COURT:  All right.  We --

10           MR. FERDINANDS:  That is a matter of public

11   record.

12           THE COURT:  We've covered that ground.  It's

13   frankly neither here nor there.  But go ahead.

14           MR. FERDINANDS:  Well, I think it is relevant,

15   Judge, because at the end of the day, Essex had possession

16   of all of these diamonds or other jewelry that are the

17   subject of the adversary proceeding.  They've never disputed

18   that they had possession of those.

19           They're now claiming they've transferred some of

20   them, despite the fact that the case was filed in May.

21   They've been unable or unwilling to provide an accounting

22   regarding where they are, if he has  possession of them, if

23   they were sold, who bought them, for what price, where are

24   the proceeds, et cetera.

25           And we share the Court's concern that Essex and

1    its principal don't appear to be taking this proceeding

2    seriously and don't appear to respect the fact that this is

3    a Federal court.

4              THE COURT:  Hold on.  If that was the case before,

5    it's not the case anymore.  It's very clear here in the

6    courtroom that everyone is taking this quite seriously.  So,

7    I hear you and I appreciate your concern.  We've hit the

8    reset button today and at the first hearing, everything was

9    a little, not crisp I'll say.  And now on the Debtor's side,

10   a lot more work has been done and we have a very clear path

11   forward.

12             In the courtroom today, I've communicated in no

13   uncertain terms, and the presence of the Office of the U.S.

14   Trustee, that this is a very serious matter, and that I've

15   urged Mr. Israel to spend more time with his client

16   gathering the facts.  As you heard, I wasn't interested in

17   there being lengthy delays to begin to get to the bottom of

18   this.

19             So, are you a participant, did you say, in the two

20   stones that are coming back to the United States?

21             MR. FERDINANDS:  No, Your Honor.

22             THE COURT:  No.

23             MR. FERDINANDS:  We are participants in the ones

24   that have been absconded with.

25             THE COURT:  Okay.  All right.  So, is there

1    something specific, other than bringing -- than making a

2    record with respect to your interest here?  Is there

3    something specific that you're asking for?

4            MR. FERDINANDS:  I'm just wondering whether the

5    Court should consider contacting the U.S. Attorney's Office

6    and getting them involved in investigating potential

7    criminal activity.

8            THE COURT:  Mr. Morrissey, who is with the Office

9    of the United States Trustee, which as you know is an arm of

10   the Justice Department, he is in the position to take this

11   up to the extent that he believes that there was any

12   criminal activity.  This Court does not make referrals

13   directly to the U.S. Attorney's Office under these

14   circumstances.

15           The U.S. Trustee is here, and I can represent to

16   you is paying attention.  If you would like to discuss that

17   further with the Office of the U.S. Trustee, I'm sure Mr.

18   Morrissey or his colleagues would be happy to talk to you.

19           I'm taking this very seriously.  I think everyone

20   in the courtroom is taking it very seriously.

21           MR. FERDINANDS:  And I certainly appreciate that,

22   Your Honor, as Judge, and so I appreciate the opportunity to

23   be heard.  And I can reach out to Mr. Morrissey.

24           THE COURT:  Okay.  The amended complaint was set

25   for a pretrial on September 26th, Thursday, September 26th.

1    Can we use that date?

2              MS. CASSIRER:  I would like to see it sooner, Your

3    Honor, because I suspect we're going to have other issues.

4              THE COURT:  Hold on one second.

5              MS. CASSIRER:  If it's possible.

6              THE COURT:  Hold on one second.

7              MS. CASSIRER:  Thank you.

8              THE COURT:  September 10th?  Tuesday.

9              MS. CASSIRER:  Thank you, Your Honor.  That works.

10             THE COURT:  Let Mr. Israel check his calendar.  It

11   would be at 3:30 in the afternoon.  Mr. Morrissey --

12             MR. ISRAEL:  September 10th, you said?

13             THE COURT:  Yeah.  It's a Tuesday.  Does that work

14   for you, do you think?

15             MR. MORRISSEY:  Your Honor, I show to have a

16   disclosure statement hearing in the (indiscernible) case,

17   but that's at 10:00, so --

18             THE COURT:  It should be over by then.

19             MR. MORRISSEY:  I certainly hope so, Your Honor.

20             MR. ISRAEL:  Works for me, Your Honor.

21             THE COURT:  Okay, great.  September 10th at 10:30.

22   That will have been after the date for completion of

23   document discovery.  And you all are going to work together

24   on the deposition dates.  If you have any problems figuring

25   that out, you can always contact us.

1          MR. GOODMAN:  To your point --

2          THE COURT:  What else?

3          MR. GOODMAN:  Your Honor, Brett Goodman, of

4    Troutman, for --

5          THE COURT:  Yeah.

6          MR. GOODMAN:  -- proposed counsel for the Debtor.

7    Just two points.  The first, respect to the so ordered

8    record --

9          THE COURT:  Yes.

10         MR. GOODMAN:  -- which is now pretty lengthy, to

11   the extent that it is not complied with and we do not

12   receive all of the confirmation and documentation that Your

13   Honor directed Essex to provide, should we just file a

14   letter or reach out directly to chambers?  Because we may

15   need to have an emergency conference --

16         THE COURT:  Okay.

17         MR. GOODMAN:  -- with the Court.

18         THE COURT:  Let's take one thing at a time.  So, I

19   think the record today is voluminous, but it's clear.  I

20   have directed that by Friday, the two gems that are last

21   listed on the schedule to order disposing the TRO, be put in

22   transit from Moscow, where it has been represented that they

23   are, to the United States, to Mr. Israel.  Proof -- tracking

24   information will be provided to counsels for the Debtor, and

25   proof of insurance will be provided.  That insurance will

1    name as beneficiaries all the participants in the stones

2    that are being sent.  All right?

3            So, that's the clear and concise unambiguous

4    statement of what I have ordered.  To the extent that that

5    is violated, that would form a predicate for an order to

6    show cause as to why there should not be issued an order of

7    contempt.  The law requires that there be a clear and

8    unambiguous order that is not followed.  So, I have just

9    made a record as to what the clear and unambiguous order is.

10           MR. ISRAEL:  Your Honor, just one thing I would

11   ask is that the Plaintiff, or the Debtor, provide me with

12   the names and all the critical data for the participants in

13   the gems --

14           THE COURT:  Yes.

15           MR. ISRAEL:  -- just so there's no dispute about

16   it, and they can be included as insureds.

17           THE COURT:  Yes.

18           MR. MULLER:  I was going to say, Your Honor, I

19   would like all of that information provided to my office as

20   well --

21           THE COURT:  Of course.

22           MR. MULLER:  -- since we are direct participants -

23   -

24           THE COURT:  Yes.

25           MR. MULLER:  -- but not necessarily standing in

1    the shoes of the Debtor.

2              THE COURT:  Yes.

3              MR. MULLER:  Thank you.

4              THE COURT:  That as well.  All right?

5              MR. GOODMAN:  Your Honor, I think that covers

6    everything --

7              THE COURT:  Okay.

8              MR. GOODMAN:  -- other than -- I think we had also

9    requested the shipping information with respect --

10             THE COURT:  Yes.  I said tracking information.

11             MR. GOODMAN:  -- with respect to other four pieces

12   be provided.

13             THE COURT:  Right.  But that's going to -- I'm

14   going to put that in with your general discovery request.

15             MR. GOODMAN:  Okay.

16             THE COURT:  All right?  Because that is what it

17   is.  That's not these gems that I've been told we can get

18   back that we need to get back.

19             MR. GOODMAN:  Understood, Your Honor.

20             THE COURT:  All right?

21             MR. GOODMAN:  Okay.

22             THE COURT:  I think were done.  Mr. Morrissey?

23             MR. GOODMAN:  I have one other --

24             THE COURT:  Okay.

25             MR. GOODMAN:  I did say I have one other thing --

1              THE COURT:  One other thing?

2              MR. GOODMAN:  -- and it's almost comical, I think,

3    related to everything else going on.  We filed a retention

4    application --

5              THE COURT:  Yes, you filed a retention

6    application.  U.S. Trustee, no objection?  Do you know?

7              MR. GOODMAN:  The U.S. Trustee has reviewed our --

8              MR. MORRISSEY:  The U.S. Trustee has reviewed the

9    retention papers.  The U.S. Trustee has no objection.  It

10   does make clear that, I believe it's July 10th, is the

11   effective date of the new retention and the cutting off of

12   the old retention.

13             THE COURT:  Very good.  Okay.  I just know that I

14   haven't seen it yet.  I'll take a look at it.

15             MR. GOODMAN:  We filed yesterday.  If Your Honor

16   would like, we can put it on for presentment.  Or if that's

17   not necessary, we can just submit the order --

18             THE COURT:  I've got the no objection from the

19   U.S. Trustee.  Send us an order to chambers, email, in Word,

20   and I'll take a look at it and we'll get it entered.

21             MR. GOODMAN:  Thank you, Your Honor.

22             THE COURT:  All right?

23             MR. MORRISSEY:  Your Honor, just one suggestion --

24             THE COURT:  Sure.

25             MR. MORRISSEY:  -- for the Court and the parties.

1    Given the gap in time between the time the two stones are

2    supposed to be returned this coming Friday and the September

3    10th hearing, I was just wondering whether the Court wanted

4    a writing of some kind to be posted on the docket with an

5    update regarding that.  Perhaps positive news, as opposed to

6    just negative news that it hasn't happened.

7              THE COURT:  It's a good suggestion.  Of course,

8    it's great for creditors to be informed.  I don't know how

9    to do that, Mr. Morrissey.  And I think that interested

10   parties can always call counsel.  So, it's an excellent

11   suggestion, but I don't know how to effectuate that.

12             MR. MULLER:  I was going to say, Your Honor, I

13   have to echo the sentiment.  It's merely an issue of

14   receiving notice of confirmation that the stones have been

15   received by Mr. Israel.

16             THE COURT:  Oh, I misunderstood.  That can be

17   done.  Debtor's counsel can file -- can send a letter to

18   chambers and put on the docket indicating that the stones

19   have been received.  I thought, Mr. Morrissey, you were

20   talking generally about everything that's going on.

21             MR. MORRISSEY:  No, no, no.  Just that one --

22             THE COURT:  I'm sorry.

23             MR. MORRISSEY:  -- (indiscernible) items.

24             THE COURT:  I misunderstand.  Debtor's counsel,

25   can you put a status letter on the docket?

1          MR. GOODMAN:  Your Honor, we're happy to file it.

2          THE COURT:  Okay.  I apologize.

3          MR. GOODMAN:  I, of course, don't want to engage

4   in a letter writing campaign.

5          THE COURT:  No.

6          MR. GOODMAN:  It'll be short and --

7          THE COURT:  No, it's just --

8          MR. GOODMAN:  -- and confirm it's --

9          THE COURT:  -- to confirm that what I directed

10  today happened or did not happen.

11         MR. GOODMAN:  Correct.

12         THE COURT:  Okay.

13         MR. GOODMAN:  Happy to do that, Your Honor.

14         THE COURT:  Okay.  I think were done.  Thank you

15  all for your patience.  And I'll see you -- I'll hear from

16  you and then I'll see you again shortly after Labor Day.

17  All right?  Thank you very much.

18         ALL:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         (Whereupon these proceedings were concluded at

21  12:33 PM)

22

23

24

25

1                    C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    **Sonya**

6    **Ledanski Hyde**

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2019.08.15 15:15:36 -04'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 15, 2019

| & |
|---|
| **&**   5:8,10 7:18 |
| 51:19,20 |

| 0 |
|---|
| **0104**   15:21 |
| **0105**   15:20 |

| 1 |
|---|
| **1.38**   15:20 |
| **1.4**   11:1 |
| **10**   16:16 29:19 |
| 30:4 47:23 |
| **100**   24:21 |
| **10004**   2:3 |
| **10014**   4:23 |
| **10016**   5:13 |
| **10022**   4:6 |
| **10038**   5:4 |
| **10174**   4:16 |
| **10:00**   55:17 |
| **10:30**   55:21 |
| **10th**   7:23 55:8,12 |
| 55:21 59:10 60:3 |
| **11**   8:25 9:13 12:7 |
| 12:12 |
| **11.5**   11:13 |
| **11501**   62:23 |
| **11:17**   2:6 |
| **12**   14:15,23 |
| **12-16**   14:24 |
| **12:33**   61:21 |
| **12th**   11:5 15:8 |
| **13**   2:5 |
| **15**   62:25 |
| **17**   9:3 14:8 33:13 |
| **17-18**   42:3,11 |
| **180**   5:3 |
| **18th**   5:12 |
| **19-01300**   1:4 3:3 |
| **19-11711**   1:3 3:1 |

| 2 |
|---|
| **2006**   8:24 |
| **2012**   16:13 18:18 |
| **2019**   2:5 7:23 9:13 |
| 16:18 62:25 |
| **21**   14:6 |
| **21st**   4:22 |
| **24**   11:7 |
| **26th**   54:25,25 |
| **27th**   18:24 |
| **28**   14:6 |
| **28th**   9:13 18:24 |
| 39:19 |
| **29th**   15:6 39:7,19 |

| 3 |
|---|
| **30**   18:14 |
| **300**   62:22 |
| **300,000**   42:21 |
| **33**   4:22 23:23 |
| **330**   62:21 |
| **341**   13:5 |
| **3:30**   55:11 |
| **3rd**   39:14,17 |

| 4 |
|---|
| **4**   11:3,4,22 |
| **405**   4:15 |
| **475**   5:12 |

| 5 |
|---|
| **5,530,000**   11:9 |
| **5-7**   33:14 |
| **50**   23:23 |
| **5251**   15:22 |
| **541**   24:15 |
| **542**   24:16 |

| 6 |
|---|
| **6.5**   16:10,12 |
| **6th**   5:3 46:12 |

| 7 |
|---|
| **7-8**   42:13 |
| **7.5**   9:7 14:10 |
| 16:20 |

| 7 |
|---|
| **7th**   4:15 35:10,11 |

| 8 |
|---|
| **875**   4:5 |

| 9 |
|---|
| **9**   25:6,7 |
| **90**   14:7 24:14 |
| **950,000**   11:2 |

| a |
|---|
| **able**   12:20 26:11 |
| 26:24 |
| **absconded**   53:24 |
| **absolute**   23:20 |
| 24:7 |
| **absolutely**   13:20 |
| 16:6 27:9 48:13 |
| 51:3 |
| **accepting**   45:23 |
| **accomplish**   14:4 |
| **account**   9:8 16:5 |
| 16:23 |
| **accounting**   15:4 |
| 17:2 52:21 |
| **accurate**   45:24 |
| 62:4 |
| **achieved**   12:14 |
| **acknowledge** |
| 20:13 21:11 |
| **action**   23:5 24:22 |
| 25:8,11 38:9 |
| **active**   10:19 |
| **activity**   54:7,12 |
| **add**   8:24 13:14 |
| **addition**   11:6 |
| **additional**   9:20 |
| 11:19 23:18 |
| **address**   25:16 |
| **adequate**   12:3 |
| **administrative** |
| 12:24 |
| **administrator** |
| 16:22 |

| |
|---|
| **admission**   26:15 |
| **admittedly**   16:21 |
| **adv**   1:4 |
| **adversary**   7:10,11 |
| 7:16 9:14 13:19 |
| 14:3 16:25 52:6 |
| 52:17 |
| **affect**   30:22 |
| **affiliate**   34:13,15 |
| 35:19 37:5 |
| **afternoon**   55:11 |
| **aggregate**   9:2 |
| **ago**   30:24 47:23 |
| **agreement**   14:13 |
| 21:3 24:11 36:16 |
| 39:7 |
| **agreements**   16:13 |
| **agrees**   15:2 |
| **ahead**   7:19 13:23 |
| 37:15 52:13 |
| **al**   1:15 |
| **alarm**   10:19 |
| **alarmingly**   49:7 |
| **alecks**   6:14 9:15 |
| 52:7 |
| **alissa**   4:8 |
| **allegation**   23:3 |
| **allegations**   23:18 |
| **alleged**   9:11 14:16 |
| 24:9 |
| **allisa**   6:17 |
| **amended**   12:23 |
| 14:24 15:10 18:1 |
| 20:11,12,13 23:14 |
| 23:17 25:22 54:24 |
| **amount**   11:8 |
| **ancient**   21:17 |
| **andrew**   5:15 |
| 49:16 |
| **anna**   30:11 31:19 |
| **annexed**   14:25 |
| **answer**   13:3 21:22 |
| 28:2 36:21 |

**answered** 32:24
**answering** 33:2
**answers** 20:4
**anymore** 39:1
  41:13 53:5
**apologize** 49:2
  61:2
**apparently** 31:21
  31:24
**appear** 52:4 53:1
  53:2
**appearing** 7:18
**appended** 17:10
  19:23,25
**application** 59:4,6
**applies** 37:17,21
**appreciate** 53:7
  54:21,22
**approach** 28:21
  29:10
**approximately**
  11:1,1,3,7,9,13,22
**arguing** 41:1
**argument** 26:14
**arises** 16:12
**arm** 54:9
**armed** 10:19
**arrange** 47:3,5
**arrangement** 24:1
**arrive** 30:13
**ascertained** 36:24
**aside** 20:4
**asked** 39:6
**asking** 18:17
  21:10 34:1,21
  54:3
**aspects** 8:15
**asset** 37:6
**assets** 14:18 18:19
**assume** 27:15
  47:6 48:17
**attention** 54:16

**attorney** 49:10,17
**attorney's** 54:5,13
**attorneys** 4:13,21
  5:2,9 19:9
**august** 2:5 11:4
  15:8 18:24 62:25
**aurora** 4:10 6:12
  6:17 9:16 13:22
  14:1
**automatic** 39:22
  48:9
**available** 37:24,25
  38:1,24 46:14
**avenue** 4:5,15
  5:12

**b**

**b** 2:21
**b6** 18:14
**back** 7:24 15:11
  15:13 16:13 17:2
  18:18,19 24:2
  25:2 27:12 29:14
  29:19 30:4,18
  33:9,19 34:16
  35:4,7,14 36:7,10
  37:12 38:14 39:6
  40:23,24 41:2,4
  41:11,25 42:18
  43:6,9,9 44:8
  45:13 46:3,24
  49:23 50:9 53:20
  58:18,18
**background** 8:10
  17:4
**backwards** 8:8
**bank** 43:18,19
**bankruptcy** 1:1
  2:1,23 15:5 32:4
  35:22 36:12 39:6
  40:21 47:16 48:2
  48:4,8
**based** 15:15 24:5

**basically** 16:7,18
  18:13 19:10,12
  44:12
**basis** 8:1 15:17
  16:6 22:9
**begun** 11:19
**behalf** 7:18 50:21
**believe** 9:6 12:11
  13:21 19:11 21:19
  23:20 24:6,15
  59:10
**believes** 12:6
  54:11
**beneficiaries** 57:1
**benefit** 8:7 23:13
**better** 34:23
**beyond** 36:13
**big** 47:19
**bit** 6:8,9 23:7
**bizarre** 38:21
**boatload** 26:22
**borders** 36:14
**borrow** 28:21
  42:23
**borrowed** 42:11
**bottom** 24:18
  38:24 44:25 45:1
  53:17
**bought** 41:17,17
  52:23
**bowling** 2:2
**box** 43:24 46:5
**brand** 22:13
**break** 29:1,13
**breakdown** 34:24
**brett** 4:9 6:10,15
  7:20 14:2,6 56:3
**bring** 20:25 21:1
  22:4 23:4 24:22
  25:11,23,23,25
**bringing** 35:3
  54:1

**brought** 14:3 17:1
  20:8 36:6 38:14
**building** 4:14
**bulk** 14:17
**bunch** 19:21
  30:21
**business** 8:11,14
  8:21 11:17,20
  12:3,18 47:4
**busy** 12:23
**button** 6:7 53:8
**buyer** 16:20
**buying** 8:11
**buzz** 10:2

**c**

**c** 2:22 4:1,25 6:1
  62:1,1
**calendar** 51:17
  55:10
**call** 16:7 60:10
**called** 10:5,18
  35:12
**calls** 25:6,7
**campaign** 61:4
**capital** 1:8,12
  7:22 12:1,9 41:18
  41:18 42:12,20
**capstones** 44:14
**case** 1:3,4 6:7 7:9
  7:13 8:7 9:13
  11:25 12:11 13:1
  13:4,11,21 20:2
  24:23 39:18,20,23
  39:23 40:22 42:15
  47:19 48:4,8
  52:20 53:4,5
  55:16
**cases** 23:24
**cash** 12:3
**cassirer** 4:10 6:4
  6:12,17,21 9:16
  10:11 13:22,24
  14:1,1 15:12,23

16:1 17:12,19,21
17:23 18:2,4,7,11
19:1,4,6,8,17 26:7
27:8,12 28:7 32:4
32:13 35:11 36:9
36:13,19,25 37:2
37:7,14,16,21
39:3,12,16 40:15
40:20 42:7 43:20
44:3,9,11,17,21
45:5,8,12,14,18
45:20 48:2 51:9
51:11,14,16 55:2
55:5,7,9
**cause** 57:6
**central** 29:12
**certain** 20:1 35:6
42:7
**certainly** 45:25
54:21 55:19
**certified** 62:3
**cetera** 50:3 52:24
**chambers** 56:14
59:19 60:18
**chapman** 2:22
**chapter** 8:25 9:13
12:7,12
**characterize**
37:18
**chase** 14:12 23:12
**check** 55:10
**checks** 38:3
**chrysler** 4:14
**circumstances**
54:14
**civil** 48:18
**claim** 31:1
**claiming** 52:19
**claims** 12:21,21
16:8 24:7,15
**clarification**
44:22

**clarified** 44:7
**clarify** 37:16
**clear** 31:13,15
33:3 34:19 47:13
49:6 53:5,10
56:19 57:3,7,9
59:10
**clerk** 30:6
**client** 20:3,23
22:1 24:1 27:22
28:5,6 29:16
32:12,14,19,19
33:5,18,25 34:1
34:21,22 35:8
38:4,15,16 39:11
46:15 47:4 49:8
49:10 53:15
**client's** 26:10 33:7
47:4
**clients** 46:14
49:17
**close** 16:16
**closes** 10:5
**colleague** 7:15
**colleagues** 6:17
54:18
**combination**
10:20 12:14
**come** 29:5,19 30:4
35:7 42:18 43:12
43:16 44:8
**comical** 59:2
**coming** 49:23
50:9 53:20 60:2
**commenced** 9:14
**commitment** 12:7
**commitments**
26:10
**committee** 13:15
**communicate**
50:7,7,8
**communicated**
53:12

**communicating**
34:25
**communications**
49:9
**company** 20:22
**complaint** 12:23
14:15,24 15:10
17:3 18:1,6 20:11
20:12,13 23:14,17
23:18 25:22 54:24
**completed** 13:5
18:24
**completion** 55:22
**complied** 56:11
**comply** 46:10
**component** 8:21
**concede** 40:12
**concern** 27:8,10
52:25 53:7
**concise** 57:3
**concluded** 61:20
**conduct** 9:12
35:21
**conducted** 11:16
13:5
**conference** 3:1,3
7:7 9:17 29:14
51:12 56:15
**confessed** 16:22
**confident** 12:19
**confirm** 50:1 61:8
61:9
**confirmation**
56:12 60:14
**connection** 8:1
9:5,17 35:22
**consider** 54:5
**consigned** 14:8
39:6
**consignee** 24:25
**consignment** 8:19
8:21,25 11:5,8,9
11:20,23 14:13,20

24:2,4 36:16 39:7
40:16
**consignments**
14:23
**consignor** 24:24
**consistent** 44:25
48:17
**construed** 34:12
**contact** 55:25
**contacting** 54:5
**contained** 14:15
**contempt** 57:7
**continuation**
12:17
**continue** 12:2
**continuing** 38:4
**contribution** 12:6
**contributions**
12:1,9
**control** 33:5,7
35:1,2,15 42:17
45:2
**converted** 9:8
**conveyance** 24:9
**convicted** 52:8
**copy** 15:10 31:5
51:1
**correct** 16:2 18:7
23:15 41:24 49:24
61:11
**correspondence**
51:1
**cost** 10:25
**counsel** 4:4 6:11
6:16 7:21,22,23
12:24 15:15 22:22
46:6 56:6 60:10
60:17,24
**counsels** 56:24
**country** 35:4
40:10 62:21
**counts** 24:8

**couple** 26:6
**course** 16:15
  51:24 57:21 60:7
  61:3
**court** 1:1 2:1 6:2,6
  6:9,19 7:1,3,6,8
  7:11,14,17,25 8:3
  8:5 9:16,23 10:3,7
  10:13,15 13:9,18
  13:23,25 15:9,13
  15:24 17:8,9,11
  17:13,16,18,20,22
  17:24 18:3,5,10
  18:25 19:2,5,7,15
  19:18,24 20:16,19
  21:2,7,11,13,15
  21:22 22:7,11,14
  22:17,20,25 23:2
  23:9,11,15 24:18
  25:1,5,13,15,21
  26:3,7,14,18 27:1
  27:3,5,10,13,19
  27:21,22,24 28:1
  28:5,8,10,13,16
  28:19,22 29:1,4,5
  29:9,12,16,19,21
  29:24 30:2,4,8,13
  30:17,25 31:4,8
  31:10,12,15,20,22
  32:1,5,7,10,12,17
  32:21,23 33:3,9
  33:17,23 34:3,8
  34:11,15,22 35:6
  35:18,25 36:3,4,8
  36:11,12,17,20
  37:1,3,8,15,18,19
  37:22 38:6,8,19
  39:10,15 40:2,4,7
  40:9,23 41:1,7,16
  41:20,23,25 42:2
  42:4,10,14,22
  43:1,3,6,8,12,14
  43:16 44:1,6,10

  44:16,19 45:3,7,9
  45:13,17,19,21
  46:19,21 47:1,6
  47:10,13,23 48:4
  48:6,8,12,15,23
  48:25 49:4,6,12
  49:15,19,23,25
  50:4,6,12,15,18
  50:23 51:3,5,10
  51:13,15,17,21,23
  51:24 52:9,12
  53:3,4,22,25 54:5
  54:8,12,24 55:4,6
  55:8,10,13,18,21
  56:2,5,9,16,17,18
  57:14,17,21,24
  58:2,4,7,10,13,16
  58:20,22,24 59:1
  59:5,13,18,22,24
  59:25 60:3,7,16
  60:22,24 61:2,5,7
  61:9,12,14,19
**court's** 52:25
**courtroom** 6:24
  6:25 53:6,12
  54:20
**covered** 14:19
  52:12
**covering** 50:3
**covers** 58:5
**creditor** 13:1
**creditors** 12:21
  13:15 60:8
**criminal** 17:4
  36:14 54:7,12
**crisp** 53:9
**critical** 12:10
  13:21 57:12
**cues** 23:16
**culminated** 14:10
**cure** 20:12
**current** 11:19
  13:7

**custody** 45:1
**cut** 14:12 23:7,10
  23:12 31:1
**cute** 27:16
**cutting** 59:11

**d**

**d** 6:1
**d&m** 1:8,12 7:22
  23:22 40:17 41:18
  41:18 42:12,20
**d&m's** 16:22
**data** 20:1 57:12
**date** 9:20 11:24
  35:6 42:7 55:1,22
  59:11 62:25
**dates** 46:13 55:24
**day** 8:7 14:7 15:6
  21:13 22:13 26:11
  26:21,23,24 39:7
  45:24 46:11,11
  52:15 61:16
**days** 18:14,16,20
  24:14 26:8,9,25
**dead** 15:3
**deal** 17:1
**dealer** 9:1 30:11
  30:16,17,20
**dealers** 8:22
**dealing** 29:7
  36:18
**debrief** 49:11
**debt** 9:11 16:11
  44:13
**debtor** 1:10 4:4
  6:11,16,16 7:21
  8:10,23,25 9:6,10
  9:11,12,18 10:21
  10:24 11:2,3,6,11
  11:16,19,21 12:1
  12:23,24 14:7,21
  15:2 16:9,10,14
  16:15,19 19:25
  20:20 21:10 22:22

  23:4 24:20 40:9
  40:11,14,16 46:6
  48:10,11,12 50:7
  52:2 56:6,24
  57:11 58:1
**debtor's** 6:23 8:14
  9:21,22 10:18,24
  12:4,18 14:17
  18:19 53:9 60:17
  60:24
**debtors** 6:14
**debts** 45:6
**deceive** 36:3
**defaulted** 38:3
**defendant** 19:3
  25:18
**defendant's** 19:9
**defendants** 1:16
**delays** 53:17
**deliberate** 37:13
**delivered** 41:18
  41:22
**demand** 14:12,15
  14:22 15:5,6
  39:19
**demands** 15:4
**demonstrates**
  12:7
**denied** 8:3
**department** 4:20
  54:10
**deposit** 42:13 46:4
**deposited** 41:9
**deposition** 46:15
  55:24
**depositions** 18:12
  18:23
**described** 14:24
**designs** 5:9 49:18
**despite** 14:12,15
  52:20
**detail** 14:5 23:7,7
  24:17

determine 47:17
determined 47:18
dga 10:19
diamond 5:11
  7:18 10:1 49:20
  50:2 51:20
diamonds 8:11,15
  8:19 52:1,16
different 27:20,21
dip 12:4
direct 57:22
directed 37:8 44:7
  51:7 56:13,20
  61:9
direction 37:19
directly 8:16
  11:25 54:13 56:14
disclosure 55:16
discovery 18:8,9
  18:11,25 19:12
  25:24,25 26:5,12
  46:9,10 55:23
  58:14
discuss 54:16
discussed 51:6
discussion 49:22
discussions 12:25
dismiss 18:5
  20:10 22:8
dismissal 12:13
  19:13 25:7
dispose 36:14
disposed 22:1
disposing 15:1
  56:21
disposition 15:2
  27:20 30:23 48:19
dispute 12:20
  52:5 57:15
disputed 52:17
disputes 9:11
  16:10

district 1:2 10:1
disturbing 52:3
docket 60:4,18,25
document 55:23
documentary
  18:11 23:24
documentation
  56:12
documents 18:13
  18:17,17,20 24:5
  26:19,21,22
doing 19:10
dollars 46:1
don't 31:5 34:3
door 9:21,25 10:2
  10:4,4,5,15,17
  13:16 29:24
double 9:21,25
  10:15,17,20
draft 13:8
dry 31:1
due 13:7

e

e 2:21,21 4:1,1 6:1
  6:1 62:1
easier 29:2
echo 60:13
ecro 2:25
effective 59:11
effectuate 60:11
effort 17:1
either 8:16 12:13
  23:23 24:23 36:6
  37:5
email 35:12 59:19
emergency 56:15
engage 61:3
engaged 40:20
entered 8:25
  15:14 48:1 59:20
entitled 22:4
  24:22 25:24

entry 9:22,25
equity 12:6
eric 4:18 50:16,20
essentially 8:14
  10:1 14:17 16:2,8
  16:22 23:3
essex 1:15 5:2
  6:13 9:1,6,15
  11:10,12,13 12:20
  13:2 14:8,17,23
  15:1,3,15 16:7,8
  16:14,16,18 17:3
  18:14,14 19:20
  24:4,25 37:5 52:6
  52:15,25 56:13
essex's 9:12 12:15
  15:18,25 27:15,17
estate 12:6,11,19
  18:20 23:22 24:3
  24:4,15 47:16
et 1:15 50:3 52:24
eventually 47:16
evidencing 14:20
exceed 38:17
excellent 36:8
  50:12 60:10
exception 23:21
exchange 44:13
exhibits 14:25
  24:6
exit 12:12
expedited 8:1
  18:8
expeditiously
  12:11
explain 22:5,9
extant 20:15
extent 24:13
  54:11 56:11 57:4

f

f 2:21 62:1
face 45:24

fact 11:21 20:10
  32:20 47:18 52:20
  53:2
facts 22:4,15,16
  22:17,23 23:18
  36:18 46:21,22
  47:15,15,17 48:20
  49:7,13 53:16
failed 9:7 16:23
failure 25:7
faith 52:5
false 16:21,21
  33:19,21,25 35:19
familiar 9:3 49:12
far 7:25 15:3
fast 48:19
favor 12:6
february 14:6
federal 48:18 53:3
felon 52:8
ferdinands 5:19
  51:18,19,22,25
  52:10,14 53:21,23
  54:4,21
figuring 55:24
file 18:3 22:7
  56:13 60:17 61:1
filed 9:12 13:8
  20:8,10,11 21:5
  21:10 39:18,24
  47:19 48:2,4,8
  52:20 59:3,5,15
filing 8:25 9:18
  10:21,22 11:15
  14:7 15:6 39:7
financial 40:16
financing 12:4
find 21:24 22:2
  30:8 38:21
fine 24:18 26:23
finished 8:12
firm 4:12 14:2

**first** 8:7,15 15:5
22:3 31:17 40:12
42:21 51:22 52:6
53:8 56:7
**floor** 4:15,22 5:3
5:12
**folks** 7:18
**followed** 57:8
**following** 9:14
**foregoing** 62:3
**form** 13:16 57:5
**forms** 12:22
**forth** 24:2
**forward** 11:21
12:11,12 17:25
19:6 46:8 53:11
**found** 30:10
**four** 8:25 9:6 14:9
31:16 44:14,20,24
44:24 45:3 58:11
**frankly** 52:13
**fraud** 17:5
**fraudulent** 24:8
**fraudulently** 9:6
14:10
**friday** 13:5 46:11
56:20 60:2
**frozen** 38:12,13
38:24,25
**fully** 46:5
**fundamental** 27:5
**funding** 11:25
**further** 51:7
54:17
**future** 12:5

**g**

**g** 6:1
**gap** 60:1
**gather** 18:19
**gathering** 53:16
**gem** 25:9
**gems** 5:10 20:5,14
20:17,17,21 21:12

21:25 27:18,21
28:2,14 29:7
30:10,23 34:5,21
35:2 36:6,23
37:17,23 38:2,5
38:11,12,13 39:10
40:12,23 41:8
43:24 46:1 47:18
49:18 56:20 57:13
58:17
**general** 58:14
**generally** 13:11
60:20
**getting** 45:13 54:6
**give** 28:23 35:6
42:12
**given** 11:24 60:1
**global** 1:15 5:2
6:13 9:1 14:8
19:20 52:6
**go** 7:19 8:8 13:23
16:13 18:9 23:2
26:10 37:15 39:10
44:5 52:13
**going** 15:11,13
18:17 20:15 22:21
23:2 25:21 26:11
26:13,15 29:7,10
35:7 37:10 40:7
41:3,3 42:16
43:25 46:2,3,4,5,5
46:7,8,9,10,13
47:16 49:10 51:2
55:3,23 57:18
58:13,14 59:3
60:12,20
**goldberg** 5:8
**good** 6:3,4,5,20,21
13:25 24:2 46:21
50:4,16,20 52:4
59:13 60:7
**goodman** 4:9 6:5
6:8,10,11,15,15

6:22 7:2,4,7,9,12
7:15,20,21 8:4,6
9:24,25 10:4,9,14
10:17 13:20 23:6
23:10,12,16 24:23
25:14,16,20 27:18
31:25 33:12 39:18
39:22 50:5 56:1,3
56:3,6,10,17 58:5
58:8,11,15,19,21
58:23,25 59:2,7
59:15,21 61:1,3,6
61:8,11,13
**goods** 8:22 9:9,20
10:25 11:2,4,6,19
11:22 12:14,17
14:8,13,19,21
15:5 16:7,19,21
16:23 17:2,21
24:8 39:6,8 44:13
45:15
**grab** 16:6
**granted** 24:12
**great** 33:9 34:15
35:12 55:21 60:8
**green** 2:2
**ground** 36:18
38:20 52:12
**group** 1:8,12 7:22
**guessing** 27:6
**guy** 29:3
**guys** 25:21

**h**

**hai** 5:10
**half** 27:16
**hand** 13:22
**handle** 7:16
**handling** 12:24
**handy** 18:17
**happen** 41:3
43:25 47:10 61:10
**happened** 16:8
21:25 22:2 24:13

24:14 60:6 61:10
**happens** 37:10
44:5
**happy** 7:12 11:18
13:3 15:12 28:23
43:16 54:18 61:1
61:13
**hard** 15:10
**headline** 24:19
**hear** 17:13,16,24
19:15 22:23 27:1
27:3,23 34:4
35:23 41:20 42:24
53:7 61:15
**heard** 26:5,25
27:22 50:14 51:20
53:16 54:23
**hearing** 3:1,3 7:25
8:7 9:4 19:3 23:16
27:14 32:21,23
33:13 34:18 35:25
36:1 39:4 40:6
45:23 53:8 55:16
60:3
**held** 52:2
**hello** 6:19
**helpful** 15:11
**high** 8:11
**highlights** 14:3
**history** 21:17
36:21 40:18
**hit** 13:9 53:7
**hitting** 6:6
**hmm** 19:24 30:25
46:19
**hold** 21:15 25:13
25:15,21 32:1,5,7
32:7 42:10 53:4
55:4,6
**holding** 10:25
11:3
**holds** 14:17

hon 2:22
honor 6:4,5,10,20
  6:21,23 7:4,20,24
  8:6,10 9:18 10:11
  12:3,9,19 13:3,12
  13:14,20,24 15:12
  16:4 17:6,12,15
  18:7,8 19:6,17,19
  23:6,13 26:25
  27:22 28:7,15,18
  28:24,25 29:23
  30:5 32:18 33:1,6
  33:7,12,22 34:17
  36:2,9 37:14,20
  39:3,13,18,20
  40:15 42:7 43:20
  44:3 45:6,20
  47:12 48:22 49:14
  50:5,14,16,20
  51:9,11,18,20
  53:21 54:22 55:3
  55:9,15,19,20
  56:3,13 57:10,18
  58:5,19 59:15,21
  59:23 60:12 61:1
  61:13,18
honor's 50:25
hope 14:4 55:19
hoping 19:11
huge 44:13
hyde 3:25 62:3,8

i

immediately
  26:21 45:18
important 13:10
impression 33:3
  45:25 49:1
improperly 22:1
inaccurate 45:25
incarcerated 17:4
include 34:12
included 23:19
  57:16

includes 10:20
including 12:21
  24:8
inconsistent 39:2
indicated 13:6
indicating 60:18
indiscernible 30:3
  30:11 31:9,11,14
  31:19 40:12,18
  42:6,9,21 55:16
  60:23
individually 4:13
  50:22
induced 9:6 14:10
industry 11:16
information 28:4
  39:12 45:11,15
  46:6 56:24 57:19
  58:9,10
informed 15:17
  60:8
initial 12:25
insolvent 9:10
  16:25
instructed 38:4
insurance 10:21
  44:2,4,5 46:7 47:3
  47:5 56:25,25
insured 44:1 46:5
  47:2,7,11 50:2
insureds 57:16
intend 17:25
intended 17:8
  20:2
intends 11:20
  12:2
interest 11:6
  12:22 13:14,15
  16:14,17 23:22,23
  23:23 24:10,13,24
  40:17 49:21 52:1
  54:2

interested 53:16
  60:9
interests 21:11
  26:15
invade 49:10
inventory 9:19
  10:22,24 12:16
investigating 54:6
investors 8:18
invoice 9:7,8
  14:10 23:25
invoiced 11:11
involved 30:21
  39:25 54:6
involves 8:14
israel 5:1,6 6:13
  6:13 17:6,10,14
  17:15,17 19:16,19
  19:19,25 20:17,20
  21:4,9,14,21 22:5
  22:9,12,15,19,24
  23:1 25:2,3,6,19
  26:1,4,9,17,23
  27:2,4,14,20,25
  28:3,6,9,12,15,17
  28:20,24 29:2,6
  29:10,14,15,18,20
  29:23,24 30:1,3,5
  30:8,10,14,19
  31:1,6,18,21,23
  32:2,6,9,11,17,18
  32:22 33:1,6,11
  33:14,15,21,24
  34:6,10,13,17,24
  35:8,17,23 36:1,5
  36:21 37:9,20,23
  38:7,10,22 39:11
  39:14,17,20,23
  40:3,5,8,11,19,22
  40:23,25 41:12
  42:19,24 43:2,5,7
  43:11,13,15,18,22
  44:2,23 45:4,23

46:17,20,22 47:3
  47:9,11,21,25
  48:3,5,7,11,14,22
  48:24 49:1,5,14
  50:8 53:15 55:10
  55:12,20 56:23
  57:10,15 60:15
israel's 24:19
  50:25
issue 14:19 20:14
  29:7,12 39:25
  60:13
issued 57:6
issues 55:3
it'd 29:2
it'll 61:6
items 31:17 60:23

j

jaslow 5:8
je 15:21
jeweler 37:4
jewellery 7:18
  51:20
jewelry 5:9 8:12
  8:16,19 30:11,16
  30:17,20 49:18
  52:2,16
join 20:24
jp 15:20
judge 2:23 52:15
  54:22
judgment 20:8
  43:23
july 7:23 11:17
  59:10
june 11:17 39:14
  39:17
justice 4:20 54:10

k

k 4:8
katz 5:8
keep 22:21 23:2
  38:5

**kind** 6:6 24:19
  60:4
**kinds** 42:14
**king** 51:19
**know** 7:25 16:4
  17:21 18:22 19:10
  20:10 22:17 28:12
  28:13,17 29:6
  30:22 31:4,5 32:9
  34:6 36:20,22
  38:18 39:4 40:3
  44:4 45:22 47:6
  47:14 48:6,15
  49:9 51:14 54:9
  59:6,13 60:8,11
**knowingly** 36:3
**known** 5:10 49:20
**knows** 47:4

**l**

**labor** 26:21,23,24
  46:11 61:16
**lack** 11:24
**lacking** 20:25
**landing** 24:3
**lane** 5:3
**largest** 13:1
**law** 4:12 57:7
**lawsuit** 20:25
**lay** 23:22
**lead** 19:12
**leave** 45:24
**ledanski** 3:25 62:3
  62:8
**legal** 62:20
**lending** 16:13
**lengthy** 53:17
  56:10
**lent** 16:14
**letter** 56:14 60:17
  60:25 61:4
**letting** 51:23
**level** 44:6

**levine** 5:8
**lexington** 4:15
**line** 24:18 33:13
**listed** 56:21
**literally** 47:23
**little** 6:8,9 7:25
  14:5 23:7,9 29:2
  36:11 53:9
**llc** 1:8,12,15 5:2,9
  9:1 19:20 49:18
**lloyd's** 10:22
**llp** 4:3 5:8
**loan** 9:11 12:5
  38:1,2,3,4
**locally** 5:10 49:20
**lock** 10:17,20
**london** 10:22
**long** 35:13
**longer** 15:25 16:3
  38:15
**look** 27:5 31:4
  36:17 59:14,20
**loose** 8:15,19
**lot** 21:24 23:7,11
  53:10

**m**

**maiden** 5:3
**main** 7:9,12 13:4
**maintained** 10:21
**making** 54:1
**man** 28:25
**manager** 6:23
**mantrap** 9:22,24
  10:6
**material** 17:7
**matter** 1:6 24:21
  25:19 52:10 53:14
**matters** 12:24
**mean** 16:25 17:23
  19:2 26:12 28:10
  38:23 44:19
**meaning** 33:18

**meant** 32:13
  47:25
**meat** 21:23
**medina** 4:12,18
  50:14,16,17,20,21
  50:24 51:4
**meeting** 13:5
**meetings** 12:25
**member** 6:23
**memo** 8:21 9:2,20
  11:4,7,9,12,22
  12:16 14:20 15:21
  16:19
**memos** 14:14,22
  14:23 15:1 16:24
**mentioned** 11:11
**merely** 60:13
**merit** 38:6
**merits** 38:8
**microphone** 50:18
**million** 9:3,7 11:1
  11:3,4,7,13,22
  14:8,11 15:21
  16:10,12,16,20
  42:3,11
**millions** 46:1
**mind** 28:21,22
**mineola** 62:23
**minute** 17:13,16
  29:13
**minutes** 29:3,19
  30:4 47:23
**misheard** 26:7
**misrepresent**
  34:20
**misrepresented**
  34:20,22
**misunderstand**
  60:24
**misunderstood**
  60:16
**mm** 19:24 30:25
  46:19

**moment** 28:16
  30:24 34:4
**monetization**
  12:15
**money** 16:14,23
  41:11,25 42:5,6
**month** 9:14 16:15
  35:10
**monthly** 11:18
  13:6
**months** 8:24
  11:17
**morning** 6:3,4,5
  6:20,21 13:25
  50:16,20
**morrissey** 4:25
  13:10,12,13 54:8
  54:18,23 55:11,15
  55:19 58:22 59:8
  59:23,25 60:9,19
  60:21,23
**moscow** 30:12,13
  30:16 31:19 32:15
  33:16,18 34:5,7
  34:12,13,16 36:24
  37:4,12 39:10
  41:23 42:18 46:2
  56:22
**motion** 8:1 12:5
  18:5 20:7,9 21:5,6
  21:8,10 22:8,12
  25:23,23,25
**moty** 4:13 6:23
**move** 12:11 19:14
  40:7 46:8
**moved** 32:2,3
**moving** 11:20
**muller** 5:15 49:16
  49:16,20,24 50:1
  50:11 57:18,22,25
  58:3 60:12

| n | | | |
|---|---|---|---|

**n** 4:1 6:1 62:1
**name** 14:1 25:8
49:16 57:1
**named** 25:17
30:11 50:2
**names** 57:12
**narrow** 48:19
**necessarily** 57:25
**necessary** 20:14
21:1 25:8,11
35:14 59:17
**need** 18:19 19:14
25:11 39:12 45:9
45:10 48:20 56:15
58:18
**needs** 21:19 35:13
**negative** 60:6
**neighborhood**
16:10,16
**neither** 52:13
**never** 36:2 38:15
47:6 52:17
**new** 1:2 2:3 4:6,16
4:23 5:4,13 18:6
21:13 22:13,15,16
46:21,22 59:11
**news** 60:5,6
**nicely** 49:7
**nominal** 19:9
**nominally** 25:17
**note** 6:22
**noted** 11:21 12:4
**nothing's** 43:25
**notice** 60:14
**number** 15:21
16:12
**ny** 2:3 4:6,16,23
5:4,13 62:23

| o | | | |
|---|---|---|---|

**o** 2:21 5:6 6:1 62:1
**objecting** 19:22

**objection** 17:6
50:5 59:6,9,18
**obligation** 32:24
**obviously** 17:8
20:2 23:19 43:25
52:2
**office** 50:25 53:13
54:5,8,13,17
57:19
**officer** 49:12
**oh** 6:24 21:9 26:9
36:13 47:25 60:16
**okay** 6:2,9 7:1,3
7:24 13:9 17:9,17
17:18,22 18:2,10
19:3,7,15 21:23
21:24,25 22:21,24
25:1,1,4,13,22
26:3 27:15,24
28:9,15,17 29:9
29:15,20,22 30:2
30:4,8 31:4,12
35:13 36:17,20,22
37:9 40:4,8 41:1
41:22 42:14,22
43:7,10,11 45:6
45:21 47:13 48:7
48:19,22 49:15,19
49:25 50:6,13
51:3 53:25 54:24
55:21 56:16 58:7
58:15,21,24 59:13
61:2,12,14
**old** 59:12 62:21
**once** 48:8
**ones** 15:24 37:24
37:24 38:14 39:1
44:17 49:23 53:23
**open** 10:5 13:16
**operating** 8:23
11:18 13:6
**opportunity**
54:22

**opposed** 60:5
**opposite** 38:16
**order** 8:2 9:10
15:14,17 28:13
50:25 51:8 56:21
57:5,6,8,9 59:17
59:19
**ordered** 56:7 57:4
**ordering** 41:7
51:5
**original** 12:4
**originally** 20:9
39:19
**ought** 48:16,18
**outright** 11:2
**overall** 13:21
**overcharged**
41:19
**overcharging**
41:21
**owe** 42:3
**owed** 42:5
**owes** 16:9 45:21
**owners** 25:9
**ownership** 23:22
24:1,20,21,24
**owns** 11:2 38:15

| p | | | |
|---|---|---|---|

**p** 4:1,1 5:1 6:1
**p.c.** 5:1
**page** 14:15,23
21:16
**pages** 14:24 33:13
**paid** 11:14 16:15
**panicked** 26:25
**papers** 17:10
19:23,25 59:9
**parameters** 38:17
**park** 5:12
**part** 8:4,5
**partial** 24:20
**participant** 53:19

**participants** 8:17
12:17,22 13:2
24:2 53:23 57:1
57:12,22
**participate** 51:23
**participation** 8:17
20:22,22 21:2,5,7
21:11 40:18 49:21
52:1
**parties** 8:20 11:8
12:16 20:23 25:11
40:16 51:25 59:25
60:10
**partner** 7:15 9:16
13:22 14:2,2
**partners** 24:25
25:17
**party** 8:17 20:14
21:1 25:8 50:2
**path** 12:12 17:25
19:4 53:10
**patience** 61:15
**paul** 5:19 6:14,14
9:15 17:3 18:12
41:6,10,15,17,22
41:24 42:1,3,6,9
42:11,20,23 44:12
51:18 52:7
**pay** 16:23 38:1
41:10,15 45:5
**paying** 54:16
**payment** 9:7
**payments** 42:21
**pearls** 5:10 49:18
**people** 35:21
41:10,16 42:3,4,9
42:12
**peoples** 42:12
**percent** 16:14
23:23,23 24:21
**perfection** 24:12
**period** 14:7

**person** 31:19
**personally** 28:3
  43:13
**petition** 9:20
  11:24
**phone** 7:17 51:23
**piccione** 4:8 6:18
  6:20
**pick** 11:20
**pieces** 9:2,9 11:12
  58:11
**place** 29:21 40:6
**plaintiff** 1:13
  19:23 20:20 21:18
  22:22 23:4 31:2
  57:11
**plaintiffs** 25:10
**plan** 12:13 19:8
  19:13
**platzer** 5:8 49:17
**please** 7:6 22:18
  42:22,22,22 43:1
**pm** 61:21
**point** 19:13 24:19
  26:5 33:12 45:22
  50:4,12 56:1
**pointing** 38:11
**points** 13:10 56:7
**policy** 10:23 50:2
**position** 28:1
  48:15 54:10
**positive** 60:5
**possession** 6:16
  9:9,19 11:13
  12:15 15:18,25
  16:3 27:15,17
  33:4,14 34:9
  35:15 42:17 43:21
  43:23 52:15,18,22
**possible** 55:5
**post** 15:5
**posted** 60:4

**potatoes** 21:23
**potential** 54:6
**preceding** 8:24
  14:7
**precious** 8:12
  15:2
**predatory** 16:13
**predicate** 57:5
**prefer** 43:20,22
**preferential** 24:9
**prejudice** 12:5
  17:8 20:2
**premises** 9:21
**prepared** 26:20
**preparing** 12:23
**presence** 53:13
**present** 5:17
**presented** 30:22
  30:24
**presentment**
  59:16
**presumably** 10:7
  10:9 37:11
**pretrial** 54:25
**pretty** 26:21
  56:10
**price** 52:23
**primary** 27:8,10
**primrose** 5:20
**principal** 9:15
  17:3 37:5,5 52:7
  53:1
**principals** 18:15
  27:17
**prior** 7:23 24:14
  27:14
**privilege** 49:10
**problem** 20:12
  35:3,4 41:10
  47:20
**problems** 55:24
**procedure** 48:18

**proceed** 7:4 21:18
  21:20
**proceeding** 9:14
  14:4 17:1 35:22
  52:7,17 53:1
**proceedings**
  61:20 62:4
**proceeds** 12:15
  14:16 52:24
**process** 12:8
**produce** 26:20
**prohibit** 14:22
  15:1
**proof** 46:7 56:23
  56:25
**proper** 40:17
**property** 24:14
  40:9,11,13,15
  48:9,11,12
**proposed** 4:4 6:11
  6:16 7:21,22 56:6
**protect** 9:10
**proved** 37:2
**provide** 46:6,7
  52:21 56:13 57:11
**provided** 14:20
  56:24,25 57:19
  58:12
**public** 52:10
**purchase** 8:15
  23:25
**pursue** 24:7
**purview** 35:21
**put** 24:6 43:17,18
  43:18,24 46:2
  56:21 58:14 59:16
  60:18,25
**putting** 20:4

**q**

**question** 21:17,23
  44:9
**questions** 13:4
  20:5 32:24 33:2

  34:1,21
**quickly** 19:14
  25:17
**quite** 53:6

**r**

**r** 2:21 4:1 6:1 62:1
**radwan** 7:18
  51:19,25
**raised** 20:5
**ramp** 23:11
**reach** 54:23 56:14
**read** 14:14
**ready** 18:9
**real** 25:16 27:22
  32:20 47:17
**really** 13:13 19:13
  21:25 39:4
**reason** 37:25
**reasonably** 34:11
**recalled** 21:9
**receipt** 8:18
**receive** 56:12
**received** 11:4,21
  60:15,19
**receiving** 60:14
**recess** 30:7
**reckless** 36:6
**recognize** 23:13
**record** 6:10,22
  13:12 23:17 27:14
  31:15 51:5 52:11
  54:2 56:8,19 57:9
  62:4
**recording** 50:19
**referrals** 54:12
**referring** 41:14
**reflected** 11:17
**refusal** 16:5
**refused** 16:19
**regarding** 52:22
  60:5
**related** 9:14 59:3

**relatively** 11:16
26:18 48:19
**relevant** 17:7
52:14
**remain** 14:21
29:21 42:15
**remained** 15:16
15:18
**remains** 48:16
**remit** 9:7
**rendered** 16:25
**rendering** 9:9
**repay** 38:4
**reporting** 32:19
34:1
**reports** 11:18
13:6
**represent** 54:15
**representation**
15:15 33:20,22,25
35:15 37:3 44:12
**represented** 15:16
15:25 16:2 27:14
27:21 34:8 38:12
39:4 40:5 42:16
56:22
**representing**
51:19
**reputable** 30:16
30:17,19 37:4
**request** 15:14
58:14
**requested** 58:9
**requests** 46:9,10
**require** 35:13
37:10
**required** 26:12
**requires** 57:7
**reset** 6:6 53:8
**resolve** 12:20
**respect** 10:24 13:4
23:24 50:9,24
51:1,6 53:2 54:2

56:7 58:9,11
**respond** 20:7 23:5
23:6
**response** 15:3,8
20:9 24:19
**restraining** 8:2
**restraint** 31:25
**result** 9:12 11:15
**retention** 59:3,5,9
59:11,12
**return** 12:14,15
15:4 16:19 18:16
18:20 24:7 38:17
**returnable** 18:13
**returned** 11:14
14:21 37:9 39:1
41:8 45:2 60:2
**revenue** 11:24
12:3
**reviewed** 23:14
59:7,8
**richard** 4:25
13:13
**right** 6:2 7:1,11
13:9,18 15:22,24
17:7,11 19:15
21:17,21 22:14,23
23:1,4,11 24:23
25:1 26:3,9,17,22
27:3,6,17 28:7,8
28:16 29:17,18
31:17 32:22 33:10
33:15,19 35:3,6
35:14 36:14,15,19
36:20,22,23 42:25
43:3,8,15 44:7
45:3,4 46:15
48:14,21 49:13,15
50:12 51:5,10
52:9 53:25 57:2
58:4,13,16,20
59:22 61:17

**ring** 23:21
**rise** 30:6
**road** 62:21
**room** 29:14
**ruby** 23:21 40:17
**rule** 25:6,7
**rules** 48:18
**ruling** 37:16,19
**russia** 18:21
**russians** 44:14

**s**

**s** 4:1,18 5:15 6:1
**safe** 9:22 10:18
42:13 46:4
**safeguarded**
18:21
**sale** 8:20 9:7
11:11 14:16
**sam** 5:1,6 6:13
19:19
**sanders** 4:3 6:11
6:12,15 7:21 14:2
**sarah** 5:20
**satisfy** 12:20
**save** 12:19
**saying** 17:24 19:5
21:18 22:5,6
34:18 35:24,25
36:2 38:13,18,19
38:25 39:2 41:5
42:19 44:25 48:5
**says** 36:23 39:8
**scc** 1:3,4 3:1,3
**schedule** 28:10,11
28:20,21 31:5,16
31:18 37:17 56:21
**scheduled** 51:12
**scurrilous** 20:1
**seat** 6:2 43:1
**second** 8:18 10:4
15:6 46:17 55:4,6
**secure** 10:15 46:4

**secured** 9:19,21
38:2
**securing** 38:2
**securities** 17:5
**security** 10:19
24:9,11,12
**see** 22:20 29:24
35:4 37:10 55:2
61:15,16
**seen** 21:2,4 25:22
48:16 59:14
**sell** 36:15 39:8
42:2
**selling** 8:11
**send** 15:10 30:18
59:19 60:17
**sent** 40:10 41:23
57:2
**sentiment** 60:13
**separate** 11:5
14:9
**separated** 44:24
44:24
**september** 35:10
35:11 46:12 54:25
54:25 55:8,12,21
60:2
**series** 12:1
**serious** 47:14
53:14
**seriously** 49:2
53:2,6 54:19,20
**serve** 46:9
**served** 18:25
**serving** 19:1,2
**set** 51:16 54:24
**settlement** 12:16
19:12
**seven** 16:15 18:14
18:16,20 26:7,9
26:11,25
**shang** 5:9

shanghai 49:18
share 52:25
shea 2:25
shelley 2:22
shifted 38:22
shifting 38:20,21
ship 36:15
shipped 43:9 45:8
  45:16 51:2
shipping 39:12
  45:10 58:9
shoes 58:1
short 29:1 61:6
shortly 61:16
show 38:3 55:15
  57:6
side 46:2 53:9
sides 46:13
silence 15:3
similar 8:18
sir 41:4 49:15
  50:13
sit 43:2
sitting 35:20
situation 10:16
  17:2 47:14 52:3
six 9:2,9 17:4
  39:15
small 26:18
sold 41:16 44:12
  52:23
sole 6:23
solicit 13:17
solutions 62:20
somebody 34:12
  42:2
son 18:12,15
sonya 3:25 62:3,8
sooner 48:20 55:2
sorry 17:15 18:14
  20:16 21:7 28:18
  33:24 42:1 44:9
  46:20 47:25 60:22

sort 45:21
sorted 48:20
south 5:12
southern 1:2
spalding 51:19
specific 24:17
  54:1,3
spector 4:13 6:24
  11:25 50:21
spector's 12:7
speed 37:13
spend 53:15
spoiler 37:11
spoken 30:19
spreadsheet 42:20
standard 9:21
standing 20:15
  21:19 23:21 24:7
  38:13 57:25
standpoint 23:20
start 7:12 23:9
statement 55:16
  57:4
statements 44:19
states 1:1 2:1 4:20
  36:7 38:14 40:24
  41:8 45:10 46:25
  50:10 53:20 54:9
  56:23
status 3:1,3 7:7
  9:17 13:11 60:25
stay 32:4,15 39:22
  40:21 48:9
staying 25:24
step 7:24
stepped 6:24
stolen 16:7
stone 24:21
stones 8:12,16,19
  13:2 15:2,16,18
  16:5 23:25 27:15
  27:19 31:16 33:4
  41:17,18,19,23

42:4,15 43:3 44:8
  44:8,11 46:3
  49:21 50:3,9
  53:20 57:1 60:1
  60:14,18
stop 15:9 42:24,24
stories 42:14
street 4:22
strongly 49:11
structured 12:13
  19:13
stuff 27:6
subject 52:4,17
submit 51:7 59:17
substituted 7:23
successful 12:12
successfully 8:23
sue 20:23
sued 20:21
sufficient 13:15
suggest 27:11
  49:11
suggestion 59:23
  60:7,11
suing 20:17 25:9
suit 21:1
suite 62:22
summary 20:8
summer 26:20
superseded 18:6
support 19:11
  23:24 24:6
supposed 60:2
supposedly 44:17
sure 7:14,17
  22:11,24 36:6
  47:4,7,11 48:25
  51:13,14,21 54:17
  59:24
suspect 55:3
swergold 5:8
  49:17

system 10:19

          t

t 14:25 62:1,1
take 11:19 17:25
  28:16 29:1,3,13
  29:16 35:8 46:17
  54:10 56:18 59:14
  59:20
taken 9:20 18:23
  22:1
takes 35:9
talk 6:9 14:5
  22:21 25:3 26:5
  28:8 29:3,5 46:15
  46:18,19 50:18
  54:18
talking 22:21
  26:22 31:16 32:18
  38:18 41:12 46:1
  60:20
telephone 35:12
telephonically
  5:17
tell 38:20
telling 32:19
  44:16
temporary 8:2
terminology
  10:13
terms 14:13 53:13
thank 7:20 13:17
  13:23,24 15:13
  17:18 19:17,18,19
  25:1 28:17,24,25
  29:23 30:5 43:3
  45:20 50:11 51:4
  51:9,22 55:7,9
  58:3 59:21 61:14
  61:17,18,19
thing 19:22 22:3
  26:4 34:19 35:12
  36:17 39:25 40:5
  41:3 56:18 57:10

58:25 59:1
**things** 18:21
19:21 36:11 47:10
52:3
**think** 29:4 31:2
33:1 34:3 36:5
39:24,25 48:16
49:8 50:7 52:14
54:19 55:14 56:19
58:5,8,22 59:2
60:9 61:14
**thinking** 48:1
**third** 4:5 8:17,20
8:20 11:8 12:16
**thorough** 49:11
**thought** 21:9
29:10 60:19
**three** 8:14 11:5
25:8 31:17 41:12
**thursday** 54:25
**time** 11:15 15:15
18:18 21:10,24
27:23 29:4 30:15
31:23 32:16,20
35:13 38:12,20,23
44:23 45:1 53:15
56:18 60:1,1
**today** 7:2 8:9 13:8
18:9 19:1,2 20:9
38:13,16,25 39:2
49:9 50:21 51:6
53:8,12 56:19
61:10
**told** 16:18 32:8
34:2 47:23 58:17
**top** 28:4 37:24
39:1 41:12 44:24
45:3
**topic** 49:22
**total** 9:2 11:7,12
11:22
**totally** 35:23 36:1

**touch** 19:9
**touched** 14:3
**track** 15:19 48:19
**tracking** 45:10
56:23 58:10
**trade** 8:22 10:18
**trading** 1:15 5:2
6:13 7:19 9:1
12:18 19:20 51:20
52:6
**traditional** 8:7
**transaction** 9:5
16:9
**transactions** 9:1
11:5 14:9 30:21
**transcribed** 3:25
**transcript** 33:13
62:4
**transfer** 14:20
32:14 38:15 46:23
48:9
**transferred** 42:17
47:19 52:19
**transferring** 47:5
**transfers** 24:9
**transit** 16:3 39:5
45:9 46:6,23,24
47:2,8,12 50:3
56:22
**tro** 9:4 15:14,17
23:16 32:21,23
45:22 47:25 56:21
**troutman** 4:3 6:11
6:12,15 7:21 14:2
56:4
**true** 62:4
**trustee** 4:21 13:6
13:13 35:20,20
53:14 54:9,15,17
59:6,7,8,9,19
**truthfully** 32:25
33:2

**try** 21:15,22 23:7
23:10
**trying** 15:18 33:7
33:11 49:6
**tuesday** 55:8,13
**turn** 13:18 35:19
**turnaround** 26:11
**turned** 16:21
**two** 11:12 15:16
15:17 16:14 25:10
32:10,12 33:4
35:2 37:23 38:24
42:15,21 43:3
44:8,11,14,25
45:1,13 46:3
49:21 50:9 53:19
56:7,20 60:1

**u**

**u** 14:25
**u.s.** 2:23 4:21 13:6
13:13 35:20,20
53:13 54:5,13,15
54:17 59:6,7,8,9
59:19
**ultimate** 5:9,10
49:17,20 50:1
**ultimately** 24:3
**unable** 52:21
**unambiguous** 57:3,8,9
**uncertain** 53:13
**unclear** 16:1
**understand** 12:2
21:14 26:1,1,19
27:2,4,13,13
31:23 34:17 38:10
38:19 40:25 41:4
41:5,6,7 43:8
44:15 47:21 49:14
**understanding** 34:25 35:1
**understood** 58:19

**undisputed** 13:1
52:4
**unfortunate** 10:13,14 49:8
**unfortunately** 31:7
**united** 1:1 2:1
4:20 40:24 41:8
45:10 50:10 53:20
54:9 56:23
**universe** 26:19
48:20 50:8
**unlimited** 12:10
**unrelated** 16:9
**unsecured** 9:11
13:1
**unwilling** 52:21
**update** 9:16 60:5
**urged** 53:15
**use** 29:14 39:8
55:1

**v**

**v** 1:14 14:25
**vacation** 35:9
37:11,11
**value** 9:2 10:25
11:7,9,12,22
15:20 45:24
**various** 12:22
15:4 24:8
**vault** 43:17 46:4
**vaults** 10:25
**veritext** 62:20
**version** 22:22
36:21,22 47:15,15
**view** 20:3 35:21
**violated** 57:5
**violation** 40:20
48:9
**voluminous** 56:19
**vouch** 10:11

| w |
|---|

**wait** 33:17
**want** 18:18 21:15
  21:24,24 22:1,7
  25:23 27:12 28:8
  28:10 29:1 34:16
  34:18 40:23,24
  41:2,4,20 42:24
  43:6,8,9 44:4,6
  47:7,13 50:1 61:3
**wanted** 34:4 60:3
**wants** 13:17 44:3
**waste** 21:24
**way** 8:10 30:23
  34:25 37:12 39:9
**we've** 7:22 14:16
  19:8 36:23 37:2
  52:12 53:7
**week** 13:7 43:10
  45:6,7 46:23,24
**weeks** 26:6
**went** 38:1
**whitehall** 4:22
**wholesalers** 8:20
**wild** 36:11,13
**willing** 30:18
**withdrawn** 12:5
  21:16 22:12
**woman** 31:9,11
  31:14
**women** 10:7,9
**won** 43:23
**wondering** 54:4
  60:3
**word** 35:18 59:19
**words** 34:4
**work** 26:10 44:6
  46:13 53:10 55:13
  55:23
**working** 39:24
**works** 10:7,9 55:9
  55:20

**world** 8:13
**worried** 27:6
**worth** 11:22 14:8
  16:20
**writing** 60:4 61:4
**wrong** 19:22
**wrote** 31:6,8

| x |
|---|

**x** 1:5,11,17 14:25

| y |
|---|

**yeah** 22:7 25:5
  30:1 39:12 41:6
  45:19 48:23 50:15
  50:18,23 55:13
  56:5
**year** 11:15
**years** 16:15 17:4
  42:13
**yep** 51:15,17
**yesterday** 11:21
  59:15
**york** 1:2 2:3 4:6
  4:16,23 5:4,13