**Hearing date and time: February 3, 2021 at 10:00 a.m. (Eastern Time)**
**Objections deadline: January 27, 2021 at 5:00 p.m. (Eastern Time)**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>THE D&M CAPITAL GROUP, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11711-scc |

**NOTICE OF HEARING ON TRUSTEE'S MOTION FOR ORDER (A) AUTHORIZING TRUSTEE TO SELL AT ONLINE PUBLIC AUCTION PERSONAL PROPERTY, CONSISTING OF JEWELRY AND PRECIOUS GEMS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (B) APPROVING CONSENT PROCEDURES FOR CO-OWNERS; (C) APPROVING TERMS AND CONDITIONS FOR ONLINE PUBLIC AUCTION SALE; (D) AUTHORIZING THE PAYMENT OF A BREAK-UP FEE AND OVERBID PROTECTION FOR POTENTIAL 'STALKING HORSE' BIDDERS; (E) SETTING DATES FOR AUCTION AND SALE APPROVAL HEARING, AND APPROVING THE FORM AND MANNER OF NOTICE; AND (F) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on **February 3, 2021 at 10:00 a.m., prevailing Eastern time**, or as soon thereafter as counsel may be heard, a hearing (the "*Hearing*") will be held before The Honorable Shelley C. Chapman, United States Bankruptcy Judge, in her Courtroom 623 at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, to consider the motion ("*Motion*") of Alan Nisselson (the "*Trustee*"), Trustee for the above-captioned chapter 7 Debtor, for an order substantially in the form attached to the Motion as Exhibit "A", (a) authorizing the Trustee to sell at an online public auction the personal property, consisting of jewelry and precious gems, listed on Exhibit "B" to the Motion (the "*Jewelry*"), (b) approving consent procedures for co-owners, (c) approving

proposed Terms and Conditions of Sale for the Jewelry, (d) authorizing the payment of a break-up fee and overbid protection for potential qualified 'stalking horse' bidders, (e) setting dates for the auction and sale approval hearing, and approving the form and manner of notice, and (f) granting other related relief.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing will be conducted telephonically pursuant to General Order M-543 of the Bankruptcy Court, and Bankruptcy Judge Chapman's Chambers Rules, which may be found on the Bankruptcy Court's website at www.nysb.uscourts.gov (the "*Court's Website*").  Parties wishing to participate in the Hearing telephonically must register with Court Solutions.  Information on how to register with Court Solutions can be found in General Order M-543.

**PLEASE TAKE FURTHER NOTICE** that the Motion with exhibits is available for viewing on the Internet through Court's official website: www.nysb.uscourts.gov (the "*Court's Website*"), or upon request to the undersigned or the Clerk of the Court.  A Pacer password is required to access documents on the Court's Website.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing, conform to the Bankruptcy Code, the Bankruptcy Rules and the Court's Local Rules, be electronically filed with the Bankruptcy Court in accordance with General Order No. M-399, which, along with the User's Manual for the Electronic Case Filing System, can be found at the Court's Website, and be served so as to be **received by no later than January 27, 2021 at 5:00 p.m., prevailing Eastern time** (the "*Objection Deadline*") by: (i) the Bankruptcy Judge (a hard copy clearly marked "Chambers Copy" must be delivered to the Court to the attention of Chambers of The Honorable Shelley C. Chapman), (ii) Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019, Attn. Leslie S. Barr, Esq. (lbarr@windelsmarx.com), and (iii) the Office of the United States Trustee for the Southern

{11870792:2}                                                                2

District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes, Esq.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE BY THE OWNER OF A PARTICIPATION INTEREST IN ONE OR MORE ITEMS OF JEWELRY TO TIMELY FILE AN OBJECTION TO THE ONLINE PUBLIC AUCTION AND SALE OF THE ITEM OR ITEMS OF JEWELRY IN WHICH THE OWNER HAS A PARTICIPATION INTEREST, STATING IN DETAIL THE REASONS THEREFOR WITH RESPECT TO EACH SUCH ITEM OF JEWELRY, SHALL BE DEEMED THAT OWNER'S CONSENT TO THE AUCTION AND SALE OF SAID ITEM OR ITEMS OF JEWELRY**.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received by the Objection Deadline will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Trustee without further notice.  Parties who timely file responses or objections are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default.  The Hearing may be adjourned from time to time without any further notice except for an announcement at the Hearing.

Dated: New York, New York  
       December 29, 2020

WINDELS MARX LANE & MITTENDORF, LLP  
*Attorneys for Alan Nisselson, Chapter 7 Trustee*

By:   */s/ Leslie S. Barr*  
      Leslie S. Barr (lbarr@windelsmarx.com)  
      156 West 56th Street  
      New York, New York 10019  
      Tel. (212) 237-1000 / Fax. (212) 262-1215

Hearing date and time: February 3, 2021 at 10:00 a.m. (prevailing Eastern time)
Objections deadline: January 27, 2021 at 5:00 p.m. (prevailing Eastern time)

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Attorney appearing: Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>THE D&M CAPITAL GROUP, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11711-scc |

**TRUSTEE'S MOTION FOR ORDER (A) AUTHORIZING TRUSTEE TO SELL AT ONLINE PUBLIC AUCTION PERSONAL PROPERTY, CONSISTING OF JEWELRY AND PRECIOUS GEMS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (B) APPROVING CONSENT PROCEDURES FOR CO-OWNERS; (C) APPROVING TERMS AND CONDITIONS FOR ONLINE PUBLIC AUCTION SALE; (D) AUTHORIZING THE PAYMENT OF A BREAK-UP FEE AND OVERBID PROTECTION FOR POTENTIAL 'STALKING HORSE' BIDDERS; (E) SETTING DATES FOR AUCTION AND SALE APPROVAL HEARING, AND APPROVING THE FORM AND MANNER OF NOTICE; AND (F) GRANTING RELATED RELIEF**

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Alan Nisselson ("*Trustee*"), trustee for the chapter 7 estate ("*Estate*") of The D&M Capital Group, LLC ("*Debtor*"), by his attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submits this motion ("*Motion*") for the entry of an order substantially in the form attached as **Exhibit "A"** ("*Sale Procedures Order*") (a) authorizing the Trustee to sell at an online public auction personal property of the Estate, consisting of jewelry and precious gems, listed on **Exhibit "B"** ("*Jewelry*"), (b) approving proposed consent procedures for co-owners of the Jewelry, (c) approving proposed Terms and Conditions of Sale for the Jewelry, attached as **Exhibit "C"**, (d) authorizing the payment of a break-up fee and overbid protection for potential

{11869725:4}

qualified 'stalking horse' bidders, (e) setting dates for the online public auction and sale approval hearing, and approving the form and manner of notice, and (f) granting other related relief. In support, the Trustee sets forth as follows:

### I. Jurisdiction; Venue; Statutory Bases for Relief Requested

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C § 157(b). Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409. The relief sought in this Motion is based upon sections 105(a) and 363(b)(1), (f), and (m) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. ("**Bankruptcy Code**"), Rules 2002, 6004, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), Rule 6004-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York ("**Local Rules**"), and the Court's General Order M-383 signed on November 18, 2009 titled *In the Matter of the Adoption of Amended Guidelines for the Conduct of Asset Sales*.

### II. Background

2. On May 28, 2019 ("**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. On August 11, 2020 ("**Conversion Date**"), the Court entered an Order (Doc. 96) converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code.

4. The Trustee is the duly appointed, qualified, permanent trustee of the Debtor's Estate.

{11869725:4}                                    2

5.  On September 10, 2020, the Trustee examined Moty Spector, the Debtor's principal, at the initial Bankruptcy Code § 341(a) meeting of creditors. In addition, the Trustee, his attorneys, and accountants have spent time investigating the Debtor and its financial affairs.

### III. The Debtor's Business and Assets for Sale

6.  The Debtor was formed in 2006 and specialized in buying and selling high-end jewelry and precious gems. The Debtor's business included entering participation arrangements with other entities for the acquisition and sale of certain jewelry and precious gems.

7.  This Motion concerns the jewelry and precious gems that the Debtor wholly or partially owns that were held in its safe at its former offices in New York City as of the Conversion Date and are now in the Trustee's possession ("***In-House Inventory***").[1] The In-House Inventory items, listed on Exhibit B, consist of (a) 23 items that are 100% owned by Debtor, and (b) 24 items that are owned by the Debtor and one or more co-owners. Exhibit B lists the participation interests in these 24 items. As explained further in section IV below, the proposed Sales Procedure Order provides that co-owners shall be deemed to have consented to the auction and sale of Jewelry they co-own unless they file an objection in accordance with the terms of the Sales Procedure Order.

### IV. Trustee's Request for Relief

8.  By this Motion, the Trustee seeks the entry of the Sale Procedures Order substantially in the form attached as Exhibit A: (a) authorizing the Trustee to sell the Jewelry at an online public auction, (b) approving consent procedures for co-owners, (c) approving the

---

[1] The Estate also holds interests in certain jewelry and precious gems that as of the Conversion Date were consigned (delivered "on Memo") to and thus are located at and held by various industry vendors, and other jewelry and precious gems that are at issue in the adversary proceeding pending in this Court titled *The D&M Capital Group. LLC v. Essex Global Trading, LLC, et al.*, Adv. Pro. No. 19-01300-scc.

{11869725:4}   3

proposed Terms and Conditions of Sale, (d) authorizing the payment of a break-up fee and overbid protection for potential qualified 'stalking horse' bidders, (e) setting related auction and sale approval hearing dates and approving the form and manner of notice thereof in the form attached as **Exhibit "D"**, and (f) granting other related relief.

A. **Trustee's Exercise of His Business Judgment to Liquidate the Jewelry.**

9. After careful review and consideration of the facts and circumstances regarding the Debtor's jewelry and precious gems assets, the Trustee in the exercise of his business judgment believes that the immediate liquidation of the Jewelry, consisting solely of the In-House Inventory items listed on Exhibit B, is in the best interests of the Debtor, its Estate, and creditors.

10. The Jewelry is comprised of 47 items of jewelry and precious gems. Given the number of items, and the difficulties imposed by the Covid-19 pandemic, it would take extraordinary time and expense to locate buyers for each item of Jewelry, and otherwise engage in the individual sale of each item. Accordingly, the Trustee believes that liquidation of the Jewelry would be best achieved by conducting an online public auction sale after conducting an appropriate and extensive marketing campaign. Towards that end, on November 2, 2020, the Court entered an Order (Doc. 144) granting the Trustee's application to retain and employ Maltz Auctions, Inc., d/b/a Maltz Auctions ("*Maltz*") as auctioneer for the Trustee effective as of September 1, 2020, the date Maltz commenced working on this case. Maltz took possession of the In-House Inventory on September 3, 2020.

B. **Proposed Consent Procedures for Co-Owners.**

11. As indicated on Exhibit B, there are 24 items of Jewelry in the In-House Inventory that are co-owned by the Debtor and one or more industry vendors. Most are owned

{11869725:4}   4

50% each by the Debtor and another vendor; several are owned in thirds by the Debtor and two other vendors.

12. The Trustee proposes that co-owners be deemed to have consented to the auction and sale of each item of Jewelry in which they hold a participation interest unless the co-owner files a written objection to the auction and sale for each of the items of Jewelry it co-owns. If a holder of a participation interest files an objection in accordance with the terms of the Sale Procedures Order or Notice of Auction and Sale Approval Hearing, and the objection is not withdrawn, waived, or resolved by the Court in favor of the Trustee, the item or items of Jewelry covered by the objection will be withdrawn from the online public auction.

13. The notice of this Motion and the proposed Notice of Auction and Sale Approval Hearing include a prominent instruction that holders of participation interests who object to the auction and sale of items of Jewelry they co-own must file an Objection with respect to each such item, detailing the reasons for each Objection, and that failure to file such an Objection will be deemed the co-owner's consent to the auction and sale of said item. *See* Section VI below. All known holders of participation interests in the Jewelry received notice of this Motion and the proposed Sales Procedure Order, which if approved, will provide they will receive the Notice of Auction and Sale Approval Hearing.

14. The Trustee submits that requiring co-owners to file a written Objection to the auction and sale for each item of Jewelry they co-own, or be deemed to have consented to the auction and sale of same, sufficiently protects the participation interests of the co-owners, and is the most time and cost efficient manner of moving forward with the liquidation of these items for the benefit of the Estate and its creditors.[2]

---

[2] Two co-owners, Gemcut, S.A. and MegaRich International, have by email consented to the auction and sale of their co-owned items.

{11869725:4}                                    5

**C.    Marketing Efforts.**

15.    Pursuant to the terms of its employment and retention, Maltz will provide marketing services for the auction sale of the Jewelry, at its sole expense. Maltz has advised that between now and the auction sale date, it will conduct the following marketing efforts:

(a)    **Online:**

-Social Media Marketing on Facebook & Twitter (30,000+ fans/followers)
-Search Engine Marketing on Google.com
-Weekly emails to 45,000+ subscribers of our email broadcasts
-Featured auction placement on Maltz Auctions corporate web site homepage
-Property-specific web page on Maltz Auctions corporate site (receives 100,000+ monthly page views)

(b)    **Direct Mail:**

-Full color direct mail multi-auction mailing to 4,000+ targeted recipients
-Auction-Specific mailer to 300+ highly targeted recipients

(c)    **Print:**

-Advertisement in *The New York Times*

(d)    **Miscellaneous:**

-Telemarketing campaign to targeted past auction attendees
-Public Relations firm engaged to prepare press release and facilitate editorial auction coverage (**if desired by Trustee**)

**D.    Summary of the Proposed Terms and Conditions of Sale.**

16.    The Trustee requests as a matter of reasonable business judgment the approval of the proposed Terms and Conditions of Sale attached as Exhibit C, which will enable the Trustee to solicit higher or better offers for the Jewelry and to conduct the online bidding process in a fair, uniform and efficient manner. The proposed Terms and Conditions of Sale establish rules for the registration and confirmation of online bidders and making higher or better bids in accordance with the Court's *Amended Guidelines for the Conduct of Asset Sales*. All bidding procedures will be conducted online in light of Covid-related restrictions. The more significant

{11869725:4}    6

procedures, terms, and conditions for the online public auction of the Jewelry in the proposed Terms and Conditions of Sale include the following:

(a) Maltz will conduct the online public auction sale ("*Public Auction*") of the Jewelry by online bidding on two online bidding platforms identified in the Terms and Conditions of Sale.

(b) Competitive bidders must pre-register by (i) submitting to Maltz a signed Online Bidding Registration and Online Public Auction Terms & Conditions of Sale, and (ii) remitting to Maltz a deposit of at least 25% of the amount the bidder may spend. Only pre-registered bidders confirmed by Maltz will be authorized to bid at the Public Auction.

(c) The Jewelry is available for inspection via confirmed appointments at [TBD] (the "*Premises*").[3]

(d) Each bidder making the highest or best offer for one or more items of Jewelry ("*Successful Bidder*") must pay the balance of the Purchase Price within [TBD] days after the Trustee or Maltz give notice to the Successful Bidder of the entry of a Court order ("*Sale Approval Order*") approving the sale (*Payment Deadline*"). That deadline may be extended for another [TBD] days if the Successful Purchaser pays an additional deposit equal to 10% of the Purchase Price.

(e) With respect to any item of Jewelry listed on Exhibit B that is sold at Public Auction, the Trustee shall pay any co-owner(s) listed on Exhibit B for that item of Jewelry the co-owner(s)'s share of the net sale proceeds (Purchase Price minus auction expenses and Maltz's commission) ("*Net Sale Proceeds*") for said item(s)

---

[3] All TBD addresses, dates, times, and other information in this Motion will posted on the Maltz website (www.maltzauctions.com) not less than 30 days before the scheduled date of the Public Auction.

{11869725:4}    7

of Jewelry within fourteen (14) days after the Trustee receives the Net Sale Proceeds from Maltz.

(f)   Removal of all Jewelry from the Premises will be conducted via confirmed appointment only at the Successful Bidder's own risk and expense by the Removal Deadline identified in the Terms & Conditions of Sale.

(g)   Time is of the essence against the Successful Bidder and the failure of the Successful Bidder to pay the balance of the Purchase Price by the Payment Deadline, or remove a purchased item by the Removal Deadline, will result in an immediate forfeiture of the Deposit and balance of the Purchase Price and the termination of the Successful Bidder's right to acquire the Jewelry. Upon a default by the Successful Bidder, the Trustee may seek to close a sale with the next highest or best bidder without further notice or approval of the Court.

(h)   The Jewelry will be sold "as is", "where is", "with all faults", without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, interests, or encumbrances of whatever kind or nature, with such liens, claims, interests, or encumbrances, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Public Auction, provided, however, the sale of the Jewelry is subject to, among other things, any state of facts a physical inspection may show.

17.   The Trustee respectfully refers the Court and parties to the Terms and Conditions of Sale attached as Exhibit "B" for its full terms and conditions.

**E.   Break-Up Fee and Overbid Protection.**

18.   The Trustee and Maltz believe it would benefit the Estate to obtain an acceptable pre-auction minimum offer or offers to purchase one or more items of Jewelry to set a floor price

{11869725:4}                                          8

before the auction sale. In order to induce any potential buyers to make such an offer, the Trustee deems it desirable to offer to pay a fee to such prospective buyer if a transaction with a different bidder who has made a higher or better bid at the auction sale that is approved by the Bankruptcy Court is consummated. The Trustee believes that in such event, it would be reasonable and proper to pay to such prospective buyer as a disappointed stalking horse bidder a Break-Up Fee in an amount up to a maximum of three percent (3%) of its initial offer. Such payment would come only from the proceeds of the sale to the highest bidder, who will be required to make an initial minimum overbid in an amount up to 105% of the initial stalking horse bid to ensure there will be sufficient funds to pay the Breakup Fee and benefit the Estate.

19. Breakup fees and expense reimbursements may be approved in a bankruptcy case. A breakup fee serves as an "incentive payment" offered to an unsuccessful bidder who places the debtor's property in a "sales configuration mode," thereby attracting other bidders to the auction. *In re Financial News Network, Inc.*, 126 B.R. 152, 154 n. 5 (Bankr. S.D.N.Y. 1991). Specifically, breakup fees (i) attract or retain a potentially successful bid, (ii) establish a bid standard or minimum for other bidders to follow, and (iii) attract additional bidders. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 661-62 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

20. Courts should approve break-up fees and other bidding protections where (i) the relationship between the debtor and the bidder receiving the break-up fee is not tainted by self-dealing, (ii) the fee does not hamper bidding, and (iii) the amount of the fee is reasonable in relation to the size of the transaction. *In re Integrated Res., Inc.*, 147 B.R. at 657. Here, the proposed Break-Up Fee and expense reimbursement is the product of the Trustee's good faith belief that it will enhance his ability to maximize the value of the Estate's assets, and therefore is without any taint of self-dealing. Indeed, the Break-Up Fee will be offered to any prospective

bidder, approved and accepted by Maltz and the Trustee, who the Trustee hopes to locate and identify through Maltz's marketing efforts. The Break-Up Fee is fair and reasonable and provides a material benefit to the Estate by enabling the Trustee to obtain a stalking horse offeror's commitment to expend money, time and effort to formulate an offer to purchase one or items of Jewelry, notwithstanding that the sale is subject to higher or better offers to be made at the Public Auction. In the Trustee's business judgment, the Break-Up Fee is fair and reasonable in proportion to the time, effort, cost, and expense that were incurred in negotiating the stalking horse offer, and is proportionate to the aggregate consideration that he anticipates is likely to be paid to the Estate from the auction sale proceeds. If higher or better offers are received, they will be the direct result of the prospective stalking horse bidder's agreement inducing such offers by serving as stalking horse bidder.

21. Finally, the Break-Up Fee does not hamper any other party's ability to offer a higher or better bid for the Jewelry. Given the small amount of the proposed Break-Up Fee, and relative to the "overbid" requirements set forth above, the fee is not so large as to have a "chilling effect" on other prospective bidders' interest in the Public Auction.

**F.    Sale under Section 363(b)(1).**

22. The Trustee's proposed sale of the Jewelry by public auction sale meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and General Order M-383 of this Court, *Amended Guidelines for the Conduct of Asset Sales*. Bankruptcy Code § 704, titled "Duties of a Trustee", states as follows:

> (a) The trustee shall –
>    (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest;

11 U.S.C. § 704(a)(1). The Jewelry constitute property of the Debtor's estate under Bankruptcy Code § 541(a)(1) that the Trustee may use, sell or lease under Bankruptcy Code § 363.

Bankruptcy Code § 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 105(a) provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**G.    A Sound Business Reason Exists for the Sale.**

23.    In accordance with these well-established standards, the immediate consummation of the sale of the Jewelry is demonstrably the best way to maximize the value of these assets. After discussions and investigation with his professionals, the Trustee has determined that the proposed auction sale is the surest, most efficient way to dispose of the Debtor's most significant assets currently in his possession. If the proposed Public Auction sale of the Jewelry is not approved, the Trustee may be forced to encumber the Estate with significant expenditures of time and money in order to liquidate them by separate marketing and sale efforts, or abandon some of the Jewelry if he cannot justify the continued outlay of cash for secure storage, insurance, and marketing and sale expenses. The Trustee has demonstrated facts that support a finding that a sound business reason exists for the approval of this transaction.

**H.    Sale Free and Clear Under Section 363(f).**

24.    Bankruptcy Code § 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or

>   (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive. Thus, satisfaction of any of the five conditions is sufficient to sell property free and clear of liens. *In re Elliott*, 94 B.R. 343, 345 (Bankr. E.D. Pa 1988); *In re Red Oak Farms, Inc.*, 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984).

25. To the best of the Trustee's knowledge, information and belief, there are no existing perfected liens, claims, interests, or encumbrances (collectively, "**Encumbrances**") on any Jewelry that is 100% owned by D&M. Nor to the best of the Trustee's knowledge, information and belief, are there Encumbrances on any Jewelry that is co-owned by D&M and other vendors, except for the co-owners' participation interests. For those co-owners that do not file an objection, their deemed consent pursuant to the terms of the proposed Sales Procedure Order is sufficient under § 363(f)(2) to enable the co-owned Jewelry to be sold free and clear of Encumbrances; those co-owners will receive their respective Net Sale Proceeds. For those co-owners that do file an objection that is not withdrawn or resolved by the Court in the Trustee's favor, as indicated in Section IV above, any item of Jewelry covered by the objection will not be included in the Public Auction.

26. To the extent that any Encumbrances to any item of Jewelry may exist, other than co-owners' participation interests, the Sale Approval Order will provide that they will attach to the net proceeds of the sales of such items of Jewelry, with the validity, enforceability and priority that they had before the Petition Date, and subject to any claim and defense that the Debtor's Estate may possess. The Trustee accordingly requests that the Jewelry be sold to the qualified bidders making the highest or best offer that the Trustee has accepted at the public auction, and the Court has approved (an "**Accepted Competing Bid**"), free and clear of all

{11869725:4}    12

Encumbrances, with such Encumbrances to attach to the proceeds of the proposed sale to the extent and in the priority in which they existed before the sale.

## I.     Good Faith under Section 363(m).

27.    Bankruptcy Code § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith", the Second Circuit has held that:

> the good-faith analysis is focused on the purchaser's conduct in the course of the bankruptcy proceedings.  This includes the purchaser's actions in preparation for and during the sale itself.  That is, the good-faith requirement prohibits fraudulent, collusive actions specifically intended to affect the sale price or control the outcome of the sale.

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci, Inc.)*, 126 F.3d 380, 390 (2d Cir. 1997).  The Trustee submits that any party making an Accepted Competing Bid will have acted in good faith under the *Gucci* standards and accordingly, requests that the Court make a factual determination at the Sale Approval Hearing (defined below) that any party making an Accepted Competing Bid has purchased the Jewelry in good faith as defined in Bankruptcy Code § 363(m).

28.    In addition, the conveyance of the Estate's interest in the Jewelry at public auction subject to competing bids serves the best interests of all creditors because it will represent the highest value and the Estate's best opportunity to maximize that value.  Accordingly, the Trustee has considered these factors in determining the best interests of creditors in his analysis and recommendation to sell the Jewelry to competitive bidders at Public Auction on the Terms and Conditions of Sale.

### V.   Extraordinary Sale Provisions

29.    This motion requesting approval of the proposed Sale Procedures Order does not significantly involve Extraordinary Provisions and complies fully with the Court's *Amended Guidelines for the Conduct of Asset Sales*.  Other than using sale proceeds to pay the ordinary and necessary costs of closings, the Trustee will hold the sale proceeds in his account for this Estate pending further Court order.

### VI.   Notice of Auction and Sale Approval Hearing

30.    The Trustee requests the entry of the proposed Sale Procedures Order setting the dates for the auction sale and the hearing to confirm the Successful Bidders, and approving the form and manner of notice.  The Terms and Conditions of Sale provide that the Public Auction sale will be held on [TBD], 2021 at [TBD] a.m. EST (the "*Sale Date*").  The Trustee therefore requests that the Court fix a date within one week thereafter to conduct a hearing to confirm the sales of th/e Jewelry to the Successful Bidder(s) ("*Sale Approval Hearing*").

31.    Bankruptcy Rule 2002 requires that 21 days' notice be given of a hearing to consider the sale of assets.  The Trustee has given at least 24 days' notice of the hearing on this Motion for entry of the Sale Procedures Order as permitted by Local Bankruptcy Rule 9006-1(b) and the Court's *Amended Guidelines for the Conduct of Asset Sales*.  The proposed Terms and Conditions of Sale, if approved, will provide creditors and parties in interest, including those known to the Trustee to be interested in acquiring the Jewelry, additional notice of the auction sale.  Given the circumstances, the Trustee respectfully submits that such notice is reasonable, adequate and sufficient and satisfies the applicable Bankruptcy Rules, Local Bankruptcy Rules and *Amended Guidelines for the Conduct of Asset Sales*.

32.    In addition to Maltz conducting substantial marketing of the Jewelry and the auction sale, the Trustee will provide notice by serving the Notice of Auction and Sale Approval

Hearing in the form attached as Exhibit D, which provides the date, time and place of the Auction, Terms and Conditions of Sale, and the deadline for filing objections. The notice of this Motion for entry of the Sale Procedures Order and the proposed Notice of Auction and Sale Approval Hearing include the following provision:

> **FAILURE BY THE OWNER OF A PARTICIPATION INTEREST IN ONE OR MORE ITEMS OF JEWELRY TO TIMELY FILE AN OBJECTION TO THE ONLINE PUBLIC AUCTION AND SALE OF THE ITEM OR ITEMS OF JEWELRY IN WHICH THE OWNER HAS A PARTICIPATION INTEREST, STATING IN DETAIL THE REASONS THEREFOR WITH RESPECT TO EACH SUCH ITEM OF JEWELRY, SHALL BE DEEMED THAT OWNER'S CONSENT TO THE ONLINE PUBLIC AUCTION AND SALE OF SAID ITEM OR ITEMS OF JEWELRY**.

33. The Trustee will serve notice the Notice of Auction and Sale Approval Hearing by regular mail, electronic mail or facsimile within three business days of entry of the Sale Procedures Order upon the following parties: (i) the Office of the U.S. Trustee, (ii) Debtor's counsel, (iii) all taxing authorities, (iv) all creditors, (v) all known holders of participation interests in the Jewelry, (vi) all parties filing notices of appearance or proofs of claim, and (vii) all parties known to the Trustee to have expressed an interest in acquiring the Jewelry, to the extent that their contact information is known or available.

34. The Trustee submits that the foregoing notice fully complies with the requirements set forth in Bankruptcy Rules 2002, 6004, 9006(c) and 9007, Local Bankruptcy Rule 9006-1(b) and the Court's *Amended Guidelines for the Conduct of Asset Sales*. The Trustee respectfully requests that this Court approve the form and manner of the notice proposed above.

### VII. No Prior Request; Conclusion

35. No prior motion for the relief sought herein has been made to this or any other court, except as otherwise described above.

{11869725:4}                                    15

**WHEREFORE**, the Trustee requests that the Court enter a Sale Procedures Order substantially in the form attached as Exhibit A granting this Motion and such other and further relief as is just.

Dated: New York, New York
December 29, 2020

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Trustee*

By:    */s/ Leslie S. Barr*_____
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215

## Index of Exhibits to Motion

| | |
|---|---|
| Exhibit A | Sale Procedures Order |
| Exhibit B | Jewelry Included in Online Public Auction |
| Exhibit C | Terms and Conditions of Sale |
| Exhibit D | Notice of Auction and Sale Approval Hearing |