Platzer, Swergold, Levine,
Goldberg, Katz & Jaslow, LLP
*Attorneys for Shanghai Pearls & Gems, Inc. d/b/a*
*Ultimate Diamond Co.*
475 Park Avenue South, 18th Floor
New York, New York 10016
Scott K. Levine, Esq.
Andrew S. Muller, Esq.
(212) 593-3000
slevine@platzerlaw.com
amuller@platzerlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Our File No. 9768-1

In re:

THE D&M CAPITAL GROUP, LLC,

               Debtor.

Chapter 7

Case No. 19-11711 (SHL)

**OBJECTION OF ULTIMATE DIAMOND TO TRUSTEE'S MOTION
PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019(a) FOR AN ORDER APPROVING
SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND RADWAN
<u>DIAMOND & JEWELLERY TRADING</u>**

Shanghai Pearls & Gems, Inc. d/b/a Ultimate Diamond Co. ("<u>Ultimate</u>"), by its undersigned counsel, as and for its Objection to the Motion (the "<u>Motion</u>") of Alan Nisselson, Chapter 7 Trustee (the "<u>Trustee</u>") of the estate of The D&M Capital Group, LLC, debtor herein (the "<u>Debtor</u>"), for an Order approving the Trustee's Settlement Agreement with Radwan Diamond & Jewellery Trading ("<u>Radwan</u>"), respectfully sets forth and represents as follows:

**<u>Preliminary Statement</u>**

1.      The Court should not approve the Settlement Agreement between the Trustee and Radwan, and should deny the Motion, because it lacks sufficient information to allow interested parties to suitably determine whether the proposed "swap" resolution contained in the settlement is in the best interest of the Debtor's estate and creditors other than Radwan. Alternatively, the

Court should adjourn the adjudication of the Motion until an appraisal of the inventory of jewelry, loose diamonds and mountings in Radwan's, and the Trustee's, possession is obtained.

2.      At its core, the "settlement", if approved, will allow Radwan to inequitably remain in possession of assets having the bulk of the value of the Debtor's estate, and allow Radwan to sell those items and keep all of the sale proceeds for itself, thereby depriving Ultimate and the other estate creditors of their true value.

## Background

3.      Ultimate is a creditor of the Debtor's bankruptcy estate with prepetition claims totaling $4,143,177.97 (Claim #4), a Chapter 11 Administrative Claim in the amount of $62,642.63 (Claim #19), and a Chapter 7 Administrative Claim in the amount of $23,734.17 (Claim #20).[1]

4.      Ultimate is in the business of buying and selling precious gems and jewelry, including high-end pieces and, on occasion has entered into participation arrangements with the Debtor, and others in the industry, for the acquisition and sale of certain jewelry and precious gems.[2]  In addition, Ultimate was the sub-landlord of the Debtor.

## Objection

5.      The fundamental basis of Ultimate's Objection to the Motion is that: (a) the Court, (b) Ultimate and other creditors who are similarly situated and knowledgeable about the jewelry and precious gemstone industry, and (c) in particular, creditors who are not as knowledgeable, are unable to make a suitable assessment of whether the settlement with Radwan "fall[s] below the

---

[1] The amounts of the administrative claims will be amended slightly as a result of the recent resolution of the Trustee's Motion concerning the rejection of the Debtor's sublease for its premises.

[2] In this regard, in addition to what is stated elsewhere herein, Ultimate has: (1) a 50% participation interest (together with the Debtor) in JE0104 – Pair of Emerald, Pearl and Diamond Earrings, and (2) a 33% participation interest (together with the Debtor (33%) and Gem Cut & Geneva (33%)) in JP0105 – Cross Pendant with 7 FIPK Diamonds, which are two of the six pieces that are the subject of the Debtor's Adversary Proceeding (Adv. Pro. No. 19-01300) with Essex Global Trading, LLC and Aleks Paul (the "Essex Defendants") that were delivered to, and now in the possession of, the Trustee.

lowest point in the range of reasonableness" as required by the Second Circuit Court of Appeals.

*Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting

*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

   6.      The essential terms of the Settlement appear to be as follows:

On the one hand, (a)(1) Radwan would remain in possession of the Radwan

Inventory[3], which Radwan indicates has a total estimated fair market value of

approximately $4.5 Million; and (2) the Debtor's estate would waive its

participation interests in the Radwan Inventory, which Radwan calculates has a

total estimated fair market value of approximately $2.2 Million, resulting in

Radwan retaining assets purportedly having a value of $4.5 Million free of the

Debtor's $2.2 Million interests therein; and

On the other hand, (b)(1) the Debtor's estate would remain in possession of

the In-House Inventory[4] which has an unknown estimated fair market value; but

(2) Radwan would waive its participation interests in the In-House Inventory; and

(3) Radwan will allow its $4.1 Million Proof of Claim to be expunged so as to not

share in any distribution from the Debtor's estate; which means the Trustee will be

able to sell the Debtor's assets in its possession and use (i) the proceeds of the

Debtor's interest, and (ii) what was formerly Radwan's interest, to continue to

administer the estate and make distributions under the Bankruptcy Code to an estate

that no longer includes Radwan's $4.1 Million Proof of Claim.

---

[3] The Motion identifies the "Radwan Inventory" as the list of items set forth in Exhibit "A" of the Settlement Agreement, which the Trustee reports Radwan had, and continues to have, possession, custody, and control of, in which the Debtor asserts a partial interest.

[4] The Motion identifies the "In-House Inventory" as the list of items set forth in Exhibit "B" of the Settlement Agreement, which the Trustee recovered from the Debtor's premises upon conversion of the Debtor's case to Chapter 7, which is now in the possession of the Trustee.

7.      At first blush, the terms of the Settlement Agreement appear to be a relatively even exchange of value, and thus reasonable.  However, a deeper analysis reveals the flaw in that cursory assessment.

8.      Neither the Radwan Inventory in Exhibit "A" of the Settlement Agreement, nor the In-House Inventory in Exhibit "B" of the Settlement Agreement, sets forth an estimated fair market value for each of the items identified therein.  This omission prompted Ultimate to go back to Exhibit "A" of Radwan's *Motion to Lift Automatic Stay to Allow Setoff of Mutual Prepetition Debts or Alternatively for Recoupment* (Doc. #106) (the "Lift Stay Motion"), which consists of Radwan's statement of the "Radwan Inventory".  Radwan's statement of its inventory also sets forth Radwan's version of the fair market value of the Jewelry, Loose Diamonds, and Mountings therein, and the concomitant value of the Debtor's participation interest in the Radwan Inventory.[5]

9.      Ultimate, having the benefit of its experience and being knowledgeable of the industry, has reviewed Radwan's "Radwan Inventory" listing, and compared it to the Radwan Inventory listing in the Settlement Agreement, and has observed: (a) that the two listings are not identical, leading to confusion as to what items are being retained by Radwan; (b) that the Kashmir Sapphire and the Pink Diamond[6] are inappropriately merged into the descriptions of other pieces of Jewelry, and that no fair market values for these respective, and extremely valuable pieces, is provided; and (c) that, based on Ultimate's experience with what the value and/or cost is of such

---

[5] Ultimate takes no position concerning the validity of the claims of Global Gems, Inc. that it owns a participation interest in 3 of the pieces of jewelry and 12 of the loose diamonds identified on Radwan's "Radwan Inventory" listing, all of which Global Gems, Inc. asserts reduce the percentage participation interest of the Debtor in those items.

[6] Ultimate holds a 33% participation interest in the Pink Diamond together with the Debtor (33%) and Radwan (33%). As the Court is aware, the Pink Diamond, the Kashmir Sapphire and two other extremely valuable pieces of jewelry, which together make up the other 4 items that are the subject of the Adversary Proceeding with the Essex Defendants, have not been returned by the Essex Defendants.

items, the fair market value listings provided by Radwan concerning all of the other items listed in the Radwan Inventory are grossly discounted.

10.      In particular, the description of the Pink Diamond (1 P/S FDOP : 10.51 CTS., 2 H/S Diamonds : 1.81 CTS) is merged into Item 5 (known as the "Burma Ruby" ring) under the list of Jewelry in Radwan's "Radwan Inventory". A fair market value for this item is also missing.

11.      However, on November 19, 2015, Ultimate paid/delivered a total of $2,131,212.00 for the purchase of the Pink Diamond, consisting of Ultimate's funds in the amount of $710,404.00 for its 1/3 participation interest therein, plus $1,420.808.00 received from the Debtor and Radwan (through the Debtor), resulting in each party owning a 1/3 participation interest in the Pink Diamond.[7] Attached hereto as **Exhibit "A"** is the sale invoice from Sotheby's dated November 19, 2015 for $2,131,212.00 and Ultimate's invoice to the Debtor for $1,420,808.00 showing payment to Ultimate of the Debtor's and Radwan's other 2/3 participation interests in the Pink Diamond. Today, Ultimate estimates the Pink Diamond piece is worth approximately $2.2 Million.

12.      In addition, the description of the Kashmir Sapphire is merged into the description of Item 4, under the list of jewelry in Radwan's "Radwan Inventory". A fair market value for this item is missing as well.

13.      While Ultimate currently does not own any interest in the Kashmir Sapphire, it previously did own a 1/3 participation interest in this piece. On May 2, 2014, Ultimate sold its 1/3 participation interest in the Kashmir Sapphire to the Debtor for $1,600,000.00, making its value $4.8 Million. Attached as **Exhibit "B"** is Ultimate's invoice to the Debtor for its sale of Ultimate's

---

[7] At that time, the purchase was for the Pink Diamond stone only, which was 10.58 carats. The Pink Diamond was then improved upon and cut to 10.51 carats and inserted in the ring that is currently described in Radwan's "Radwan Inventory".

1/3 participation interest in the Kashmir Sapphire.  Ultimate submits the Kashmir Sapphire is worth

more today.

14.     Further, Ultimate submits the valuations provided by Radwan regarding items 2, 3,

and 4 on the list of jewelry are also substantially undervalued.  Although Ultimate did not own

these, or any portion of these, particular pieces of Jewelry, they were delivered to Ultimate "on

memo" from the Debtor in mid-2018.  Ultimate remained in possession of items 2, 3, and/or 4, and

then returned them to the Debtor approximately 2 months later.  At the time, valuations for all

three pieces were noted on the "memos" and such documents are in the Trustee's possession to

confirm such values.  Ultimate recalls the pieces were worth more than as currently represented

by Radwan.  Ultimate estimates: the earrings in item 2 are worth more than $425,000; the diamond

necklace in item 3 is work between $1.75 Million and $2 Million; and the diamond ring in item 4

is worth $500,000.

15.     Using the information and experience Ultimate has, and without taking into

consideration the other jewelry items (which Ultimate also believes are substantially undervalued

(in particular, the Burma Ruby ring)), the values of the Radwan Inventory, and the Debtor's

Participation interest therein is as follows:[8]

---

[8] As stated in footnote 5 herein, Ultimate takes no position on the merits of the claim that Global Gems, Inc. has a participation interest in jewelry items 2, 3 and 4.  For the sake of consistency, Ultimate has reflected the value of the Debtor's participation interest in these piece in the same way that Radwan has presented the Debtor's participation percentage.

| Item | Total Estimated Value | Debtor's Participation Value |
|---|---|---|
| Pink Diamond | ~$2.2 Million | >$720,000 |
| Kashmir Sapphire | >$4.8 Million | >$1,600,000 |
| Item 2-Earrings | >$425,000 | >$212,500 |
| Item 3-Diamond Necklace | ~$187,000 | >$93,500 |
| Item 4-Diamond Ring | ~$500,000 | ~$250,000 |
| Total | $8,112,000 | $2,876,000 |

16.     Ultimate also estimates that the total values of both the loose stones and the mountings on Radwan's "Radwan Inventory" listing are undervalued by approximately 50%. Ultimate estimates the value of the loose stones is approximately $1.4 Million, and the value of the mountings is approximately $70,000, making the values of the Debtor's participation interests approximately double of what is presented.

17.     Taking into consideration the above information, it is readily apparent that Radwan has grossly understated the fair market values for the Radwan Inventory.  This understatement appears to be an attempt to hide the true values from the Trustee and reap a windfall for itself.

18.     Using these adjusted values, the Settlement will allow Radwan to retain assets of the Debtor having a total value of several millions more than $2.1 Million, while Radwan will only be waiving, (a) a general unsecured claim of $1.5 Million, and (b) a purported $2.4 Million secured claim attributed to two assets that have miraculously "disappeared like smoke in the wind" (the Kashmir Sapphire and the Pink Diamond) plus $103,250 attributed to a pair of earrings.  In return, the Trustee will merely keep Radwan's participation interests in one piece of jewelry and eight mountings (see, Exhibit "B" to Settlement Agreement) for which no information concerning fair market value is provided but which can be assumed to be of substantially lesser value after considering the values of the mountings as compared to the loose stones and jewelry pieces in the

Radwan Inventory listing.  This unjust result simply does not substantiate a determination that the proposed settlement rises above the "lowest point in the range of reasonableness".

19.     Stated another way, the Settlement Agreement provides that the Debtor's estate shall release Radwan, and otherwise extinguish, all of the estate's right, title, and interest in and to all Radwan Inventory, and Radwan is releasing the Debtor's estate, and otherwise extinguishing, all of Radwan's right, title, and interest in and to all In-House Inventory, as well as Radwan's interests in the Kashmir Sapphire and the Pink Diamond.  Radwan is also waiving its Proof of Claim.

20.     As Ultimate sees it, the value of the participation interests in the Radwan Inventory, which the estate is mistakenly giving up, is not less than $2.8 Million and is more likely to be as much as $6 Million or more when you take into account the undervaluation of the other Jewelry, Loose Diamonds and Mountings; not $2.1 Million that Radwan presents.  In addition, the value of Radwan's interests in the In-House Inventory being released is so much less because of the smaller number of items (9 In-House Items v. 26 Radwan Items) and types of items (mostly mountings which cost much less than the Stones and Jewelry).  Further, Ultimate is hopeful, but admittedly has reservations, that the Debtor's estate will be able to collect from the Essex Defendants on both the estate's interest and Radwan's interest in the Kashmir Sapphire and the Pink Diamond.

21.     Aside from the assets that are the subject of the Adversary Proceeding with the Essex Defendants, Radwan is in possession of the next most valuable collection of the Debtor's assets.  By comparison, Ultimate estimates that the value of the In-House Inventory is only approximately 5% of the total value of the Debtor's assets.

22.     Since the Settlement Agreement does not set forth the estimated fair market value of the Radwan Inventory, creditors are prevented from knowing the value of the Radwan

Inventory, thus resulting in creditors' inability to properly assess the fairness of the settlement "swap" that is proposed.

23.     Ultimate has no doubt that the Trustee extensively investigated the business dealings between the Debtor and Radwan, and explored the merits of the various legal claims made by the parties in order to determine whether the settlement was in the best interests of the creditor body, however, the absence of information concerning the estimated fair market value of the actual Jewelry, Loose Stones and Mountings in the respective parties' possession renders the determination of the reasonableness of the settlement impossible to ascertain.

24.     Accordingly, Ultimate feels compelled to object to the Motion because its assessment of the Settlement leads to only one conclusion; that the proceeds of an extremely valuable collection of assets (the Radwan Inventory) will remain with, and thereafter solely benefit, Radwan, rather than be available to the entire creditor body of which Ultimate is a member.

25.     Thus, Ultimate submits the Motion to approve the Settlement should be denied.  In the alternative, Ultimate suggests that the Motion be adjourned until a consensually-selected independent qualified appraiser appraises both sets of inventories so that an informed assessment of the prudence of the Settlement can be made, and if necessary, adjusted to provide a just benefit to the creditor body of the estate.

**WHEREFORE**, Ultimate respectfully requests that the Court either deny the Motion, or adjourn the Motion until a consensually-selected independent qualified appraiser appraises the respective inventory listings so that an assessment can be made of the reasonableness of the proposed settlement, and otherwise grant such other and further relief as is just and proper.

Dated: New York, New York
       March 3, 2021

Platzer, Swergold, Levine,
 Goldberg, Katz & Jaslow, LLP
*Attorneys for Shanghai Pearls & Gems, Inc. d/b/a
Ultimate Diamond Co.*

By: /s/ Andrew S. Muller
    Andrew S. Muller, Esq.
    475 Park Avenue South, 18th Floor
    New York, NY 10016
    Tel.: (212) 593-3000
    amuller@platzerlaw.com