**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>THE D&M CAPITAL GROUP, LLC,<br><br>　　　　　　　　　　　　　　Debtor. | Chapter 7<br><br>Case No. 19-11711-scc |

### SETTLEMENT AGREEMENT

　　　　This Settlement Agreement ("***Agreement***") is made and entered into as of December 10, 2021, by and between Alan Nisselson ("***Trustee***"), as trustee for the Chapter 7 estate ("***Estate***") of The D&M Capital Group, LLC ("***Debtor***" or "***D&M***"), on the one hand, and S.B. Diamond Corp. ("***SB Diamond***"), on the other hand.  Each of the Trustee and SB Diamond is a "***Party***", and together they are the "***Parties***".

### RECITALS

　　　　A.　　The Debtor was formed in 2006 and bought and sold precious stones and fine jewelry.  Moty Spector ("***Spector***") founded the Debtor and was its principal at all relevant times. To carry out its business, the Debtor entered into arrangements to co-own items with participants and to give or take possession of and sell items on consignment.

　　　　B.　　SB Diamond also buys and sells precious stones and fine jewelry, and dealt with the Debtor on a regular basis, including on co-ownership arrangements, consignments and a loan that have given rise to certain claims described below.

　　　　C.　　On May 28, 2019 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***").  (Case No. 19-11711, Doc. 1).

　　　　D.　　On June 1, 2019, the Debtor filed a complaint commencing Adversary Proceeding No. 19-01300 (the "***D&M Adversary Proceeding***") against Essex Global Trading, Inc. *a/k/a* Essex Global Trading, LLC ("***Essex***") and its principal Aleks Paul ("***Paul***", and together with Essex, the "***Essex Defendants***").  The Debtor alleged in the D&M Adversary Proceeding that it had consigned six precious stones or pieces of jewelry (the "***Items***") to Essex and Paul during the 90 days before the Petition Date, and that Essex and Paul unlawfully refused to return them.  In an amended complaint filed in the D&M Adversary Proceeding on August 6, 2019, the Debtor added SB Diamond, among others, as a nominal defendant because it was a full or part owner of a number of the Items.  The Debtor sought varied relief in the D&M Adversary Proceeding to recover the Items from Essex and Paul.

　　　　E.　　On August 15, 2019, SB Diamond filed a complaint commencing Adversary Proceeding No. 19-01332 (the "***SB Adversary Proceeding***") against Essex and the Debtor.  SB Diamond alleged in the SB Adversary Proceeding that it owned or partly owned three of the Items that the Debtor had transferred to Essex, specifically, 33% of a Kashmir sapphire ring (Item JR0182, the "***Kashmir Sapphire***"), 50% of a yellow-gold diamond ring (Item JR0280, the "***Yellow***

*Diamond*"), and 100% of a ruby ring (Item JR0306, the "***Ruby***") (collectively, the "***Gemstones***"). SB Diamond alleged that it had delivered the Gemstones to the Debtor as bailee pursuant to a pair of "memoranda", under which SB Diamond alleged it retained full ownership of its interests in the Gemstones, the Debtor bore all risk of their loss, SB Diamond had the right to the return of the Gemstones upon demand, and the Debtor had no right to sell, transfer, or dispose of the Gemstones. The memoranda valued the Kasmir Saphire at $7,000,000.00, the Yellow Diamond at $1,202,400.00, and the Ruby at $3,510,000.00. SB Diamond sought in the SB Adversary Proceeding a declaration that the Gemstones are not property of the Estate and a judgment allowing SB Diamond to recover the Gemstones from Essex and the Debtor.

      F.      On August 29, 2019, SB Diamond filed proof of claim no. 5 for $6,444,533.33, secured by its bailment of the Gemstones to the Debtor (the "***SB Claim***"). SB Diamond asserts in the SB Claim, among other things, that if the Gemstones are recovered, they are not property of the Estate, and it is entitled to their return or any proceeds of their sale. In addition, SB Diamond has advised the Trustee that it loaned $500,000.00 to the Debtor for which it also holds a claim for payment as reflected in documents provided to SB Diamond from the Debtor in connection with the Debtor's Bankruptcy proceeding.

      G.      Also on August 29, 2019, Essex filed proof of claim no. 11-1 for $6,500,000.00 (the "***Essex Claim***") based upon a loan it had made to the Debtor. Essex alleged the Debtor had satisfied the loan by delivering the Items to Essex, and filed the Essex Claim only in the event of a finding that it had an obligation to return the Items to the Debtor or was responsible for their loss.

      H.      On August 11, 2020 (the "***Conversion Date***"), the Bankruptcy Court entered an order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code. (Doc. 96).

      I.      The Trustee is the duly appointed, qualified, permanent trustee of the Debtor's Estate.

      J.      As the representative of the Estate pursuant to Bankruptcy Code § 323, the Trustee has standing to appear for the Debtor in the D&M Adversary Proceeding and in the SB Adversary Proceeding.

      K.      On December 23, 2020, the Trustee filed a complaint commencing an adversary proceeding against SB Diamond (Adversary Proceeding No. 20-01366; the "***Trustee Adversary Proceeding***"). The Trustee commenced the Trustee Adversary Proceeding under Bankruptcy Code § 542(a) for turnover of property of the Debtor's Estate, comprised of four items of jewelry and gems that the Debtor had consigned to SB Diamond, in which the Debtor has an ownership interest. SB Diamond filed an answer generally denying the allegations, and asserting affirmative defenses, including, *inter alia*, setoff, that it does not have two of the items in its possession, and that two of the items are of inconsequential value.

      L.      On March 4, 2021, the Trustee filed a motion in the D&M Adversary Proceeding (Adv. Proc. Doc. 108) (the "***D&M Settlement Motion***") for an order approving a settlement of that Adversary Proceeding and related bankruptcy claims (the "***Essex Settlement***"), and a separate settlement of a related insurance claim. The Essex Settlement includes Essex's agreement to subordinate the Essex Claim for the benefit of general unsecured creditors.

{11972639:1}       2

M. On April 28, 2021, SB Diamond filed an Objection to the D&M Settlement Motion, asserting, among other things, that because SB Diamond has sole title to the Gemstones, they are not assets of the Estate that the Trustee may use, sell or dispose of, and further, to the extent the Estate receives value for them, the value must be turned over to SB Diamond as consignor (D&M Adv. Proc. Doc. 113) (the "**SB Settlement Objection**").

N. Two other objections to the D&M Settlement Motion were filed (D&M Adv. Proc. Docs. 111 (Shanghai Pearls & Gems, Inc., d/b/a Ultimate Diamond Co.), and 112 (Spector)).

O. The Bankruptcy Court declined to hear the D&M Settlement Motion and the objections at the scheduled May 4, 2021 hearing. Instead, the Court conducted a status conference and directed the participants to pursue a mediated 'global' settlement of unresolved claims and issues. The Trustee, with everyone's consent, asked Ali Khazeneh to serve as the mediator. Mr. Kazaneh, a person in the industry who first attempted to mediate a settlement before the Conversion Date, agreed to serve in that capacity again, and to do so without compensation.

P. As a result of Mr. Khazeneh's efforts, Essex and Paul agreed with SB Diamond to a global resolution of all their claims against one another.

Q. The Trustee and SB Diamond then negotiated this Agreement. The Parties engaged in good faith, arms'-length negotiations to resolve the D&M Adversary Proceeding, the SB Adversary Proceeding, the SB Claim, the Trustee Adversary Proceeding, the SB Settlement Objection, and all other claims by and against one another, which has resulted in the full and final settlement of those matters on the terms and conditions set forth below.

## TERMS AND CONDITIONS

1. Recitals. The Recitals are incorporated by this reference and made a part of this Agreement.

2. Definitions. For purposes of this Agreement:

(a) "**Approval Order**" shall mean an order entered by the Court approving this Agreement.

(b) "**Business Day**" shall mean a day that is a day of the year on which banks are not required or authorized by law to close in New York, New York.

(c) "**Claim**" or "**Claims**" shall have the meaning ascribed to it in Bankruptcy Code § 101(5), including, without limitation, any and all manner of action or actions, cause or causes of action, suits, claims, counter claims, damages, obligations, losses, debts, checks, liabilities, agreements, liens, contracts, promises, allegations of wrongdoing of any type, costs, expenses, losses and demands of every kind or nature whatsoever, whether or not suspected or unsuspected, known or unknown, at law or in equity or otherwise.

{11972639:1}    3

       3.      Settlement Terms.  On the Effective Date (defined below), or as soon thereafter as is practicable:

       (a)      SB Diamond shall (i) withdraw with prejudice the SB Claim (Proof of Claim 5), which pursuant to this Agreement and the Approval Order, upon the Effective Date, shall be deemed expunged and of no further force and effect in the Bankruptcy Case, (ii) dismiss the SB Adversary Proceeding with prejudice and without costs to any party, (iii) assign to the Trustee for the benefit of the Estate all of SB Diamond's right, title and interest in and to the Kashmir Saphire, and (iv) withdraw with prejudice the SB Settlement Objection; and

       (b)      the Trustee, on behalf of the Estate, shall (i) dismiss the Trustee Adversary Proceeding with prejudice and without costs to any party, and release and otherwise extinguish, all of the Estate's right, title, and interest in and to the items that are the subject of the Trustee Adversary Proceeding, (ii) dismiss SB Diamond as nominal defendant to the D&M Adversary Proceeding with prejudice and without costs to any party, and (iii) assign to SB Diamond all of the Estate's right, title and interest in and to the Yellow Diamond and the Ruby.

The Approval Order will modify the automatic stay to permit the Parties to implement this Agreement.

       4.      No Admission of Liability or Waiver of Claims or Defenses as to Third Parties.  This Agreement memorializes a settlement of disputed claims and is not in any way to be construed as an admission of liability, or of any issue of fact or law, by any Party.  In entering into this Agreement, no Party waives any claims or defenses as to persons not parties to this Agreement, including, without limitation, claims or defenses based on ownership or other interests in the Kashmir Sapphire, Ruby, and the Yellow Diamond.  Moreover, this Agreement and the related Approval Order shall not constitute or be deemed or considered an adjudication, admission, or evidence regarding (a) the validity, valuation, or allowance of any potential party in interest's claim or purported interest, whether or not previously asserted, in the Kashmir Sapphire, Ruby, and the Yellow Diamond, or (b) the validity, valuation, or allowance of any proof of claim.

       5.      Bankruptcy Court Approval; the Effective Date.

       (a)      This Agreement is subject to and conditioned on approval by the Bankruptcy Court.  The Trustee shall prepare and file a motion seeking the Bankruptcy Court's entry of an Approval Order pursuant to Bankruptcy Rule 9019 (the "**Rule 9019 Motion**"), and SB Diamond shall support the Rule 9019 Motion.  To successfully implement the foregoing, the Trustee will request that the Approval Order provide that notice of the relief requested in the Rule 9019 Motion satisfies the applicable rules regarding notice and that the Trustee has established cause to exclude such relief from the 14-day stay period, if any, under Bankruptcy Rule 6004(h), Bankruptcy Rule 4001(a)(1), or any other applicable rule (the "**Stay**").

       (b)      The terms and conditions of this Agreement shall become effective and enforceable on the date on which an Approval Order has been entered and any applicable Stay, to the extent

{11972639:1}       4

relief from said Stay is not granted by the Bankruptcy Court as requested, expires (the "***Effective Date***").

6.  In the event the Court does not enter an Approval Order, or the Effective Date does not otherwise occur, then (a) the Agreement shall be deemed null and void; (b) the Parties shall not be deemed to have waived any of their respective rights or to have settled any controversy between them that existed before the execution of the Agreement; (c) the Parties shall be restored *nunc pro tunc* to the respective legal positions that they were in immediately before the execution of the Agreement; (d) neither this Agreement or any exhibit (or document or instrument, if any) delivered under the Agreement, nor the Rule 9019 Motion or anything submitted or said in connection with the Rule 9019 Motion, shall be (i) with prejudice to any Party or person, (ii) deemed to be or construed as an admission by any Party of any act, matter, or proposition, or of the merit or lack of merit of any claim or defense, or (iii) used in any manner or for any purpose in any subsequent proceeding in this action, or in any other action in any court or in any other proceeding; and (e) all negotiations, proceedings, and statements made in connection with the negotiation of this Agreement (i) shall be without prejudice to any Party or person, (ii) shall not be deemed as or construed to be an admission by any Party of any act, matter, or proposition, or of the merit or lack of merit of any claim or defense, and (iii) shall not be offered in evidence in any pending adversary proceeding, or any other action or proceeding, except in connection with this Agreement or its enforcement.

7.  <u>Release by Trustee</u>.  Effective on the Effective Date, and in consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, all of which are reserved, the Trustee, for the Debtor and the Estate, releases, remises, and discharges SB Diamond, and its attorneys, agents, successors, and assigns, from any and all past, present or future Claims or causes of action (including any suit, petition, demand or other claim in law, equity or arbitration) and from any allegations of liability or damages (including any allegation of duties, debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, liquidated or contingent, that are, have been, could have been, or might in the future be, asserted based on, arising out of, or relating in any way to, the Trustee, the Debtor, the Estate, any assets of the Estate, the allegations in the D&M Adversary Proceeding, or the allegations in the Trustee Adversary Proceeding.

8.  <u>Release by SB Diamond</u>.  Effective of the Effective Date, and in consideration for the covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, except with respect to any rights arising under this Agreement, all of which are reserved, SB Diamond and its directors, officers, employees, and shareholders, and their respective principals, heirs, attorneys, agents, successors and assigns, releases, remises, and discharges the Trustee, the Debtor, and the Estate, and each of their heirs, attorneys, agents, successors and assigns, from any and all past, present or future Claims or causes of action (including any suit, petition, demand or other claim in law, equity or arbitration) and from any allegations of liability or damages (including any allegation of duties,

debts, reckonings, contracts, controversies, agreements, promises, damages, responsibilities, covenants or accounts) of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs, or disbursements), known or unknown, liquidated or contingent, that are, have been, could have been, or might in the future be, asserted based on, arising out of, or relating in any way to, the Trustee, the Debtor, the Estate, the assets of the Estate, the allegations in the SB Adversary Proceeding, the allegations, arguments, or claims made in support of the SB Settlement Objection, or any Claim for payment of the $500,000.00 outstanding loan SB Diamond alleges it made to the Debtor, or for an account stated or otherwise.

9. <u>Insolvency-Related Provisions</u>.

(a) Any payment or dismissal, withdrawal or release of claims made pursuant to this Agreement is intended to constitute a contemporaneous exchange for new value given to SB Diamond pursuant to Bankruptcy Code § 547(c)(1); and in reliance on the settlement, the Trustee is contemporaneously providing the benefits to SB Diamond set forth in this Agreement, including the release by the Trustee set forth in <u>Section 7</u> above.

(b) SB Diamond represents to the Trustee, to the best of its knowledge, information and belief, that (i) it is solvent within the meaning of Bankruptcy Code §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and is able to pay its debts when due; and (ii) the transactions contemplated by this Agreement shall not render it insolvent.

(c) If SB Diamond commences, or a third party commences against it, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief from creditors, SB Diamond shall not argue or otherwise take the position that (i) its obligations under this Agreement may be avoided under Bankruptcy Code §§ 547 or 548; (ii) it was insolvent at the time of entry into, or became insolvent as a result of, any transaction made under this Agreement; and (iii) the mutual promises, covenants and obligations under this Agreement do not constitute a contemporaneous exchange for new value given to SB Diamond.

10. <u>General Representations and Warranties</u>.

(a) The Trustee represents and warrants that, subject to the approval of the Bankruptcy Court as set forth in <u>Section 5</u> above, (i) he has the full power, authority and legal right to execute and deliver this Agreement and to perform his obligations hereunder; (ii) this Agreement has been duly executed and delivered by the Trustee and constitutes a valid and binding agreement of the Trustee enforceable against him in accordance with its terms; and (iii) this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

(b) SB Diamond represents and warrants to the Trustee that (i) it has the full power, authority, and legal right to execute and deliver this Agreement and to perform its obligations hereunder; (ii) it has duly executed and delivered this Agreement and, subject to the approval of the Bankruptcy Court as set forth in <u>Section 5</u> above, constitutes a valid and binding agreement of SB Diamond enforceable against it in accordance with its terms; (iii) this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever; (iv) in executing

this Agreement, SB Diamond had the opportunity to obtain independent legal advice from its attorneys with regard to the facts relating to the underlying controversies and with respect to its rights arising out of said facts; and (v) SB Diamond has not assigned or transferred, or purported to assign or transfer, to any person all or any portion of the released claims pursuant to Section 8.

11. Entire Agreement. This Agreement constitutes the complete agreement between the Parties with respect to the issues covered by this Agreement. This Agreement may not be amended except by signed, written consent of the Parties.

12. Successors. This Agreement is binding on the Parties' successors, transferees, heirs, attorneys, agents, and assigns.

13. Costs. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14. Further Assurances. Each Party shall execute and deliver any document or instrument reasonably requested and needed by the other Party after the date of this Agreement to effectuate the intent of this Agreement.

15. Construction. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and, therefore, shall not be construed against any Party for that reason in any subsequent dispute. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a section is to a section of this Agreement. "*Including*" is not intended to be a limiting term.

16. No Third Party Beneficiaries. The Parties do not intend to confer any benefit by or under this Agreement upon any person other than the Parties hereto and their respective successors.

17. Governing Law. This Agreement and the rights and obligations of the Parties shall be governed by and construed and interpreted in accordance with the laws of the State of New York, without regard to conflicts of law principles.

18. Exclusive Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over the enforcement and interpretation of this Agreement. The Parties consent to the entry of a final order or judgment by the Bankruptcy Court, related solely to the enforcement or interpretation of this Agreement, if it is determined that consent of the Parties is required for the Bankruptcy Court to enter final orders or judgment consistent with Article III of the Constitution.

19. Counterparts; Electronic Copy of Signatures. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed an original and all of which shall constitute the same document. Each Party or signatory may evidence its execution of this Agreement by delivery to the other Party or signatory of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

**IN WITNESS WHEREOF**, each Party or signatory has caused this Agreement to be duly executed and delivered as of the date indicated above.

**[Signature pages follow]**

{11972639:1}                                8

**TRUSTEE**

                                      */s/ Alan Nisselson*
                                      Alan Nisselson
                                      CHAPTER 7 TRUSTEE OF
                                      THE D&M CAPITAL GROUP, LLC
                                      Windels Marx Lane & Mittendorf, LLP
                                      156 West 56th Street
                                      New York, New York 10019
                                      Tel. (212) 237-1000
                                      Email: anisselson@windelsmarx.com

[TRUSTEE SIGNATURE PAGE TO SETTLEMENT AGREEMENT]

{11972639:1}

**S.B. Diamond Corp.**

**S.B. Diamond Corp.**

By: <u>*/s/ Shamoel Sianes*</u>
Name:   Shamoel Sianes
Title:   Owner
Address:

[SB DIAMOND SIGNATURE PAGE TO SETTLEMENT AGREEMENT]