**Hearing Date and Time: June 7, 2022 at 10:00 a.m.**
**Objections deadline: May 31, 2022 at 5:00 p.m. (prevailing Eastern time)**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 7 |
| THE D&M CAPITAL GROUP, LLC, | Case No. 19-11711-scc |
| Debtor. | |

**NOTICE OF HEARING ON TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND SHANGHAI PEARLS & GEMS, INC. d/b/a ULTIMATE DIAMOND CO.**

**PLEASE TAKE NOTICE** that on **June 7, 2022 at 10:00 a.m., prevailing Eastern time**, or as soon thereafter as counsel may be heard, a hearing (the "*Hearing*") will be held before The Honorable Shelley C. Chapman, United States Bankruptcy Judge, in her Courtroom 623 at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, to consider the motion ("*Motion*") of Alan Nisselson (the "*Trustee*"), Trustee for the above-captioned chapter 7 Debtor, for an order substantially in the form attached to the Motion as Exhibit "2", approving the Settlement Agreement attached to the Motion as Exhibit "1", between the Trustee and Shanghai Pearls & Gems, Inc. d/b/a Ultimate Diamond Co. ("*Ultimate*"). The Settlement Agreement resolves all claims asserted or assertable by and between the Trustee and Ultimate, including without limitation, Ultimate's three proofs of claim filed in the Debtor's bankruptcy case totaling more than $4.25 million, its appeal from the Court's Order approving a separate settlement agreement between the Trustee and Radwan

Diamond & Jewellry Trading, and its objections to the Trustee's pending settlement with Essex Global Trading, Inc. a/k/a Essex Global Trading, LLC and its principal Aleks Paul and a separate settlement of a related insurance claim.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing will be conducted telephonically pursuant to General Order M-543 of the Bankruptcy Court, and Bankruptcy Judge Chapman's Chambers Rules, which may be found on the Bankruptcy Court's website at www.nysb.uscourts.gov (the "***Court's Website***").  Parties wishing to participate in the Hearing telephonically must register with Court Solutions.  Information on how to register with Court Solutions can be found in General Order M-543 and on the Court Solutions website at https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that the Motion with exhibits, including the Settlement Agreement, is available for viewing on the Internet through Court's Website (www.nysb.uscourts.gov), or upon request to the undersigned, or the Clerk of the Court.  A Pacer password is required to access documents on the Court's Website.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing, conform to the Bankruptcy Code, the Bankruptcy Rules and the Court's Local Rules, be electronically filed with the Bankruptcy Court in accordance with General Order No. M-399, which, along with the User's Manual for the Electronic Case Filing System, can be found at the Court's Website, and be served so as to be **received by no later than May 31, 2021 at 5:00 p.m., prevailing Eastern time** (the "***Objection Deadline***") by: (i) the Bankruptcy Judge (a hard copy clearly marked "Chambers Copy" must be delivered to the Court to the attention of Chambers of The Honorable Shelley C. Chapman), (ii) Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019, Attn. Leslie S. Barr, Esq.

(lbarr@windelsmarx.com), and (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Greg Zipes, Esq (Greg.Zipes@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received by the Objection Deadline will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Trustee without further notice.  Parties who timely file responses or objections are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default.  The Hearing may be adjourned from time to time without any further notice except for an announcement at the Hearing.

Dated: New York, New York          WINDELS MARX LANE & MITTENDORF, LLP
       May 11, 2022                      *Attorneys for Alan Nisselson, Chapter 7 Trustee*


               By:    */s/ Leslie S. Barr*
                    Leslie S. Barr (lbarr@windelsmarx.com)
                    156 West 56th Street
                    New York, New York 10019
                    Tel. (212) 237-1000 / Fax. (212) 262-1215

**Hearing date and time: June 7, 2022 at 10:00 a.m. (prevailing Eastern Time)**
**Objections deadline: May 31, 2022 at 5:00 p.m. (prevailing Eastern Time)**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215
Attorney appearing:   Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 7 |
| THE D&M CAPITAL GROUP, LLC, | Case No. 19-11711-scc |
| Debtor. | |

**TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a) FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND SHANGHAI PEARLS & GEMS, INC. d/b/a ULTIMATE DIAMOND CO. AND GRANTING RELATED RELIEF**

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Alan Nisselson (the "***Trustee***"), trustee for the chapter 7 estate (the "***Estate***") of The D&M Capital Group, LLC (the "***Debtor***" or "***D&M***"), by and through his attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully requests through this motion (the "***Motion***") and the supporting declaration of the Trustee the entry of an Order approving the Trustee's settlement agreement (the "***Settlement Agreement***") with Shanghai Pearls & Gems, Inc. d/b/a Ultimate Diamond Co. ("***Ultimate***"). Each of the Trustee and Ultimate is a "***Party***", and together they are the "***Parties***".

## I.    Preliminary Statement

1.    The Settlement Agreement between the Trustee and Ultimate resulted directly from this Court's direction to engage in "global" settlement efforts. If approved, the Settlement Agreement would resolve all claims asserted or assertable by the Parties against one another,

including, without limitation, Ultimate's three proofs of claim filed in the Debtor's bankruptcy case (the "***Bankruptcy Case***") totaling more than $4.25 million.

2.      This settlement would further benefit creditors by requiring Ultimate to dismiss its appeal from the Court's approval of another settlement with a creditor, and withdraw or waive its right to file objections to the Trustee's proposed settlements with two other creditors and the Debtor's insurance carrier.  The Trustee believes that the resolution of these objections would allow him to complete more swiftly the administration of this Estate.  For these and the other reasons set forth below, the Trustee respectfully requests that the Court approve the Settlement Agreement, a copy of which is attached as **Exhibit 1**.

## II.      Jurisdiction; Venue; Statutory Bases

3.      This Court has jurisdiction of this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.).  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein are section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "***Bankruptcy Code***"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## III.      Background

### A.      The Debtor and Trustee

4.      The Debtor was formed in 2006 and was in the business of buying and selling precious stones and fine jewelry.  Moty Spector ("***Spector***") founded the Debtor and was its principal at all relevant times.  To carry out its business, the Debtor entered into arrangements to co-own items with participants, and to give or take possession of and sell items on consignment.

5.      On May 28, 2019 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") (Doc. 1).[1]

6.      On August 11, 2020 (the "***Conversion Date***"), the Bankruptcy Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code (Doc. 96).

7.      The Trustee is the duly appointed, qualified, permanent trustee of the Estate with standing as the representative of the Estate, pursuant to Bankruptcy Code § 323 to appear for the Debtor in this case and all proceedings pending in this or any other Court.

**B.      The Debtor and Ultimate**

8.      Ultimate also buys and sells precious stones and fine jewelry, and dealt with the Debtor on a number of occasions, including on co-ownership arrangements, consignments, and a loan.

9.      The Debtor's records indicate the Debtor delivered "on memorandum" to Ultimate 11 items of jewelry and gems with stated values totaling $319,000.00 (the "***Memoed Jewelry***").  The Debtor's Estate and Ultimate each hold at least a partial interest in the Memoed Jewelry.  The Trustee has demanded that Ultimate turn over the Memoed Jewelry as property of the Debtor's Estate.  Ultimate has disputed the Estate's right to the return of some or all of the Memoed Jewelry.

10.     Ultimate is a creditor of the Estate, having filed three proofs of claim: (i) a prepetition claim for $4,178,195.58, for unsecured amounts due for prepetition rent and lease rejection damages (the Debtor leased its business premises from Ultimate), a prepetition loan Ultimate made to the Debtor, and a secured amount due in excess of $3.3 million for its

---

[1] Unless otherwise specified, all docket references are to Case No. 19-11711.

ownership interests in various items of jewelry and precious stones (Claim 4-3); (ii) a Chapter 11 Administrative Claim for $62,642.63 for unpaid post-petition rent (Claim 19); and (iii) a Chapter 7 Administrative Claim for $19,843.32 for unpaid post-petition rent (Claim 20-2, together with Claims 4-3 and 19, the "***Ultimate Claims***").

C.    **Essex Global and Aleks Paul**

11.    On June 1, 2019, the Debtor filed a complaint commencing Adversary Proceeding No. 19-01300 (the "***D&M Adversary Proceeding***") against Essex Global Trading, Inc. *a/k/a* Essex Global Trading, LLC ("***Essex***") and its principal Aleks Paul ("***Paul***", and together with Essex, the "***Essex Defendants***"), and certain "Nominal Defendants", including, among others, Radwan Diamond & Jewellry Trading ("***Radwan***"), Ultimate, and SB Diamond Corp. ("***SB Diamond***"). The Debtor alleged in the D&M Adversary Proceeding that it had consigned six precious stones or pieces of jewelry (the "***Items***") to Essex and Paul during the 90 days before the Petition Date, and Essex and Paul had unlawfully refused to return them. The Debtor sought to recover the Items or their value from Essex and Paul. In Claim 4-3, Ultimate asserts ownership interests in three of the Items: a 33% interest in Item DM2950 (the "***Pink Diamond***"), a 50% interest in Item JE0104 (the "***Emerald Earrings***"), and a 33% interest in Item JP0105 (the "***Cross Pendant***"). Ultimate values the Pink Diamond at $2.4 million, the Emerald Earrings at $350,000, and the Cross Pendant at $1,350,000.

12.    On August 29, 2019, Essex filed Proof of Claim No. 11 for $6,500,000.00 (the "***Essex Claim***") based upon a loan it had made to the Debtor, which Essex claimed was secured by the Items. Essex alleged the Debtor had satisfied the loan by delivering the Items to Essex, and filed the Essex Claim only in the event of a finding that it had an obligation to return the Items to the Debtor or was responsible for their loss.

13.     On March 4, 2021, the Trustee filed a motion (the "***D&M Settlement Motion***",
D&M Adv. Proc. Doc. 108) for an order approving a settlement of the D&M Adversary
Proceeding and related bankruptcy claims (the "***Essex Settlement***"), and a separate settlement of
a related insurance claim (the "***Insurance Settlement***").  As part of the Essex Settlement, Essex
agreed to subordinate the Essex Claim for the benefit of general unsecured creditors.

14.     On April 27, 2021, Ultimate filed an objection to the Essex Settlement and the
Insurance Settlement (the "***Ultimate Settlement Objection***", D&M Adv. Proc. Doc. 111),
asserting, among other things, that Essex and Paul had unclean hands, and thus they should not
benefit from the settlement of the Estate's claims against them, and that there was more than one
missing Item, so the available insurance was more than the Trustee claimed.  Further, Ultimate
criticized the Trustee's business judgment in the settlements, claiming the settlements favor
financial and administrative convenience and expediency of closing the case over the
requirements of reasonableness and the principles of equity and fairness.

15.     Spector and SB Diamond also filed objections to the D&M Settlement Motion.
(D&M Adv. Proc. Docs. 112 and 113, respectively).

16.     The Bankruptcy Court declined to hear the D&M Settlement Motion and the
objections at the scheduled May 4, 2021 hearing.  Instead, the Court conducted a status
conference and directed the participants to pursue a mediated "global" settlement of unresolved
claims and issues.  The Settlement Agreement with Ultimate is product of good faith
negotiations between the Parties lasting many months, which resolves all claims between the
Trustee and Ultimate.

17.     The hearing to consider the D&M Settlement Motion is adjourned to the same
date as the hearing to consider the Settlement Agreement.

D.    **SB Diamond**

18.    On August 15, 2019, SB Diamond filed a complaint commencing Adversary Proceeding No. 19-01332 (the "***SB Adversary Proceeding***") against Essex and the Debtor.  SB Diamond alleged that it owned or partly owned three of the Items that the Debtor had transferred to Essex, specifically, 33% of a Kashmir sapphire ring (Item JR0182, the "***Kashmir Sapphire***"), 50% of a yellow-gold diamond ring (Item JR0280, the "***Yellow Diamond***"), and 100% of a ruby ring (Item JR0306, the "***Ruby***") (collectively, the "***Gemstones***").  SB Diamond further alleged that it had delivered the Gemstones to the Debtor as bailee pursuant to a pair of "memoranda", under which SB Diamond alleged it retained full ownership of its interests in the Gemstones, the Debtor bore all risk of their loss, SB Diamond had the right to the return of the Gemstones upon demand, and the Debtor had no right to sell, transfer, or dispose of the Gemstones.  The memoranda valued the Kashmir Sapphire at $7,000,000.00, the Yellow Diamond at $1,202,400.00, and the Ruby at $3,510,000.00.  SB Diamond sought in the SB Adversary Proceeding a declaration that the Gemstones are not property of the Estate and a judgment allowing SB Diamond to recover the Gemstones from Essex and the Debtor.

19.    On August 29, 2019, SB Diamond filed Proof of Claim No. 5 for $6,444,533.33, secured by its bailment of the Gemstones to the Debtor (the "***SB Claim***").  SB Diamond asserts in the SB Claim, among other things, that if the Gemstones are recovered, they are not property of the Estate, and SB Diamond is entitled to their return or any proceeds of their sale.  In addition, SB Diamond has advised the Trustee that it loaned $500,000.00 to the Debtor for which it also holds a claim for payment as reflected in documents provided to SB Diamond from the Debtor in connection with the Bankruptcy Case.

20.     On December 23, 2020, the Trustee filed a complaint commencing an adversary proceeding against SB Diamond (Adversary Proceeding No. 20-01366, the "***Trustee Adversary Proceeding***").   The Trustee commenced the Trustee Adversary Proceeding under Bankruptcy Code § 542(a) for turnover of property of the Estate, comprised of four items of jewelry and gems that the Debtor had consigned to SB Diamond, in which the Debtor has an ownership interest.  SB Diamond filed an answer generally denying the allegations and asserting affirmative defenses, including, *inter alia*, setoff, that it does not have two of the items in its possession, and that two of the items are of inconsequential value.   In Claim 4-3, Ultimate asserts a 33% ownership interest in Item DM2958, a loose diamond it values at $250,000, which is one of the items the Trustee sought to be turned over in the Trustee Adversary Proceeding.  The Debtor's records indicate that Ultimate has a 25% ownership interest in the loose diamond.

21.     On December 16, 2021, the Trustee filed a motion for approval of a settlement with SB Diamond (the "***SB Settlement Motion***", Doc. 222).  The settlement (the "***SB Settlement Agreement***") resolves all claims asserted or assertable between the Trustee and SB Diamond, including the claims made in the D&M Adversary Proceeding, the Trustee Adversary Proceeding, and the SB Adversary Proceeding, and requires SB Diamond to withdraw the SB Claim and its objection to the D&M Settlement Motion (D&M Adv. Pro. Doc. 113).   The hearing to consider the SB Settlement Motion is adjourned to the same date as the hearing to consider the Settlement Agreement.

22.     To date, no objections to the SB Settlement Motion have been filed or asserted.

**E.     Radwan**

23.     Radwan also buys and sells precious stones and fine jewelry and dealt with the Debtor on a regular basis.  Prior to the Petition Date, Radwan made an unsecured loan to the Debtor for $1,500,000.00 (the "***Unsecured Loan***"), and had possession of certain items of

jewelry in which the Debtor asserted a partial interest (the "***Radwan Inventory***"). The Debtor held partial interests with Radwan in various items of jewelry and precious gems that were in the Debtor's possession (the "***In-House Inventory***").

24.    On August 29, 2019, Radwan filed Proof of Claim No. 10 (the "***Radwan Claim***") in the Bankruptcy Case for $4,103,250.00, comprised of, among other things, (i) the Unsecured Loan, (ii) the value it assigned to participation interests it held in the Kashmir Sapphire and the Pink Diamond, and (iii) the value it assigned to a participation interest it held in certain earrings containing sapphires.

25.    On August 28, 2020, Radwan filed a *Motion to Lift the Automatic Stay to Allow Setoff of Mutual Prepetition Debts or Alternatively for Recoupment* (the "***Radwan Motion***", Doc. 106) seeking stay relief to setoff, on the one hand, Radwan's claim against the Debtor based on the Unsecured Loan and Radwan's participation interests in the Kashmir Sapphire, the Pink Diamond and the In-House Inventory, against, on the other hand, the Debtor's participation and other interests in the Radwan Inventory. Radwan and the Trustee settled the Radwan Motion. As per the settlement (the "***Radwan Settlement***"), the Trustee released Radwan from the Estate's claims, including the Estate's interests in the Radwan Inventory, and Radwan released the Trustee and the Estate from Radwan's claimed interest in the In-House Inventory, the Kashmir Sapphire, and the Pink Diamond, and withdrew with prejudice the Radwan Claim.

26.    In response to the Trustee's motion for approval of the Radwan Settlement (Doc. 177), Ultimate filed an objection (Doc. 182), arguing that the value of the inventory to be retained by Radwan far exceeded the value of the inventory to be retained by the Estate, and therefore formal appraisals were required to determine whether the Radwan Settlement met the lowest point in the range of reasonableness test for approval of settlements in the Second Circuit.

27.    On March 12, 2021, the Bankruptcy Court entered an Order approving the Radwan Settlement ("**Radwan Settlement Order**", Doc. 195).  By Notice of Appeal dated March 26, 2021, Ultimate appealed the Radwan Settlement Order to the United States District Court for the Southern District of New York (the "**District Court**"), Civil Case No. 1-21-cv-05001-ALC (the "**Radwan Appeal**").  The Radwan Appeal is pending.

### IV.    The Settlement Agreement Terms

28.    The Trustee and Ultimate negotiated the Settlement Agreement by engaging in good faith, arm's-length negotiations to resolve all claims by and against one another, which has resulted in the full and final settlement on the terms and conditions set forth below.

29.    Pursuant to the Settlement Agreement:

- Ultimate shall (i) withdraw with prejudice the Ultimate Claims (Proofs of Claim 4-3, 19, and 20-2, aggregating over $4.25 million), which pursuant to the Agreement and the settlement approval order (the "**Approval Order**"), upon the Effective Date of the settlement, shall be deemed expunged and of no further force and effect as against the Debtor and the Estate, (ii) withdraw with prejudice and without costs to any party the Radwan Appeal, (iii) withdraw with prejudice the Ultimate Settlement Objection, and (iv) waive its right to file any objection to the SB Settlement Agreement; and

- The Trustee, on behalf of the Estate, shall assign to Ultimate free and clear of all liens, claims and interests all of the Estate's right, title, and interest in and to the Kashmir Sapphire, the Pink Diamond, the Emerald Earrings, the Cross Pendant, and the Memoed Jewelry.

30.    The Settlement Agreement also contains the Parties' mutual releases.  The Trustee respectfully refers the Court and parties in interest to the Settlement Agreement attached as **Exhibit 1** for its full terms and conditions.[2]

31.    In addition, the Approval Order would modify the automatic stay to permit the Parties to implement the Settlement Agreement.

---

[2] In the event of any inconsistency between this Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control.

## V.    Relief Requested

32.     By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order attached as **Exhibit 2** approving the Settlement Agreement, and authorizing the Trustee to pay storage charges incurred for two of the items to be turned over to Ultimate pursuant to the Settlement Agreement, as described below.

## VI.    Legal Basis

33.     The Trustee submits that the terms of the Settlement Agreement, as the product of arm's length and good faith discussions between sophisticated and experienced counsel for the Parties that took several months of negotiations, are fair and equitable, and that Court approval is in the best interest of the Estate and its creditors.  The Trustee's Declaration in support of the reasonableness of the Settlement is attached as **Exhibit 3**.   Approval of the Settlement Agreement would resolve all claims between the Parties, which would enable the Estate to avoid the administrative costs and uncertainty of litigating pending contested matters with Ultimate (the Radwan Appeal and the Ultimate Settlement Objection), as well as anticipated disputes or additional litigation in connection with the Trustee's review and determination of the Ultimate Claims, turnover of the Memoed Jewelry, and an objection by Ultimate to the SB Settlement Agreement.  Ultimate's agreement to waive or forego objections to the SB Diamond, Essex and Insurance Settlements would remove an obstacle to Court approval of those settlements, which are themselves of significant benefit to the Estate.

34.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate.  *In re Ionosphere Clubs, Inc.*, 156 BR

414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

35.     The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis*, 165 B.R. at 122.  Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

36.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise; rather the court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at *3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation."); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

37.     In deciding whether a particular compromise falls within the "range of reasonableness," courts within the Second Circuit consider the following factors:

- the probability of success in the litigation;

- the difficulties associated with collection, if any;

- the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

- the paramount interests of the creditors.

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at *22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

38.     Here, approval of the Settlement Agreement would not only resolve all claims between the Parties, but also impact the Trustee's as-yet-unapproved settlements with other major creditors of the Estate and the Debtor's insurer.   The Settlement Agreement, SB Settlement Agreement, and Essex and Insurance Settlements, as well as the Trustee's Court-approved settlement with Radwan, allow the Trustee to avoid litigating a host of thorny and intertwined legal issues as to the ownership and consignment or other disposition of numerous pieces of jewelry and precious stones, some of which are missing and all of which have uncertain values.  In the Trustee's considered opinion, the risks and costs of litigating against Ultimate and the other settling parties far outweigh the benefits of any potential litigation recovery against any one or all of them.

39.     The Trustee respectfully submits that the Settlement Agreement falls well within the "range of reasonableness," and therefore satisfies the legal standard set forth by courts within the Second Circuit.  Turning to the *Refco* factors:

**(a)    Probability of Success in the Litigation.**

40.     The Trustee believes he would prevail if he were to litigate the question whether Ultimate must turn over the Memoed Jewelry; however, any success the Trustee might have on that issue would not relieve him from contending with the Ultimate Claims, which are based on

co-ownership interests, a loan, and rent charges he either has acknowledged or cannot dispute with any confidence. The likely payments on the Ultimate Claims would detract from any success on the turnover claim.

41. The Trustee also believes he has strong arguments as to the merits of the Essex and Insurance Settlements and the SB Settlement Agreement. *See* Doc. 222, D&M Adv. Proc. Doc. 108. But this Court signaled at the May 2021 conference that it would not approve any further settlements absent a global settlement, and thus the probability of the Trustee successfully fending off the Ultimate Settlement Objection and an objection by Ultimate to the SB Settlement Agreement is low.

42. Lastly, the Trustee believes he is likely to succeed on the Radwan Appeal, because this Court conducted a thorough analysis of the facts and arguments made by the Trustee and Ultimate and properly applied the law in reaching a well-reasoned decision to approve the Radwan Settlement. The Trustee is confident that the District Court will determine that the Bankruptcy Court did not abuse its discretion in finding that the Radwan Settlement met the lowest point in the range of reasonableness test for approval of settlements in the Second Circuit. However, there is a risk the District Court could agree with Ultimate's argument that the value of the inventory to be retained by Radwan far exceeded the value of the inventory to be retained by the Estate and reverse the Radwan Settlement. That decision would reinstate the Radwan Claim for $4.1 million, as well as Radwan's claims to the In House Inventory. The Trustee would have to pursue the Estate's claims to the Radwan Inventory in the UAE, for which the Trustee believes the prospects for success are very low.

**(b)    Difficulties Associated with Collection.**

43. Upon information and belief, several of the jewelry items and precious stones that

are the subject of the Settlement Agreement are no longer recoverable.  Ultimate's counsel has represented that the Memoed Jewelry is worth far less than its stated value and several of those items were previously sold to third parties.  Ultimate's counsel also informed the Trustee that the Pink Diamond was cut up and sold to third parties.  In addition, based on Paul's testimony that the Essex Defendants conveyed the Kashmir Sapphire to a third party in Russia to satisfy a loan, the Trustee believes that Item is not recoverable.

**(c)    Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.**

44.    Absent a global settlement, and should the District Court reverse this Court's approval of the Radwan Settlement, the Trustee would have little choice but to litigate the underlying adversary proceedings through trial; review and make determinations as to bankruptcy claims that would otherwise be withdrawn; and commence new adversary proceedings against Ultimate, the Debtor's insurer, and perhaps others.  These actions would be exceedingly expensive and time-consuming.  The Court and parties in interest are well aware of the enormous cost of litigation, having seen the Debtor's allowed attorneys' fees and expenses exceed $737,000, primarily for its pursuit of preliminary injunctive relief in the D&M Adversary Proceeding during the superseded chapter 11 case (Doc. 122).  The Trustee would likely have to expend all of the Estate's existing resources on attorneys' fees and costs, with no guaranty of a successful outcome.  Indeed, there is no assurance that even complete victories in all of these matters would assure any distribution to unsecured creditors of this Estate.  The Trustee's largest claim by far is against Essex and Paul, and any recovery against them may prove to be of little or no value to other creditors because (1) the Court could find the Debtor intended to pledge one or more of the Items as collateral on Essex's $6.5 million loan to the Debtor, making Essex a secured creditor; and (2) Essex would have a $6.5 million unsecured claim against the Estate in

any event (the Trustee has no reason to dispute the Debtor received the loaned monies). *See* D&M Adv. Proc. Doc. 108 at pp. 16-17. Moreover, Essex might assert a defense that because SB Diamond owned the Gemstones, the Debtor had no right to sell, transfer, or dispose of them to Essex, and therefore would have no right to assert a claim against Essex for conversion or breach of contract. If successful, that defense would foreclose any hope of recovery for the Estate.

45.    The Settlement Agreement also eliminates the inevitable delay caused by future likely appeals, which benefits the Estate's creditors. Even if successful in whole or in part, the pending and any necessary new litigations could delay the Trustee's ability to make a distribution to creditors for years.

**(d)    Paramount Interests of the Creditors.**

46.    The approval of the Settlement Agreement is in the best interest of creditors because it will save the Estate the substantial costs of litigating not only the claims between the Parties, but also the claims between the Trustee and Essex, Paul, the Debtor's insurer and SB Diamond, assuming the Court would reject the Trustee's settlements with these parties absent a global settlement. Court approval of the Settlement Agreement, together with court approval of the other pending settlements and Ultimate's agreement to withdraw the Radwan appeal, would also (i) expunge the Ultimate Claims, totaling approximately $4.25 million, (ii) make final the expungement of the Radwan Claim of $4,103,250.00, (iii) allow for the expungement of the SB Claim for $6,444,533.33 and waive SB Diamond's assertion of an additional claim of $500,000.00 for an unpaid loan, and (iv) allow for the subordination of the $6.5 million Essex Claim. In total, the Settlement Agreement would result directly or indirectly in the expungement, waiver, or subordination of claims totaling more than $21.7 million, representing

more than 2/3 (68%) of the total non-priority prepetition claims filed in the case, thereby significantly increasing any distribution to holders of allowed claims.

47.    Based on the above, the Trustee respectfully submits that the Settlement Agreement falls well within the lowest point in the "range of reasonableness" based on (i) the range of possible litigation outcomes; (ii) the complexity of potential litigation, and the costs and delays related thereto; and (iii) the very large claims against the Estate that the Trustee will be able to resolve within a short time period for the benefit of the Estate's creditors, which, left unresolved, could make it difficult, if not impossible, for the Trustee to make a distribution to general unsecured creditors.  *See* Declaration of Alan Nisselson in support of the Motion, attached as **Exhibit 3**.

### VII.    Authorization to Pay Storage Charges

48.    Under the Settlement Agreement, the Trustee is required to deliver to Ultimate the Cross Pendant and the Emerald Earrings (defined above).  When the Trustee took possession of the Cross Pendant and the Emerald Earrings, he placed them in secure storage through his retained auctioneer Maltz Auctions, Inc. with a firm known as Safe and Sound.  Safe and Sound recently rendered an invoice for vault storage charges and insurance aggregating about $28,000, an amount the Trustee believes to be excessive.  The Trustee, Maltz, and Safe and Sound are in discussions to determine the amount to be paid on that invoice.  The Trustee will inform the Court of the amount agreed to at the hearing on the Motion.  Accordingly, the Trustee respectfully requests that the Court grant the proposed Order approving the Settlement Agreement with the provision authorizing and empowering the Trustee to pay the Safe and Sound charges so that he will be able to retrieve those items and perform his obligation to deliver them to Ultimate.

## VIII.    <u>Notice And No Prior Request</u>

49.    The Trustee has given notice of this Motion to (i) the U.S. Trustee's Office, (ii) Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, attorneys for Ultimate, (iii) Wade Clark Mulcahy LLP, attorneys for the Debtor's insurer, (iv) Moty Spector, the Debtor's principal and his counsel, (v) all creditors listed on the Debtor's schedules or who filed proofs of claim, and (vi) all entities having filed a notice of appearance and demand for notice by the date of this Motion.  The Trustee respectfully submits that such notice constitutes good and sufficient notice and that no other notice need be given.

50.    No previous motion for the relief requested herein has been made to this or any other court.

## IX.    <u>Conclusion</u>

51.    In sum, the Trustee submits that the Settlement Agreement should be approved to avoid lengthy, burdensome, and expensive litigation as well as litigation risks, and because it represents a fair and reasonable compromise of the Parties' claims that greatly benefits the Estate.

**WHEREFORE,** the Trustee respectfully requests entry of an Order substantially in the form attached as **<u>Exhibit 2</u>** approving the Settlement Agreement, authorizing him to pay Safe and Sound, and granting such other and further relief as is just.

Dated: New York, New York
      May 11, 2022

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 7 Trustee*

By:   */s/ Leslie S. Barr*
      Leslie S. Barr (lbarr@windelsmarx.com)
      156 West 56th Street
      New York, New York 10019
      Tel. (212) 237-1000 / Fax. (212) 262-1215

**EXHIBITS**

Exhibit 1                          Settlement Agreement

Exhibit 2                          Proposed Order Approving Settlement Agreement

Exhibit 3                          Trustee's Supporting Declaration