WINDELS MARX LANE & MITTENDORF, LLP  Hearing: June 7, 2022 at 10:00 a.m.
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215
Attorneys Appearing: Leslie S. Barr (lbarr@windelsmarx.com)
                     Antonio J. Casas (acasas@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | |
|---|---|
| THE D&M CAPITAL GROUP, LLC, | Chapter 7 |
| Debtor. | Case No. 19-11711-scc |

**TRUSTEE'S MEMORANDUM IN FURTHER SUPPORT OF THE TRUSTEE'S MOTIONS SEEKING COURT APPROVAL OF SETTLEMENTS AND IN RESPONSE TO THE OBJECTION OF MOTY SPECTOR**

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE**

Alan Nisselson (the "**Trustee**"), trustee for the Chapter 7 estate (the "**Estate**") of The D&M Capital Group, LLC (the "**Debtor**", or "**D&M**"), submits this memorandum to provide an overview of pending settlements with all purportedly secured creditors and the Debtor's insurer and to address the lone remaining objection to the settlements' approval. The settlements end all litigation involving the Estate and resolve the largest claims against the Estate in a way that benefits creditors and allows the Trustee to finalize the administration of the Estate. The objection has no merit, and should be disregarded in any event, as it was filed by Moty Spector ("**Spector**"), the Debtor's principal and equity claim holder, who has no chance of receiving a distribution in the case.

**OVERVIEW**

1.  The settlements, which came together at different times over the past 15 months, amount to a global resolution of all claims as to six precious stones or pieces of jewelry (the

"**Items**") the Debtor and Spector transferred to Essex Global Trading, Inc. *a/k/a* Essex Global Trading, LLC ("**Essex**") and its principal Aleks Paul ("**Paul**") before the bankruptcy. Essex and Paul contend they took the Items as repayment of a previous $6.5 million loan to D&M.

2.   At the time of the transfers from D&M to Essex and Paul (the "**Transfers**"), creditors owned or partly owned (or participated in) each of the Items, as follows:

| Item | Owner/Participant | Memo Price |
|---|---|---|
| Kashmir Sapphire (JR0182) | S.B. Diamond Corp. ("**SB Diamond**") - 33%<br>Radwan Diamond & Jewellry Trading ("**Radwan**") - 33%<br>Debtor - 33% | $5,350,000 |
| Pink Diamond (DM2950) | Ultimate Diamond Co. ("**Ultimate**") - 33%<br>Radwan - 33%<br>Debtor - 33% | $2,150,000 |
| Yellow Diamond (JR0280) | SB Diamond - 50%<br>Debtor - 50% | $1,100,000 |
| Ruby (JR0306) | SB Diamond - 100% | $2,500,000 |
| Earrings (JE0104) | Ultimate - 50%<br>Debtor - 50% | $550,000 |
| Cross Pendant (JP0105) | Gemcut S.A. ("**Gemcut**") - 33%<br>Ultimate - 33%<br>Debtor - 33% | $1,380,000 |

3.   Some or all of the Items are the subject of a number of adversary proceedings and one appeal:

| Case or Appeal No. | Parties | Items | Description |
|---|---|---|---|
| SDNY Case No. 1-21-cv-05001 (the "**Radwan Appeal**") | Ultimate, Debtor | Kashmir Sapphire<br>Pink Diamond | Appeal of this Court's March 12, 2021 order (Case No. 19-1171, Doc. 195) approving a settlement between the Trustee and Radwan following a motion filed by Radwan to lift the automatic stay to allow it to set off its claims as to the Kashmir Sapphire, Pink Diamond and other things against the Debtor's participation interests in certain items held by Radwan. |

{80288161:2}                                       2

| | | | |
|---|---|---|---|
| Adv. Pro. No. 19-01300 (the "**D&M Adversary Proceeding**") | Debtor, Essex, Paul, Radwan, Ultimate, SB Diamond, Palawan, Gemcut, Spector | Kashmir Sapphire Pink Diamond Yellow Diamond Ruby Earrings Cross Pendant | The Debtor seeks to avoid the Transfers and recover the Items from Essex and Paul. The Debtor named Radwan, Ultimate, SB Diamond, Palawan Holdings Ltd. and Gemcut as nominal defendants based on their respective ownership interests in the Items. Essex asserted a counterclaim and third party claim against Spector, claiming in part that Spector signed consignment memos falsely stating that Essex was the 100% owner of the Items. (*See*, *e.g.*, Doc. 55 at ¶¶60-62). |
| Adv. Pro. No. 19-01332 (the "**SB Adversary Proceeding**") | SB Diamond, Essex, Debtor | Kashmir Sapphire Yellow Diamond Ruby | SB Diamond seeks to recover these items, arguing in part that it delivered them to D&M on consignment, and D&M had no right to transfer them to Essex and Paul. |

4. This Court issued a preliminary injunction as to the Items in December 2019. (Adv. Pro. No. 19-01300, Doc. 62). Essex and Paul subsequently delivered the Earrings and Cross Pendant to the Debtor's counsel, and represented to the Court that they had delivered the Kashmir Sapphire, Pink Diamond, Yellow Diamond, and Ruby to Mollard Equities, Inc. and Anna Joukova in Russia in May 2019. (Adv. Pro. No. 19-01300, Doc. 108-9 at ¶ 7).

5. The full or part owners of the Items (together, the "**Claimants**") have filed bankruptcy claims totaling $21.8 million, representing two-thirds (68%) of the total dollar amount of all claims filed in the case. Each of the claims is substantial and, for the most part, is asserted to have some priority:

| **Claimant** | **Claim No.** | **Basis** | **Total** |
|---|---|---|---|
| Ultimate | Proof of Claim Nos. 4-3, 19, and 20-2 | Prepetition rent and lease rejection damages<br>Loan<br>Participation interests in the Pink Diamond, Earrings, Cross Pendant and other items<br>Ch. 7 or 11 admin. claim for post-petition rent | $4,260,682 ($3.3 million of which is claimed to be secured) |

{80288161:2}    3

| | | | |
|---|---|---|---|
| SB Diamond | Proof of Claim No. 5 | Bailment/participation interests in the Kashmir Sapphire, Yellow Diamond and Ruby Loan (not part of the proof of claim) | $6,944,533 ($6.4 million of which is claimed to be secured) |
| Radwan | Proof of Claim No. 10 | Loan Participation interests in the Kashmire Sapphire, Pink Diamond and other items | $4,103,250 (all of which is claimed to be secured) |
| Essex | Proof of Claim No. 11 | Loan (only if Transfers are avoided) | $6,500,000 (all of which is claimed to be secured) |

6.     The pending settlements are with Essex and Paul, SB Diamond, and Ultimate, and with Certain Underwriters at Lloyd's London (the "**Underwriters**"), to resolve an insurance claim the Debtor filed for the loss of the Items. The settlements are interdependent inasmuch the Trustee's settlement with Ultimate is conditioned upon Court approval of the Trustee's settlements with Essex and Paul and SB Diamond. The motions seeking court approval of the settlements can be found at Adv. Pro. No. 19-01300, Doc. 108 (settlements with Essex and Paul and the Underwriters); Case No. 19-11711, Doc. 222 (settlement with SB Diamond); and Case No. 19-11711, Doc. 229 (settlement with Ultimate) -- together, the "**Approval Motions**".

7.     The Estate will receive concrete and substantial benefits from the settlements, specifically (i) the Trustee's involvement in the D&M and SB Diamond Adversary Proceedings and the Radwan Appeal will end, saving the Estate additional fees and expenses (the current aggregate legal fees for all these cases top $1 million) and clearing the way for an expedited administration of the Estate (there does not appear to be any other source of potential recovery); (ii) bankruptcy claims totaling $21.8 million (accounting for two-thirds of the dollar amount of all claims, over $20 million of which is claimed to be secured) will be expunged, waived, or subordinated; (iii) the Estate will keep the full proceeds from the sale of certain items that are co-

{80288161:2}                                    4

owned by Claimants and were in D&M's inventory at the time of the bankruptcy filing; and (iv) the Estate will receive a much-needed cash infusion of $800,000.

8.  The Estate will make no cash payment to any of the Claimants, but will give up its participation interests in the Items and a few other pieces of jewelry and precious stones of lesser value that were in Claimants' inventory at the time of the bankruptcy filing, which is reasonable given (i) the Estate lacks any funds to litigate (the current legal fees and other administrative expenses far exceed the cash the Trustee has on hand); (ii) it is questionable whether the Estate would succeed or recover anything even if it had the means to continue the litigations, considering, among other things, seemingly contradictory statements in some of the relevant documents (for example, SB Diamond has consignment memos that appear to indicate that D&M did not own the Kashmir Sapphire, Yellow Diamond, or Ruby and had no right to transfer those items to Essex and Paul, and consignment memos the Debtor gave to Essex appear to indicate that D&M was the sole owner of those items); (iii) Claimants would receive most, if not all, of the benefit from any litigation recovery, assuming there was anything left after administrative claims and expenses were paid; and (iv) the Underwriters might find a reason to deny the Estate's insurance claim outright if discovery or evidence adduced at trial revealed wrongdoing by the Debtor or Spector.

9.  With the cash benefits of the settlements in hand, the Trustee would attempt to negotiate an agreement among holders of administrative claims that would allow the Trustee to make a distribution to general unsecured creditors.

10.  The pending settlements fall well above the "the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)), *cert. denied*, 464 U.S. 822 (1983).

## RESPONSE TO THE ONE REMAINING OBJECTION

11. No one has objected to the Trustee's settlements with SB Diamond and Ultimate.

12. The only remaining objection to the Trustee's settlements with Essex and Paul and the Underwriters was filed over a year ago by Spector (the "**Objection**"). (Case No. 19-01300, Doc. 112). SB Diamond and Ultimate have agreed to withdraw their previous objections to the Trustee's settlements with Essex and Paul and the Underwriters as part of their own settlements with the Trustee.

13. Spector has filed an equity claim against the Estate for $3.6 million. (Proof of Claim No. 6-1).

14. As equity claims are last in the priority distribution scheme and there is no chance there will be a surplus available for distribution to equity claimholders here, Spector has no standing to object to the Trustee's settlements with Essex and Paul and the Underwriters. *Cf. In re Magnesium Corp. of Am.*, 583 B.R. 637, 650 (Bankr. S.D.N.Y. 2018) (finding that "an equity holder ... -- which under Bankruptcy Code section 726(a)(6) falls at the bottom of the priority distribution scheme -- lacks standing to object to claims against the estate unless there is a reasonable possibility of a surplus after all claims against the debtor's estate are paid in full").

15. Even so, the Objection has no merit, for the reasons stated in the preceding section.

16. The Objection unwittingly highlights the uncertainties the Trustee faces in any litigation against Essex and Paul (and others) by admitting that (i) the Debtor borrowed substantial amounts of money from Essex and Paul; (ii) Spector made certain notations on documents indicating items were pledged as collateral on the loans; (iii) both the Debtor and Essex and Paul "agree that at the final stages of the borrowing relationship, approximately $6.5

{80288161:2}                                              6

million was owed from the Debtor to [Essex and Paul]"; and (iv) prices of precious stones (including the Items) can fluctuate widely, leading to "very high profits and in other instances ... losses from cost price," depending on the "uniqueness of the item in particular and what the buyer is prepared to pay for it." (Case No. 19-01300, Doc. 112 at ¶¶5, 7 and n. 5; Doc. 112-1 at ¶4).

17. The Objection, on the other hand, downplays the litigation issues in the Trustee's case against Essex and Paul, which are more involved than the Objection admits. As the Trustee noted in his original motion papers, this Court left open the question whether there was an oral security agreement in connection with the Debtor's $6.5 million loan obligation to Essex. (Case No. 19-01300, Doc. 108 at ¶56). Related questions regarding Spector's intent to pledge Items as collateral would have to be explored in discovery (notably, Essex and Paul have argued there was a course of dealing spanning several years demonstrating the Debtor's intent to pledge consigned items as collateral) and probably require a trial (*see Hart v. BHH, LLC*, 323 F. Supp. 3d 560, 565 (S.D.N.Y. 2018) (observing that "questions of intent are 'notoriously inappropriate' for summary judgment") (quoting *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559–60 (2d Cir. 1989)).

18. The Objection also disregards that Essex will have a large, possibly secured, claim even if the Trustee obtains a judgment against Essex or Paul.

19. Inasmuch as the Objection questions whether Paul has the authority to sign the settlement agreement on behalf of Essex, the Trustee notes that Paul has signed the agreement both as the principal of Essex Global Trading, Inc. *a/k/a* Essex Global Trading, LLC and in his individual capacity, and Essex and Paul have represented and warranted to the Trustee that they, among other things, "have the full power, authority and legal right to execute and deliver" the

agreement and "perform their obligations" thereunder. (Case No. 19-01300, Doc. 108-2 at §11(b)). What is more, Essex and Paul are represented by counsel who have appeared numerous times for Essex in this Court and have assured the Trustee that Essex has authorized Paul to act on its behalf.

20. The Objection as to the Trustee's settlement with the Underwriters revolves around an argument that there was more than one loss for purposes of the $500,000 coverage limit because the Debtor conveyed the Items to Essex and Paul via "four (4) distinct memos ... all bearing different dates." (Case No. 19-01300, Doc. 112 at ¶34). The argument ignores the claim reporting form submitted by the Debtor, reflecting a single loss on May 9, 2019 with an estimated value of $500,000 (Case No. 19-01300, Doc. 108-6), and the cases cited by the Trustee, supporting the conclusion that there was one loss here, not multiple losses (Case No. 19-01300, Doc. 108 at ¶59). It also ignores the Underwriters' potential argument that there was no accident and thus no coverage because the Debtor or Spector had no right to transfer certain Items to Essex and Paul or otherwise engaged in misconduct. (*Id.* at ¶60). Properly viewed in this context, the Trustee's settlement with the Underwriters is just $25,000 shy of the best recovery the Debtor could hope for on its insurance claim for the unreturned Items. (*Id.*).

**WHEREFORE**, the Trustee respectfully requests entry of orders substantially in the forms previously submitted granting the relief requested in the Approval Motions.

Dated: New York, New York          Respectfully submitted,
      June 1, 2022

                                    WINDELS MARX LANE & MITTENDORF, LLP
                                    *Attorneys for Alan Nisselson, Chapter 7 Trustee*

                                    By:    /s/ Antonio J. Casas
                                             Antonio J. Casas (acasas@windelsmarx.com)
                                             156 West 56th Street
                                             New York, New York 10019
                                             Tel. (212) 237-1000 / Fax. (212) 262-1215